**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LINCHPINS OF LIBERTY,                                   )
138 Cliffe Run                                          )
Franklin, TN 37067                                      )
                                                        )
PATRIOTS EDUCATING CONCERNED                            )
AMERICANS NOW,                                          )
14421 Old Oregon Trail, Suite B                         )
Redding, CA 96003                                       )
                                                        )
GREENWICH TEA PARTY PATRIOTS                            )
OF SOUTH JERSEY, LLC,                                   )
59 Cemetery Road                                        )
Woodstown, NJ 08098                                     )
                                                        )    Civil Action No. 1:13-cv-00777-RBW
GREATER PHOENIX TEA PARTY,                              )
398 S. Palm Ln.                                         )    **JURY TRIAL DEMANDED**
Chandler, AZ 85225                                      )
                                                        )
UNITE IN ACTION, INC.,                                  )
37637 Five Mile Rd.                                     )
Livonia, MI 48154                                       )
                                                        )
ALLEN AREA PATRIOTS,                                    )
11 Glenbrook Cir.                                       )
Lucas, TX 75002                                         )
                                                        )
LAURENS CO. TEA PARTY,                                  )
530 W. Main St.                                         )
Laurens, SC 29360                                       )
                                                        )
NORTH EAST TARRANT TEA PARTY,                           )
INC.,                                                   )
2408 Texas Dr., Suite 100                               )
Irving, TX 75062                                        )
                                                        )
MYRTLE BEACH TEA PARTY, INC.,                           )
1706 27th Avenue North                                  )
North Myrtle Beach, SC 29582                            )
                                                        )
ALBUQUERQUE TEA PARTY, INC.,                            )
1709 Indiana St. NE                                     )
Albuquerque, NM 87110                                   )
                                                        )

COLORADO 9-12 PROJECT,　　　　　　)
888 Federal Blvd.　　　　　　　　　　)
Denver, CO 80204　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
SAN ANTONIO TEA PARTY, INC.,　　　　)
16109 University Oak　　　　　　　　　)
San Antonio, TX 78249　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
WETUMPKA TEA PARTY, INC.,　　　　　)
50 Country Club Dr.　　　　　　　　　)
Wetumpka, AL 36092　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
OKC PIA ASSOCIATION,　　　　　　　　)
18513 Southeast 42nd St.　　　　　　　)
Newalla, OK 74857　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
RICHMOND TEA PARTY, INC.,　　　　　)
10825 Midlothian Turnpike　　　　　　)
N. Chesterfield, VA 23235　　　　　　　)
　　　　　　　　　　　　　　　　　　)
HAWAII TEA PARTY, D/B/A TEA　　　　)
PARTY MAUI　　　　　　　　　　　　)
415 Dairy Rd., Suite E-329　　　　　　)
Kahului, HI 96732　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
SHELBY COUNTY LIBERTY,　　　　　　)
1268 E. Ash Street, Suite 115　　　　　)
Piqua, OH 45356　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
MANASSAS TEA PARTY,　　　　　　　　)
8706 Jackson Ave.　　　　　　　　　　)
Manassas, VA 20110　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
THE HONOLULU TEA PARTY,　　　　　　)
1163 Ka'eleku St.　　　　　　　　　　)
Honolulu, HI 96825　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
WACO TEA PARTY,　　　　　　　　　　)
10113 B Cordoba Court　　　　　　　　)
Waco, TX 76708　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
KENTUCKY 9/12 PROJECT, INC.,　　　　)
1130 Old Oxford　　　　　　　　　　　)
Georgetown, KY 40324　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
SAN FERNANDO VALLEY　　　　　　　)

PATRIOTS, INC., )
6345 Balboa Blvd., #212 )
Encino, CA 91316 )
)
PORTAGE COUNTY TEA PARTY, INC., )
4682 State Route 43 )
Kent, OH 44240 )
)
CHATTANOOGA TEA PARTY, )
2315 Heavenly View Drive )
Ooltewah, TN 37363 )
)
THE COMMON SENSE CAMPAIGN )
CORP., )
3904 Camellia Drive )
Mobile, AL 36693 )
)
LIBERTY TOWNSHIP TEA PARTY, INC., )
7068 Tarragon Court )
Liberty Township, OH 45011-9344 )
)
EAST JERSEY TEA PARTY, )
918 High Street )
Jackson, NJ 08527 )
)
ARLINGTON TEA PARTY, INC., )
1221B Nathan Lowe Road )
Arlington, TX 76017 )
)
AMEN, )
3711 W. 21st Street )
Yuma, AZ 85364 )
)
ROCHESTER TEA PARTY PATRIOTS, )
4324 8th Street NW )
Rochester, MN 55901 )
)
ROANE COUNTY TEA PARTY, )
195 Speers Rd. )
Kingston, TN 37763-4024 )
)
PROTECTING AMERICAN VALUES, )
INC., )
15141 Haynes St. )
Van Nuys, CA 91411 )
)

TRI-CITIES TEA PARTY,       )
1813 S. Rainier Pl               )
Kennewick, WA 99337      )
                                )

MISSISSIPPI TEA PARTY, INC.,  )
17 Sandway Drive            )
Brandon, MS 39042        )
                                )

SHENANDOAH VALLEY TEA PARTY )
PATRIOTS,                 )
70 Windsor Drive            )
Fishersville, VA 22939       )
                                )

FIRST COAST TEA PARTY, INC.,  )
11437 Central Parkway #107     )
Jacksonville, FL 32224       )
                                )

OREGON CAPITOL WATCH     )
FOUNDATION,               )
181 N. Grant Street, Suite 212    )
Canby, OR 97013            )
                                )

FIRST STATE PATRIOTS, INC.,   )
5 Caponi Circle              )
Middletown, DE 19709       )
                                )

ACADIANA PATRIOTS,        )
203 Grand Prairie Dr.        )
Lafayette, LA 70506        )
                                )

MID-SOUTH TEA PARTY,      )
1009 Boones Hollow Drive      )
Cordova, TN 38018        )
                                )

        and           )
                                )

AMERICAN PATRIOTS AGAINST  )
GOVERNMENT EXCESS,       )
2951 E. State St.             )
Fremont, OH 43420-9283     )
                                )

        Plaintiffs,      )
                                )

        -vs-          )
                                )
                                )

4

UNITED STATES OF AMERICA,                      )
Eric H. Holder                                 )
Attorney General of the United States          )
Department of Justice                          )
Room B-103                                     )
950 Pennsylvania Avenue, NW                    )
Washington, DC 20530                           )
                                               )
INTERNAL REVENUE SERVICE,                      )
1111 Constitution Avenue, NW                   )
Washington, DC 20004                           )
                                               )
JACOB LEW, in his official capacity as         )
SECRETARY OF THE UNITED STATES                 )
DEPARTMENT OF THE TREASURY,                    )
1500 Pennsylvania Avenue, NW                   )
Washington, DC 20220                           )
                                               )
DANIEL WERFEL, in his official capacity        )
as Acting Commissioner,                        )
INTERNAL REVENUE SERVICE,                      )
1111 Constitution Avenue, NW                   )
Washington, DC 20004                           )
                                               )
WILLIAM WILKINS, in his official and           )
individual capacities as Chief Counsel,        )
INTERNAL REVENUE SERVICE,                      )
1111 Constitution Avenue, NW                   )
Washington, DC 20004                           )
                                               )
5012 Warren St., NW                            )
Washington, DC 20016                           )
                                               )
DOUGLAS H. SHULMAN, in his official            )
and individual capacities as Commissioner,     )
INTERNAL REVENUE SERVICE,                      )
1111 Constitution Avenue, NW                   )
Washington, DC 20004                           )
                                               )
2706 36th Street, N.W.                         )
Washington, D.C. 20007                         )
                                               )
STEVEN T. MILLER, in his official and          )
individual capacities as Deputy                )
Commissioner, Services & Enforcement,          )
and Acting Commissioner,                       )

INTERNAL REVENUE SERVICE,    )
1111 Constitution Avenue, NW    )
Washington, DC 20004    )
    )
5006 Elsmere Pl.    )
Bethesda, MD 20814    )
    )
LOIS G. LERNER, in her official and    )
individual capacities as Director,    )
Exempt Organizations Division,    )
INTERNAL REVENUE SERVICE,    )
1111 Constitution Avenue, NW    )
Washington, DC 20004    )
    )
6610 Fernwood Court    )
Bethesda, MD 20817    )
    )
SARAH HALL INGRAM, in her official    )
and individual capacities as Commissioner,    )
Tax-Exempt / Government Entities Division,    )
INTERNAL REVENUE SERVICE,    )
1111 Constitution Avenue, NW    )
Washington, DC 20004    )
    )
9314 Crosby Rd.    )
Silver Spring, MD 20910    )
    )
JOSEPH GRANT, in his official and    )
individual capacities as Commissioner,    )
Tax-Exempt / Government Entities Division,    )
INTERNAL REVENUE SERVICE,    )
1111 Constitution Avenue, NW    )
Washington, DC 20004    )
    )
7621 Boulder St    )
Springfield, VA 22151    )
    )
NIKOLE FLAX, in her official and    )
individual capacities as Senior Technical    )
Advisor, Exempt Organization Division,    )
INTERNAL REVENUE SERVICE,    )
1111 Constitution Avenue, NW    )
Washington, DC 20004    )
    )
7510 Bybrook Ln.    )
Chevy Chase, MD 20815    )

)
JUDITH E. KINDELL, in her official  and )
individual capacities as Senior Technical )
Advisor, Exempt Organization Division, )
INTERNAL REVENUE SERVICE, )
1111 Constitution Avenue, NW )
Washington, DC 20004 )
)
4001 9th St. N Apt. 927 )
Arlington, VA 22203 )
)
HOLLY PAZ, in her official and individual )
capacities, as Acting Manager, EO )
Technical Unit, Acting Director, )
Office of Rulings & Agreements, and )
Director, Office of Rulings & Agreements, )
INTERNAL REVENUE SERVICE, )
1111 Constitution Avenue, NW )
Washington, DC 20004 )
)
5703 Northfield Rd. )
Bethesda, MD 20817 )
)
MICHAEL SETO, in his official and )
individual capacities as Acting Manager, )
EO Technical Unit, INTERNAL REVENUE )
SERVICE, )
1111 Constitution Avenue, NW )
Washington, DC 20004 )
)
1711 Massachusetts Ave., N.W., #512 )
Washington, D.C.  20036 )
)
STEVEN GRODNITZKY, in his official and )
individual capacities, as Manager, EO )
Technical Unit, )
INTERNAL REVENUE SERVICE, )
1111 Constitution Avenue, NW )
Washington, DC 20004 )
)
916 6th Street, NE )
Washington, DC 20002 )
)
CARTER HULL, in his official and )
individual capacities, as Tax Law )
Specialist, Exempt Organizations, )

INTERNAL REVENUE SERVICE,        )
1111 Constitution Avenue, NW     )
Washington, DC 20004             )
                                 )
10802 Huntley Pl.                )
Silver Spring, MD 20902          )
                                 )
            and                  )
                                 )
UNKNOWN NAMED OFFICIALS OF       )
THE INTERNAL REVENUE SERVICE, in )
their official and individual capacities, )
1111 Constitution Avenue, NW     )
Washington, DC 20004             )
                                 )
            Defendants.          )

## SECOND AMENDED COMPLAINT

Plaintiffs, by their undersigned counsel, herein state their Second Amended Complaint and

Causes of Action against the United States of America; the Internal Revenue Service (IRS); Jacob

Lew, in his official capacity as Secretary of the United States Department of the Treasury; Daniel

Werfel, in his official capacity as Acting Commissioner of the IRS; Douglas H. Shulman,

individually and in his official capacity as Commissioner of the IRS; William Wilkins, individually

and in his official capacity as Chief Counsel of the IRS; Stephen T. Miller, individually and in his

official capacity as Deputy Commissioner, Services & Enforcement and Acting Commissioner of the

IRS; Lois G. Lerner, individually and in her official capacity as Director of the Exempt

Organizations Division of the IRS; Sarah Hall Ingram, individually and in her official capacity as

Commissioner of the Tax-Exempt/Government Entities Division of the IRS; Judith E. Kindell,

individually and in her official capacity as Senior Technical Adviser in the Exempt Organizations

Division of the IRS; Nikole Flax, individually and in her official capacity as Chief of Staff of the

Office of the Commissioner and Senior Technical Adviser of the Exempt Organizations Division of

the IRS; Joseph Grant, individually and in his official capacity as Commissioner of the Tax-Exempt/Government Entities Division of the IRS; Holly Paz, individually and in her official capacity as Acting Manager of the IRS EO Technical Unit, Acting Director of the EO Office of Rulings & Agreements, and Director of the EO Office of Rulings & Agreements; Michael Seto, individually and in his official capacity as Acting Manager, IRS EO Technical Unit; Steven Grodnitzky, individually and in his official capacity as Manager, IRS EO Technical Unit; Carter Hull, individually and in his official capacity as IRS EO Tax Law Specialist; and Unknown Named Officials of the IRS (Unknown Named IRS Officials), individually and in their official capacities:

<u>INTRODUCTION</u>

1.      On May 10, 2013, Defendant Lois Lerner apologized in a speech before the American Bar Association for a pattern of misconduct whereby the IRS intentionally and systematically targeted for additional and unconstitutional scrutiny conservative organizations applying for tax-exemption.

2.      Under the IRS scheme – more fully outlined below – IRS officials working in offices from California to Washington, DC, pulled applications from conservative organizations, delayed processing those applications for sometimes well over a year, then made harassing, probing, and unconstitutional requests for additional information that often required applicants to disclose, among other things, donor lists, direct and indirect communications with members of legislative bodies, Internet passwords and usernames, copies of social media and other Internet postings, and even the political and charitable activities of family members.

3.      The IRS scheme had a dramatic impact on targeted groups, causing many to curtail lawful activities, expend considerable unnecessary funds, lose donor support, and devote countless hours of time to responding to onerous and targeted IRS information requests that were outside the scope of legitimate inquiry. The IRS scheme obstructed the free speech opportunities of the targeted groups.

4.      Unlawful IRS targeting, despite public apologies, is ongoing. Multiple conservative organizations still have not received final determinations on their applications, are still receiving intrusive requests for information, and are still suffering financial harm. Some of these organizations, even after receiving tax-exempt status, have been subjected to continued monitoring by the IRS based on the same unlawful purposes for which their applications were originally targeted.

5.      This lawsuit seeks damages, declaratory, and injunctive relief sufficient to finally halt IRS targeting, compensate targeted groups for the damages caused by the intentional unlawful actions of named defendants, and strike down all unconstitutional rules, regulations, practices, and procedures that empowered the IRS's unlawful acts.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 2201 (Declaratory Judgment Act), and 5 U.S.C. § 702 (Administrative Procedure Act).

7.      This Court also has subject matter jurisdiction under 28 U.S.C. §1346(e) because this action is also brought pursuant to 26 U.S.C. §7428.

8.      Neither the Anti-Injunction Act, 26 U.S.C. §7421, nor the "federal taxes" carve-out from the Declaratory Judgment Act, 28 U.S.C. §2201, bar this action because, with the permitted exception of Plaintiffs' claims under 28 U.S.C. §7428, this action is not brought for the purpose of restraining the assessment or collection of any tax.  Moreover, this action is properly brought because it satisfies one or more of the judicially-recognized exceptions to the Anti-Injunction and Declaratory Judgment Acts.

9.      The United States has waived its sovereign immunity in this action pursuant to 5 U.S.C. § 702, 26 U.S.C. § 7428, 26 U.S.C. § 7431, and 28 U.S.C. §2201.

10.     Personal jurisdiction over the United States, the IRS, and the named individual Defendants is proper in this Court because they "maintain [their]…principal place of business in" the District of Columbia, D.C. Code § 13-422 and have "transact[ed]…business in the District of Columbia." D.C. Code § 13-423(a)(1).

11.     Personal jurisdiction over individual Defendants William Wilkins, Douglas H. Shulman, Steven Grodnitzky, and Michael Seto is also proper in this Court because they are "domiciled in" the District of Columbia and at times relevant to this Complaint "maintain[ed] [their]…principal place of business in" the District of Columbia, D.C. Code § 13-422.

12.     Upon information and belief, personal jurisdiction over the Unknown Named Employees of the IRS is proper in this Court for the following reasons:

a.  Each of the Unknown Named IRS Employees established minimum contacts with this forum by virtue of deliberate actions or omissions, described more thoroughly herein, regarding the processing of Plaintiffs' applications for tax-exempt status within this forum.  Such involvement also satisfies the conditions for jurisdiction within this forum under D.C. Code § 13-423(a)(1) ("transacting…business in the District of Columbia") and D.C. Code § 13-423(a)(4) ("causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia" while "engag[ing] in [a] persistent course of conduct" within the District of Columbia);

b.  Each of the Unknown Named IRS Employees worked in concert with one or more of the named IRS Defendants domiciled, having their principal place of business and/or transacting business in the District of Columbia in furtherance of a civil conspiracy aimed at creating, revising, implementing, and applying the

unlawful and discriminatory IRS Scheme, described more thoroughly herein, in

violation of the statutory and constitutional rights of Plaintiffs and others.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) since Defendants reside and/or

perform their official duties in the District of Columbia, and a substantial part of the events and

omissions giving rise to Plaintiffs' claims occurred in the District of Columbia.

14.     Venue is also proper in this Court pursuant to 26 U.S.C. § 7428(a) since this action seeks a

declaratory judgment regarding initial qualification of an organization for exemption from taxation

pursuant to 26 U.S.C. § 501(c)(3).

## PARTIES

### THE PLAINTIFFS

#### *Plaintiffs Still Awaiting Determination of 501(c)(3) Tax-Exempt Status*

15.     Linchpins of Liberty is a not-for-profit Tennessee corporation seeking 501(c)(3) tax-exempt

status from the IRS.

16.     Patriots Educating Concerned Americans Now (PECAN) is a not-for-profit District of

Columbia organization seeking 501(c)(3) tax-exempt status from the IRS.

17.     Liberty Township Tea Party, Inc. is a not-for-profit Ohio corporation seeking 501(c)(3) tax-

exempt status from the IRS.

18.     AMEN (Abortion Must End Now) is a not-for-profit Arizona corporation seeking 501(c)(3)

tax-exempt status from the IRS.  While the file is administratively closed, AMEN still seeks further

review from the IRS as to its tax-exempt status.

#### *Plaintiffs Still Awaiting Determination of 501(c)(4) Tax-Exempt Status*

19.     Greenwich Tea Party Patriots of South Jersey, LLC is a not-for-profit New Jersey

corporation seeking 501(c)(4) tax-exempt status from the IRS.

20.     Greater Phoenix Tea Party is a not-for-profit Arizona corporation seeking 501(c)(4) tax-exempt status from the IRS.

21.     Unite in Action, Inc. is a not-for-profit Florida corporation seeking 501(c)(4) tax-exempt status from the IRS.

22.     Allen Area Patriots is a not-for-profit Texas corporation seeking 501(c)(4) tax-exempt status from the IRS.

23.     Laurens Co. Tea Party is a not-for-profit South Carolina corporation seeking 501(c)(4) tax-exempt status from the IRS.

24.     North East Tarrant Tea Party, Inc. is a not-for-profit Texas corporation seeking 501(c)(4) tax-exempt status from the IRS.

25.     Myrtle Beach Tea Party, Inc. is a not-for-profit South Carolina corporation seeking 501(c)(4) tax-exempt status from the IRS.

26.     Albuquerque Tea Party, Inc. is a not-for-profit New Mexico corporation seeking 501(c)(4) tax-exempt status from the IRS.

27.     Arlington Tea Party, Inc. is a not-for-profit Texas corporation seeking 501(c)(4) tax-exempt status from the IRS.  While the file is administratively closed, Arlington Tea Party, Inc. still seeks further review from the IRS as to its tax-exempt status.

28.     Acadiana Patriots is a not-for-profit Louisiana corporation seeking 501(c)(4) tax-exempt status from the IRS.[1]

### *Plaintiffs Receiving Tax-Exempt Status Following Significant IRS Delay*

29.     Colorado 9-12 Project is a not-for-profit Colorado corporation with 501(c)(4) tax-exempt status whose application was approved thirteen (13) months after it was submitted.

---

[1] Exhibit 2, attached hereto and incorporated herein by reference, contains the Forms 1023 and 1024 submitted by the fourteen (14) Plaintiffs still awaiting approval of their applications for tax-exempt status.

30.     Oregon Capitol Watch Foundation is a not-for-profit Oregon corporation with 501(c)(3) tax status whose application was approved more than two (2) years after it was first submitted.

31.     San Antonio Tea Party, Inc. is a not-for-profit Texas organization with 501(c)(4) tax-exempt status whose application was approved nearly two (2) years after it was submitted.

32.     Wetumpka Tea Party, Inc. is a not-for-profit Alabama corporation with 501(c)(4) tax-exempt status whose application was approved twenty-one (21) months after it was submitted.

33.     OKC PIA Association is a not-for-profit Oklahoma corporation with 501(c)(4) tax-exempt status whose application was approved nearly two (2) years after it was submitted.

34.     Richmond Tea Party, Inc. is a not-for-profit Virginia corporation with 501(c)(4) tax-exempt status whose application was approved over thirty (30) months after it was submitted.

35.     Hawaii Tea Party is a not-for-profit Hawaii corporation with 501(c)(4) tax-exempt status whose application was approved more than two (2) years after it was submitted.

36.     Shelby County Liberty is a not-for-profit Ohio corporation with 501(c)(4) tax-exempt status whose application was approved more than two (2) years after it was submitted.

37.     Manassas Tea Party is a not-for-profit Virginia organization with 501(c)(4) tax-exempt status whose application was approved more than two (2) years after it was submitted.

38.     The Honolulu Tea Party is a not-for-profit Hawaii corporation with 501(c)(4) tax-exempt status whose application was approved approximately fifteen (15) months after it was submitted.

39.     Waco Tea Party is a not-for-profit Texas corporation with 501(c)(4) tax-exempt status whose application was approved more than thirty (30) months after it was submitted.

40.     Kentucky 9/12 Project, Inc. is a not-for-profit Kentucky corporation with 501(c)(4) tax-exempt status whose application was approved twenty-seven (27) months after it was submitted.

41.     Chattanooga Tea Party is a not-for-profit Tennessee corporation with 501(c)(4) tax-exempt status whose application was approved, but only prospectively, approximately thirty (30) months after it was submitted.

42.     American Patriots Against Government Excess is a not-for-profit Ohio corporation with 501(c)(4) tax-exempt status whose application was approved approximately thirty (30) months after it was submitted.

43.     Rochester Tea Party Patriots is a not-for-profit Minnesota corporation that initially sought 501(c)(3) tax-exempt status, was instructed by the IRS to apply for 501(c)(4) status, and ultimately obtained 501(c)(4) tax-exempt status.  Rochester Tea Party Patriots first applied for tax-exempt status on August 11, 2009 and its application was approved over three (3) years after it was submitted.

44.     Roane County Tea Party is a not-for-profit Tennessee corporation that obtained 501(c)(4) tax-exempt status following significant IRS delay but subsequently had its status revoked.

45.     Protecting American Values, Inc. is a not-for-profit California corporation with 501(c)(3) tax-exempt status whose application was approved seventeen (17) months after it was submitted.

46.     Shenandoah Valley Tea Party Patriots is a not-for-profit Virginia corporation with 501(c)(4) tax-exempt status whose application was approved more than two (2) years after it was submitted.

47.     First Coast Tea Party, Inc. is a not-for-profit Florida corporation with 501(c)(4) tax-exempt status whose application was approved more than two (2) years after it was submitted.

48.     Mid-South Tea Party is a not-for-profit Tennessee corporation with 501(c)(4) tax-exempt status whose application was approved fourteen (14) months after it was submitted.

49.     First State Patriots, Inc. is a not-for-profit Delaware corporation with 501(c)(3) tax-exempt status whose application was approved seventeen (17) months after it was submitted.

50.      East Jersey Tea Party is a not-for-profit New Jersey corporation with 501(c)(4) tax-exempt status whose application was approved nineteen (19) months after it was submitted.

*Plaintiffs Choosing not to Pursue Tax-Exempt Status due to Unlawful IRS Conduct*

51.      San Fernando Valley Patriots, Inc. is a not-for-profit California corporation that sought 501(c)(4) tax-exempt status from the IRS but withdrew its application due to Defendants' significant delay in issuing a tax-exempt determination, and Defendants' unconstitutional requests for additional information.

52.      Portage County Tea Party, Inc. is a not-for-profit Ohio corporation that sought 501(c)(4) tax-exempt status from the IRS but withdrew its application due to Defendants' significant delay in issuing a tax-exempt determination, and Defendants' unconstitutional requests for additional information.

53.      The Common Sense Campaign Corp. is a not-for-profit Alabama corporation that sought 501(c)(4) tax-exempt status from the IRS but ultimately had its application file closed by the IRS because of its unwillingness to provide information responsive to Defendants' unconstitutional requests for additional information.

54.      Tri-Cities Tea Party is a not-for-profit Washington corporation that sought 501(c)(4) tax-exempt status from the IRS but withdrew its application due to Defendants' significant delay in issuing a tax-exempt determination, and Defendants' unconstitutional requests for additional information.

55.      Mississippi Tea Party, Inc. is a not-for-profit Mississippi corporation that sought 501(c)(4) tax-exempt status from the IRS but withdrew its application due to Defendants' significant delay in issuing a tax-exempt determination and Defendants' unconstitutional requests for additional information.

## THE DEFENDANTS

56.     The United States of America is a proper defendant pursuant to 5 U.S.C. § 702, 26 U.S.C. §

7431(a), and 28 U.S.C. § 1346(e).

57.     Defendant Internal Revenue Service ("IRS") is an agency of the United States that is

responsible for administration and enforcement of provisions of the Internal Revenue Code, as well

as all other IRS rules, regulations, policies, procedures, and practices.

58.     Defendant Jacob Lew is Secretary of the United States Department of the Treasury, an

agency of the United States that is responsible for administration and enforcement of provisions of

the Internal Revenue Code, as well as all other IRS rules, regulations, policies, procedures, and

practices. Defendant Lew is named as a party only in his official capacity.

59.     Defendant Daniel Werfel is Acting Commissioner of the Internal Revenue Service, an

agency of the United States that is responsible for administration and enforcement of provisions of

the Internal Revenue Code, as well as all other IRS rules, regulations, policies, procedures, and

practices. Defendant Werfel is named as a party only in his official capacity.

60.     Defendant William Wilkins is, and was at all times relevant herein, Chief Counsel for the

Internal Revenue Service. Defendant Wilkins holds one of two politically appointed positions within

the IRS. In his capacity as IRS Chief Counsel, Defendant Wilkins is responsible for advising the IRS

and its officers and employees regarding lawful application and enforcement of the Internal Revenue

Code, as well as all other IRS rules, regulations, policies, procedures, and practices.  Defendant

Wilkins is sued in his official capacity and in his individual capacity for acts and omissions that

occurred in connection with duties performed on behalf of the United States.

61.     Defendant Douglas H. Shulman was, during at least a part of the relevant time period,

Commissioner of the Internal Revenue Service, an agency of the United States that is responsible for

administration and enforcement of provisions of the Internal Revenue Code, as well as all other IRS rules, regulations, policies, procedures, and practices. Defendant Shulman is sued in his official capacity and in his individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

62.     Defendant Steven T. Miller is a former Acting Commissioner of the Internal Revenue Service. During the relevant time period, Defendant Miller served as either Acting Commissioner of the IRS or Deputy Commissioner for Services and Enforcement, and was, at all times relevant herein, responsible for the administration and enforcement of the provisions of the Internal Revenue Code, as well as all other IRS rules, regulations, policies, procedures, and practices. Defendant Miller is sued in his official capacity and in his individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

63.     Defendant Lois G. Lerner was at all times relevant herein the Director of the Exempt Organizations (EO) Division of the Internal Revenue Service and responsible for the administration and enforcement of all rules, policies, procedures, and practices of the EO Division. Defendant Lerner is sued in her official capacity and in her individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

64.     Defendant Sarah Hall Ingram was, during at least a part of the relevant time period, Commissioner of the Tax-Exempt/Government Entities Division of the IRS. In her position, Ms. Ingram was responsible for overseeing the administration of tax law relating to tax-exempt organizations, including overseeing other IRS officers and employees involved in the processing of determinations regarding applications for tax-exempt status. Defendant Ingram is sued in her official capacity and in her individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

65.     Defendant Judith E. Kindell was, at all times relevant herein, Senior Technical Adviser in the Exempt Organizations Division of the IRS responsible for providing technical advice to Director of the Exempt Organizations Division with respect to the administration and enforcement of all its rules, policies, procedures, and practices. Defendant Kindell is sued in her official capacity and in her individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

66.     Defendant Nikole Flax was, at all times relevant herein, either Chief of Staff of the Office of the Commissioner or Senior Technical Adviser of the Exempt Organizations Division of the IRS. As Chief of Staff of the Office of the Commissioner she was responsible for the administration and enforcement of the provisions of the Internal Revenue Code as well as all other IRS rules, regulations, policies, procedures, and practices. As Senior Technical Adviser in the Exempt Organizations Division she responsible for providing technical advice to the Director of the Exempt Organizations Division with respect to the administration and enforcement of all its rules, policies, procedures, and practices. Defendant Flax is sued individually and in her official capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

67.     Defendant Joseph Grant was, at all times relevant herein, either Commissioner or Deputy Commissioner of the Tax-Exempt/Government Entities Division of the IRS. Mr. Grant's current position with the government is unknown to Plaintiffs. In his position as Commissioner and Deputy Commissioner of the Tax-Exempt/Government Entities Division of the IRS, Mr. Grant was responsible for overseeing the administration of tax law relating to tax-exempt organizations and managing the day-to-day operations of the Division, including overseeing other IRS officers and employees involved in the processing of determinations regarding applications for tax-exempt status.

Defendant Grant is sued in his official capacity and in his individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

68.     Defendant Holly Paz is the former Director, EO Office of Rulings and Agreements, of the IRS. Her current position with the government is unknown to Plaintiffs. During the relevant time period, Ms. Paz served as Director, Rulings and Agreements, Acting Manager, EO Technical Unit, or Acting Director, Office of Rulings and Agreements. In her various positions, Ms. Paz was responsible for the processing of determinations regarding applications for tax-exempt status, including providing guidance and oversight to other IRS officers and employees involved in such processing. Defendant Paz is sued in her official capacity and in her individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

69.     Defendant Michael Seto was, at all times relevant herein, the Acting Manager, EO Technical Unit, of the IRS. During the relevant time period, in this capacity, Mr. Seto was responsible for overseeing the processing of determinations regarding applications for tax-exempt status, including providing guidance and oversight to other IRS officers and employees involved in such processing. Defendant Seto is sued in his official capacity and in his individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

70.     Defendant Steven Grodnitzky is, and was at all times relevant herein, a Manager, EO Technical Unit, of the IRS. During the relevant time period, in this capacity, Mr. Grodnitzky was responsible for overseeing the processing of determinations regarding applications for tax-exempt status, including providing guidance and oversight to other IRS officers and employees involved in such processing. Defendant Grodnitzky is sued in his official capacity and in his individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

71.     Defendant Carter Hull was, at all times relevant herein, a Tax Law Specialist in the IRS EO office. During the relevant time period, in this capacity, Mr. Hull was responsible for, among other things, overseeing and directing other IRS employees in the processing of applications for tax-exemption. Defendant Hull is sued in his official capacity and in his individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

72.     The Unknown Named IRS Officials are unidentified individual officials within the Internal Revenue Service who are responsible for administration and enforcement of all rules, policies, and practices of their respective divisions of the IRS. Each Unknown Named Defendant is sued in his or her official capacity and in his or her individual capacity for acts and omissions that occurred in connection with duties performed on behalf of the United States.

## FACTUAL ALLEGATIONS

### *Introduction*

73.     Plaintiffs are all organizations that applied for 501(c)(3) or 501(c)(4) tax-exempt status with the IRS between 2009 and 2012. Plaintiffs are entitled to the rights protected by the First Amendment to the United States Constitution, including the right to freely associate and engage in speech as tax-exempt organizations.

74.     The facts of this case reflect a course of conduct by a faction of the United States government that would make the Founders weep and which should outrage every American. The Defendants, acting in their official and/or individual capacities, have, based upon their own viewpoints or those of their constituencies or benefactors, obstructed other law-abiding citizens from freely associating together and giving voice to their beliefs. This deprivation occurred solely and unconstitutionally based on the perceived beliefs and viewpoints of those citizens whose rights have been deprived.

75.     A bedrock principle in the founding of this Country is the right of every citizen, regardless of his or her viewpoint, to associate with like-minded individuals and express their views. These rights are embodied in the First Amendment to the United States Constitution.

76.     Freedom of speech and association were recognized as fundamental rights by the Founders.  George Washington stated that "[i]f freedom of speech is taken away then dumb and silent we may be led, like sheep to the slaughter."  Benjamin Franklin wrote that "[w]ithout Freedom of thought, there can be no such Thing as Wisdom; and no such thing as public Liberty, without Freedom of speech."  Franklin also stated:  "In those wretched countries where a man cannot call his tongue his own, he can scarce call anything his own.  Whoever would overthrow the liberty of a nation must begin by subduing the freeness of speech."

77.     The United States Supreme Court, in *Sweezy v. New Hampshire,* 354 U.S. 234, 250 (1957), recognized:  "Our form of government is built on the premises that every citizen shall have the right to engage in political expression and association . . . .  Exercise of these basic freedoms in America has traditionally been through the media of political associations."

### *The Rise of the Tea Party and Other Conservative Groups*

78.     On February 19, 2009, CNBC Business News Editor Rick Santelli engaged in a televised "rant" regarding wasteful government spending.  Mr. Santelli's "rant" is credited with sparking the national Tea Party movement, as recognized in some media the next day.

79.     On February 27, 2009, the first nationwide Tea Party protest was held.

80.     In March 2009, President Obama began the process of constructing legislation to reform the health care system.  That process ultimately led to the passage of the Patient Protection and Affordable Care Act ("ACA").

81.     On May 1, 2009, Plaintiff Mississippi Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be eighteen (18) months before the IRS took any meaningful action with regard to this Plaintiff's application.

82.     On August 11, 2009, Plaintiff Rochester Tea Party Patriots applied to the IRS for 501(c)(3) tax-exempt status.  It would be twenty-eight (28) months before the IRS took any meaningful action with regard to this Plaintiff's application.

83.     In August 2009, during the summer congressional recess, many members of Congress conducted town hall meetings to gather public opinion on the health care legislation that was making its way through Congress.  Ordinary citizens attending these town hall meetings voiced their opposition to that legislation.  Also during that month, Tea Party groups organized protests of the health care legislation.

84.     The Tea Party protests against health care legislation generated insulting and demeaning statements by Democrat leaders, including the then Speaker of the House of Representatives, which were designed to chill the free speech of Tea Party groups, intimidate members of those groups, and subject those members to public ridicule and hostility, all because they expressed opinions with which these Democrat leaders disagreed.

85.     In November 2009, Plaintiff Chattanooga Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately eight (8) months before the IRS took any meaningful action with regard to this Plaintiff's application.

86.     On or about December 28, 2009, Plaintiff Albuquerque Tea Party, Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately four and one-half (4 ½) months before the IRS took any meaningful action with regard to this Plaintiff's application.  On or about this same date, Plaintiff Richmond Tea Party applied to the IRS for 501(c)(4) tax-exempt

status.  It would be approximately nine (9) months before the IRS took any meaningful action with regard to this Plaintiff's application.

87.     On or about December 31, 2009, Plaintiff Kentucky 9/12 Project Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be thirteen (13) months before the IRS took any meaningful action with regard to this Plaintiff's application.

88.     Also in December 2009, Plaintiff American Patriots Against Government Excess applied to the IRS for 501(c)(4) tax-exempt status.  It would be twenty-four (24) months before the IRS took any meaningful action with regard to this Plaintiff's application.

89.     On January 19, 2010, Republican Scott Brown was elected to serve the remaining term of the late Senator Edward Kennedy.  Senator Brown's victory was the result of significant grass roots efforts.  One of Senator Brown's campaign promises was that he would vote against passage of the ACA.

90.     On January 21, 2010 the United States Supreme Court announced its decision in *Citizens United v. FEC*, 558 U.S. 310 (2010).  In that case, the Court held that corporations and labor unions enjoy free speech protections related to elections.  Writing for the majority, Justice Kennedy affirmed that "[i]f the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech." Without a hint of irony, President Obama called the ruling "a major victory for big oil, Wall Street, banks, health insurance companies and the other powerful interests that marshal their power every day in Washington *to drown out the voices of everyday Americans."*  (Emphasis added).

91.     On January 27, 2010 the President delivered his State of the Union address during which, in unprecedented fashion, he castigated the Supreme Court for its decision in *Citizens United* while members of the Court sat before him unable to respond.

*The Start of the Campaign to Silence Plaintiffs and Other Conservative Groups*

92.     As early as February 2010, the IRS began identifying applications for additional scrutiny (including the issuance of letter requests for additional information) from organizations seeking tax-exemption whose names included the terms "Tea Party," "Patriots," "9/12," or other conservative-sounding names, such as "We the People," or "Take Back the Country." *See* Report dated May 14, 2013 from the Treasury Inspector General for Tax Administration ("TIGTA"), attached hereto as Exhibit 1 ("Ex. 1") at 5-6, 30.

93.     In March 2010, and possibly earlier, Defendant Paz became aware of the existence and application of the targeting scheme and requested that certain applications be transferred to the National Office of the IRS in Washington, D.C.

94.     All applications from organizations whose names included the terms "Tea Party," "Patriots," or "9/12" were discriminatorily singled out for additional scrutiny by the IRS. *See* Ex. 1, at 8.

95.     The IRS internally referred to such applications as "Tea Party cases." *See* Ex. 1, at 6.

96.     On March 5, 2010, Plaintiff Patriots Educating Concerned Americans Now ("PECAN") applied to the IRS for 501(c)(3) tax-exempt status.  It would be twenty-three (23) months before the IRS took any meaningful action with regard to this Plaintiff's application.

97.     On March 16, 2010, Plaintiff Roane County Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be over twenty-one (21) months before the IRS took any meaningful action with regard to this Plaintiff's application.

98.     In March 2010, Plaintiffs AMEN (Abortion Must End Now) applied to the IRS for 501(c)(3) and Tri-Cities Tea Party applied for 501(c)(4) tax-exempt status.  It would be six (6) and fifteen (15) months, respectively, before the IRS took any meaningful action with regard to these Plaintiffs' applications.

99.     At least as early as April 2010, the Acting Manager, EO Technical Unit, Defendant Grodnitzky, was aware of the selective targeting of and discrimination against the "Tea Party cases." *See* Ex. 1, at 31.

100.    While the IRS was beginning its campaign to interfere with the rights of Plaintiffs and similar organizations, Senator Chuck Schumer, a Democrat from New York, announced his intention to introduce the "DISCLOSE Act," which he stated would target corporations that engaged in free speech and would "make them think twice."

101.    In April 2010, the IRS's Determination Unit ("DU") and Determinations Specialists in the IRS's Cincinnati office requested that the Technical Unit provide assistance with identifying and processing the applications submitted by conservative groups.  The DU Manager requested status updates on these requests for assistance several times.  *See* Ex. 1, at 20.

102.    In April 2010, the Acting Manager, EO Technical Unit (upon information and belief, Defendant Grodnitzky) directed the preparation of a Sensitive Case Report regarding the "Tea Party cases." *See* Ex. 1, at 31.

103.    The Technical Unit prepared the Sensitive Case Report in mid-April 2010. *See* Ex. 1, at 32.

104.    Upon information and belief, according to the usual custom and practice, the Sensitive Case Report was shared with then-Director, Rulings and Agreements Office (upon information and belief, Robert Choi), and a summary of the Report was provided to Defendant Lerner, Director, EO Division. *See* Ex. 1, at 32.

105.    Between April and July 2010, the Acting Manager, EO Technical Unit (upon information and belief, Defendant Grodnitzky) and his team worked with other IRS agents and officials, including the Unknown Named IRS Officials, to discriminatorily identify additional "Tea Party" applications and to review letters requesting additional information from "Tea Party" applicants. *See* Ex. 1, at 32-33.

106.    On or about April 21, 2010, Plaintiff Albuquerque Tea Party, Inc. received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

107.    On April 20, 2010, Plaintiff Shenandoah Valley Tea Party Patriots applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately twenty-one (21) months before the IRS took any meaningful action with regard to this Plaintiff's application.

108.    On April 29, 2010, Representative Chris Van Hollen introduced the House version of the DISCLOSE Act.

109.    On or about May 13, 2010, Plaintiff Unite in Action, Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be twenty (20) months before the IRS took any meaningful action with regard to this Plaintiff's application.

110.    On May 26, 2010, Plaintiff Hawaii Tea Party applied for 501(c)(4) tax-exempt status.  It would be four (4) months before the IRS took any meaningful action with regard to this Plaintiff's application.

111.    On or about June 8, 2010, Plaintiff Manassas Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately seventeen (17) months before the IRS took any meaningful action with regard to this Plaintiff's application.

112.    On June 24, 2010 the DISCLOSE Act passed the House of Representatives with only two Republicans voting in favor.

113.    In July 2010, Defendant Hull became aware of the IRS' practice of targeting "Tea Party cases" and began to assist in crafting and implementing that policy.   Defendant Hull was supervised in this process by his manager, Defendant Grodnitzky.

114.    On July 6, 2010, Plaintiff Chattanooga Tea Party received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

115.    On or about July 7, 2010, Plaintiff Waco Tea Party applied to the IRS for 501(c)(4) tax-exempt status.   It would be approximately nineteen (19) months before the IRS took any meaningful action on this Plaintiff's application.

116.    On July 9, 2010, Plaintiff The Common Sense Campaign Corp. applied to the IRS for 501(c)(3) tax-exempt status.   It would be nineteen (19) months before the IRS took any meaningful action with regard to this Plaintiff's application.

117.    On or about July 26, 2010, Plaintiff Myrtle Beach Tea Party, Inc. applied to the IRS for 501(c)(4) tax-exempt status.   It would be eighteen (18) months before the IRS took any meaningful action with regard to this Plaintiff's application.

118.    On or about July 20, 2010, Plaintiff Allen Area Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be eighteen (18) months before the IRS took any meaningful action with regard to this Plaintiff's application.

119.    On July 21, 2010, Senator Schumer formally introduced the DISCLOSE Act in the Senate.  The legislation had no Republican co-sponsors.   The Act failed to pass on July 27, 2010.

120.    On or about July 22, 2010, Plaintiff Laurens Co. Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be twenty-five (25) months before the IRS took any meaningful action with regard to this Plaintiff's application.

121.    On or about July 29, 2010, Plaintiff San Antonio Tea Party, Inc. applied for 501(c)(4) tax-exempt status.  It would be nineteen (19) months before the IRS took any meaningful action with regard to this Plaintiff's application.

122.    In July 2010, True the Vote, a conservative grassroots organization, applied for tax-exempt status.  True the Vote's founder then endured six FBI domestic terrorist inquiries, investigations by the Occupational Safety and Health Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, and Texas environmental quality officials, as well as multiple IRS audits.

123.    On August 31, 2010, Plaintiff First Coast Tea Party, Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be eighteen (18) months before the IRS took any meaningful action with regard to this Plaintiff's application.

124.    In August 2010, IRS employees distributed a listing known as the "BOLO" ("Be On The Lookout") list.  Criteria for the BOLO list included Tea Party and other organizations with conservative sounding names that had applied for tax-exempt status under 501(c)(3) or 501(c)(4).  The BOLO list contained no terms that would identify progressive or liberal groups. In other words, the BOLO criteria were directed solely at those organizations whose philosophical viewpoint was conservative and at odds with the current administration.

### *The President Joins the Campaign*

125.    On August 9, 2010, President Obama joined what the IRS and Democrat members of Congress had already started:  a relentless campaign to stifle the free speech of those protesting

29

his and Democrats' policies and the direction of the federal government. The President warned of "attack ads run by shadowy groups with harmless-sounding names" during his weekly radio address.  The President said:  "We don't know who's behind these ads and we don't know who's paying for them . . . you don't know if it's a foreign controlled corporation . . . .  The only people who don't want to disclose the truth are people with something to hide."

126.    On August 10, 2010, having heard nothing from the IRS concerning its tax-exempt application for approximately one year, Plaintiff Rochester Tea Party Patriots submitted a Request for Taxpayer Advocate Service Assistance, to which it never received a substantive response.

127.    In August 2010, Plaintiff Chattanooga Tea Party submitted its response to the IRS's request for information.

128.    On September 16, 2010, President Obama once again warned that some unidentified "foreign-controlled entity" could be providing "millions of dollars" for "attack ads."  Less than one week later, he complained that "nobody knows" the identities of the individuals who support conservative groups.

129.    On September 17, 2010, Plaintiff Richmond Tea Party received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled, as evidenced by the 500 plus page response that this Plaintiff sent to the IRS.

130.    On September 21, 2010, Sam Stein, in a *Huffington Post* article entitled "Obama, Dems Try to Make Shadowy Conservative Groups a Problem for Conservatives," wrote that "a senior administration official . . . urged a small gathering of reporters to start writing on what he deemed the most insidious power grab that we have seen in a long time."

131.    One day later, President Obama warned of groups opposing his policies "pos[ing] as non-for-profit social and welfare trade groups" and he claimed such groups were "guided by seasoned Republican political operatives" and potentially supported by some unidentified "foreign controlled entity."

132.    On or about September 27, 2010, the IRS sent requests for information to Plaintiffs Hawaii Tea Party and Manassas Tea Party.  Those requests, which among other things sought the resumes of the board members of these plaintiffs, were burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

133.    On September 28, 2010, the IRS sent to Plaintiff Mississippi Tea Party a request for information.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

*More Congressional Democrats Join the Campaign*

134.    On September 28, 2010, Democrat Senator Max Baucus sent a three-page letter to the IRS noting his concern about the lobbying activities by non-profit groups and claiming that the tax code was being used to "eliminate transparency in the funding of our elections." Senator Baucus urged the IRS to "survey major 501(c)(4)" groups for "possible violation of the tax laws."

135.    On the same day that Senator Baucus sent his letter to the IRS, President Obama warned that conservative organizations were "posing as non-profit groups."

136.    In October 2010, Plaintiff Wetumpka Tea Party applied to the IRS for 501(c)(4) tax-exempt status. That same month, Plaintiff OKC PIA Association applied to the IRS for 501(c)(4) tax-exempt status. It would be sixteen (16) months before the IRS took any meaningful action with regard to either of these Plaintiffs' applications.

137.    In a letter to the IRS sent on October 11, 2010, Senator Dick Durbin, a Democrat from Illinois, requested that the IRS "quickly examine the tax status of Crossroads GPS and other (c)(4) organizations that are directing millions of dollars into political advertising."

138.    On October 14, 2010, Plaintiff Hawaii Tea Party responded to the IRS's request for information, after which the IRS did nothing on its application for an additional fifteen (15) months.

139.    On that same day, President Obama called organizations with "benign sounding" names "a problem for democracy"; the next week he complained about individuals who "hide behind those front groups," called such groups a "threat to our democracy," and claimed such groups were engaged in "unsupervised" spending.

140.    On or about October 15, 2010, Plaintiff North East Tarrant Tea Party, Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be fifteen (15) months before the IRS took any meaningful action with regard to this Plaintiff's application.

141.    On October 19, 2010, Defendant Lerner stated:

> So everybody is screaming at us right now: "Fix it now before the election.  Can't you see how much these people are spending?" I won't know until I look at their 990s next year whether they have done more than their primary activity as political or not.  So I can't do anything right now.

*See* House of Representatives Interim Update Report ("Interim Report") dated September 17, 2013, attached hereto as Exhibit 3 ("Ex. 3"), 7.

142.    On or about October 20, 2010, the IRS sent an invasive request for additional information to Plaintiff AMEN (Abortion Must End Now) citing IRS regulations in such a way that the IRS's discrimination against this Plaintiff based on its viewpoint was plainly evident.  The IRS sent a second request for information to this Plaintiff on or about December 8, 2010.

143.    On or about October 23, 2010, Plaintiff San Fernando Valley Patriots, Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be sixteen (16) months before the IRS took any meaningful action with regard to this Plaintiff's application.

144.    On November 15, 2010, Plaintiff Mississippi Tea Party submitted its response to the IRS's request for information.

145.    In the November 2010 mid-term elections, the Republicans took control of the House of Representatives and significantly weakened Democrat control of the Senate.  These electoral victories were led by candidates who were associated with the Tea Party movement.

146.    In November and December of 2010, Plaintiff AMEN (Abortion Must End Now) was told by the IRS that it would need to change its name and mission in order to qualify for 501(c)(3) tax-exempt status.  This Plaintiff's refusal to respond to the IRS's intrusive and discriminatory requests for information resulted in the IRS administratively closing its file on March 25, 2011.

147.    At some point during 2010, Plaintiff Shelby County Liberty Group applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately nineteen (19) months before the IRS took any meaningful action with regard to this Plaintiff's application.

148.    On December 31, 2010, Plaintiff Kentucky 9/12 Project, Inc. applied for 501(c)(4) tax-exempt status.  It would be thirteen (13) months before the IRS took any meaningful action in with regard to this Plaintiff's application.

### *Defendants Wilkins and Lerner Join the Campaign*

149.    According to the testimony of Defendant Hull, sometime during the winter of 2010-2011, he was told by a senior advisor to Defendant Lerner that Defendant Wilkins office would need to review the applications of targeted conservative groups.

150.     According to the testimony of Defendant Seto, around the same time he received an email from Defendant Lerner stating that the applications of those targeted organizations would need to go through a "multi-tier review process" and "they will eventually have to go [through her staff]  and the chief counsel's office."

151.     Upon information and belief, Defendant Kindell, along with lawyers from Defendant Wilkins's office, devised the "multi-tier review process."

152.     On or about January 3, 2011, Plaintiff Linchpins of Liberty applied to the IRS for 501(c)(3) tax-exempt status.  While its application to the IRS has been pending, this Plaintiff has had to deal with five (5) different IRS agents.

153.     On or about January 10, 2011, Plaintiff Greater Phoenix Tea Party Patriots applied to the IRS for 501(c)(4) tax-exempt status.  It would be thirteen (13) months before the IRS took any meaningful action regarding this Plaintiff's application.

154.     On January 18, 2011, Plaintiff Protecting American Values applied to the IRS for 501(c)(3) tax-exempt status.  After telling this Plaintiff in February 2011 that it would take approximately 90 days to review the application, the IRS took no meaningful action with regard to this Plaintiff's application for approximately twelve (12) months.

155.     In January 2011, Plaintiff Liberty Township Tea Party applied to the IRS for 501(c)(3) tax-exempt status.  It would be fifteen (15) months before the IRS took any meaningful action with regard to this Plaintiff's application.

156.     In March 2011, Plaintiff Arlington Tea Party submitted its application to the IRS for 501(c)(4) tax-exempt status.  It would be eleven (11) months before the IRS took any meaningful action with regard to this Plaintiff's application.

157.    On or about April 4, 2011, Plaintiff Colorado 9/12 Project applied to the IRS for 501(c)(4) tax-exempt status.  It would be ten (10) months before the IRS took any meaningful action with regard to this Plaintiff's application.

158.    On or about April 13, 2011, Plaintiff Greenwich Tea Party Patriots of South Jersey, Inc. applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately ten (10) months before the IRS took any meaningful action with regard to this Plaintiff's application.

159.    On April 20, 2011, the White House confirmed that the President was considering issuing an Executive Order that would require all government contractors to disclose their donations to any politically active organizations.  Senate Minority Leader Mitch McConnell, a Republican from Kentucky, denounced the proposal as "a cynical effort to muzzle critics of this administration and its allies."

160.    On May 28, 2011, Plaintiff Oregon Capitol Watch applied to the IRS for 501(c)(3) tax-exempt status.  It would be twenty (20) months before the IRS took any meaningful action with regard to this Plaintiff's application.

<em><u>The Gift Tax Attempt at Stifling Conservative Speech</u></em>

161.    At least as early as May 2011, Defendants Miller and Shulman were made aware of the existence and application of the IRS's practice of targeting Tea Party and other conservative groups.

162.    At the American Bar Association Tax Section meeting in May 2011, members of the Exempt Organizations Subcommittee reported that the IRS had sent several of their conservative clients letters stating that the clients' contributions to Section 501(c)(4) organizations would be audited for potential liability under the gift tax.

163.    On May 12, 2011, *The New York Times* reported that the IRS intended to "invoke a provision that had rarely, if ever, been enforced" to collect "gift taxes" from major donations to conservative groups. Later, *The Wall Street Journal* reported that, as part of its "gift tax effort," the IRS was auditing five donors to Freedom Watch, a conservative Section 501(c)(4) organization which itself was being audited by the IRS.

164.    On May 19, 2011, six Republican members of the Senate Finance Committee sent a letter to Defendant Shulman questioning the gift tax audits and asking whether political appointees inside or outside the IRS were involved in any way in that decision.

165.    Defendant Shulman responded that the action resulted from a single matter where an IRS employee followed up on an internal referral as part of ongoing work that focuses broadly on gift tax noncompliance.

166.    On June 15, 2011, Republican Dave Camp, Chairman of the House Ways and Means Committee, questioned Defendant Shulman's veracity stating:   "Every aspect of this tax investigation, from the timing to the sudden reversal of nearly thirty years of IRS practice, strongly suggests that the IRS is targeting constitutionally-protected political speech."

167.    On July 7, 2011, the IRS suspended its open investigations of gift taxes on contributions to 501(c)(4) organizations. The IRS claimed that time was needed "to determine whether there is a need for further guidance in this case."

168.    In June 2011, Plaintiff Portage County Tea Party, Inc. applied to the IRS for 501(c)(4) tax exempt status.  It would be fifteen (15) before the IRS took any meaningful action with regards to this Plaintiff's application.

*Slight Changes in the BOLO Criteria*

169.    On June 29, 2011, Defendant Seto presented to Defendant Lerner a briefing paper concerning the targeting scheme. The briefing paper described the targeted groups as "organizations [that] are advocating on issues related to government spending, taxes, and similar matters."

170.    In July 2011, the BOLO criteria were changed to focus on "potential political lobbying" and/or "advocacy activities," but the criteria continued to focus on organizations associated with the Tea Party or groups that had conservative philosophies.  The illegal criteria remained in place for another eighteen (18) months.

171.    On July 23, 2011, Plaintiff Mid-South Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be eleven (11) months before the IRS took any meaningful action with regard to this Plaintiff's application.

172.    On July 27, 2011, Campaign Legal Center and Democracy 21 demanded that the IRS adopt "new regulations to stop section 501(c)(4) organizations from being improperly used to inject tens of millions of dollars in secret contributions into federal elections." Ultimately, these two groups would send eleven (11) letters to the IRS.

173.    On August 4, 2011, personnel from the Office of Rulings and Agreements under the direction of Defendant Paz and other IRS employees held a meeting with Defendant Wilkins in his office "so that everyone would have the latest information on the [IRS targeting scheme]."

174.    Some months after the meeting in Defendant Wilkins office, an employee from that office prepared a "template" of questions that would be sent to targeted organizations.

175.    The template questions included requests for information about targeted organizations' political activities leading up to the 2010 election.

176.    On October 10, 2011, Plaintiff Acadiana Patriots applied to the IRS for 501(c)(4) tax-exempt status.  It would be nineteen (19) months before the IRS took any meaningful action with regard to this Plaintiff's application.

<em><u>Even More Democrats Join the Campaign</u></em>

177.    On November 1, 2011, Senator Tom Udall, a Democrat from New Mexico, proposed an amendment to the U.S. Constitution empowering Congress "to regulate the raising and spending of money and in kind equivalents with respect to Federal elections. . . ."

178.    On November 15, 2011, Representative Jim McGovern, a Democrat from Massachusetts, introduced the "Peoples' Rights" Amendment, which was intended to restrict constitutional rights only to "natural persons."

179.    In November 2011, Plaintiff East Jersey Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be eleven (11) months before the IRS took any meaningful action on this Plaintiff's application.

180.    In November 2011, Plaintiff Albuquerque Tea Party, Inc. received a second request for information from the IRS comprised of seventeen (17) questions with seventeen (17) subparts.

181.    In a December 14, 2011 letter, the Campaign Legal Center and Democracy 21 accused the IRS of failing "to carry out its statutory enforcement responsibilities to prevent the abuse of the tax laws" and that such failure "could have a major impact on the 2012 elections."  Again, these two groups urged the IRS to take action "before it is too late."

182.    On December 21, 2011, Plaintiff American Patriots Against Government Excess received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

183.     On or about December 31, 2011, Plaintiff The Honolulu Tea Party applied to the IRS for 501(c)(4) tax-exempt status.  It would be approximately seven (7) months before the IRS took any meaningful action with regard to this Plaintiff's application.

184.     On January 3, 2012, Plaintiff Albuquerque Tea Party, Inc. responded to the IRS's requests for information.

185.     On January 4, 2012, the IRS sent to Plaintiff Chattanooga Tea Party a second request for information, including requests for information that duplicated the first request to which this Plaintiff had already responded.

186.     After having heard nothing from the IRS for over a year, on January 9, 2012, the Plaintiff Richmond Tea Party received from the IRS a second request for information comprised of twelve (12) questions with fifty-three (53) subparts.

187.     On January 10, 2012, the IRS sent Plaintiff Mississippi Tea Party a second request for information.

188.     On or about January 18, 2012, the IRS sent Plaintiff Roane County Tea Party a request for information.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

189.     On January 20, 2012, the IRS sent Plaintiff Tri-Cities Tea Party a request for information comprised of twenty-seven (27) questions with twenty-eight (28) subparts.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

190.     On January 26, 2012, Plaintiff Hawaii Tea Party received a second request for information from the IRS comprised of twenty-nine (29) questions with fifty-five (55) subparts.

191.     On January 27, 2012, Plaintiff Unite In Action, Inc. received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to

which the IRS was not entitled.  On August 1, 2012, the IRS sent a letter to this Plaintiff retracting the questions in its request for information and replacing them with a new set of questions.

192.    On or about January 31, 2012, Plaintiff PECAN received a request for information from the IRS that was comprised of twenty-five (25) questions with forty (40) subparts.  On this same date, Plaintiffs Shenandoah Valley Tea Party and First Coast Tea Party, Inc. received a request for information from the IRS.  The request to Plaintiff First Coast Tea Party, Inc. was comprised of eleven (11) questions and forty-five (45) subparts.   These requests were burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

193.    In January 2012, Plaintiff American Patriots Against Government Excess responded to the IRS's request for information.

194.    On or about February 1, 2012, the IRS requested additional information from Plaintiff Waco Tea Party.  That request was comprised of twenty (20) questions with nineteen (19) subparts and was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

195.    On February 2, 2012, Plaintiff San Antonio Tea Party received a request for information from the IRS comprised of nineteen (19) questions with seventy-nine (79) subparts.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

196.    On February 3, 2012, Plaintiff Wetumpka Tea Party, Inc. received a request for information from the IRS.  That request, which was comprised of seventeen (17) questions with fifty-six (56) sub-parts, was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

197.    On or about February 7, 2012, Plaintiff The Common Sense Campaign Corp. received a request for information from the IRS. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled. Also on this date, Plaintiff Shelby County Liberty Group received a request for information from the IRS comprised of ten (10) questions with twenty (20) subparts. That request was also burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

198.    On or about February 8, 2012, Plaintiffs Myrtle Beach Tea Party, Inc. and Protecting American Values, Inc. received requests for information from the IRS. Those requests were burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

199.    On February 9, 2012, Representative Van Hollen reintroduced the DISCLOSE Act.  On this same date, Plaintiff OKC PIA Association received a request for information from the IRS comprised of twenty-one (21) questions with forty-eight (48) subparts. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

200.    On February 14, 2012, Plaintiffs Greater Phoenix Area Tea Party Patriots and Linchpins of Liberty received requests for additional information from the IRS. These requests were burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

201.    Also on or about February 14, 2012, Plaintiff Kentucky 9/12 Project, Inc. received a request for information from the IRS comprised of thirty (30) questions with seventy-four (74) subparts.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

## *Still More Democrats Join the Campaign*

202.    On February 16, 2012, Democrat Senators Bennett, Franken, Merkley, Schumer, Shaheen, Udall and Whitehouse, sent a letter to the IRS demanding that the IRS investigate tax-exempt organizations for engaging in "political activities."   Senator Bennett issued an accompanying press release opining that "operations such as [Karl Rove's Grassroots GPS] should not be allowed to masquerade as charities."

203.    Also on February 16, 2012, Plaintiff Arlington Tea Party received a request for information.   That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled, including a request for a temporary username and password to access this Plaintiff's website. This Plaintiff refused to provide the intrusive, irrelevant information and as a result, the IRS closed the file on this Plaintiff's application.   On this same date, Plaintiff Manassas Tea Party received a second request for information from the IRS.

204.    On or about February 17, 2012, Plaintiff Colorado 9/12 Project received a request for information from the IRS. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

205.    On or about February 19, 2012, Plaintiffs Allen Area Patriots, Rochester Tea Party Patriots, and North East Tarrant Tea Party, Inc. received requests for information from the IRS. All three requests were burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

206.    On February 21, 2012, Plaintiff Shenandoah Valley Tea Party Patriots submitted 892 pages in response to the IRS's request for information.

207.    On February 23, 2012, Plaintiff Greenwich Tea Party Patriots of New Jersey, Inc. received its first request for additional information from the IRS. The IRS's request was

burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled. Recognizing the intrusive and improper nature of its initial request, on or about June 12, 2012, the IRS reduced its request from eight (8) questions (with numerous subparts) to just a single question.

208.    Also on February 23, 2012, Plaintiff American Patriots Against Government Excess received a second request for information from the IRS.

209.    On February 28, 2012, Mississippi Tea Party withdrew its application for tax-exempt status due to its frustration with the IRS's harassment and delay.  On this same date, the IRS sent a request for information to Plaintiff San Fernando Valley Patriots, Inc. comprised of thirty-four (34) questions with seventy-nine (79) subparts. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

210.    On February 29, 2012, Plaintiff Protecting American Values, Inc. responded to the IRS's request for information.

211.    In February 2012, Plaintiff Chattanooga Tea Party responded to the IRS's second request for information, which included requests that duplicated the first request for information.

212.    In March of 2012, in the midst of the presidential campaign, Representative Peter Welch, a Democrat from Vermont, issued a statement from his office in which he claimed that "political groups [are] masquerading as non-profits."  In his statement, Representative Welch urged the IRS to investigate "whether nonprofit 501(c)(4) organizations affiliated with SuperPACS . . . are in violation of federal law and IRS regulations."

213.    Representative Welch also sent a letter to the IRS urging that it "investigate whether any groups qualifying as social welfare organizations under section 501(c)(4) of the federal tax code are improperly engaged in political campaign activity." He further insisted that the IRS "fully

enforce the law" and "investigate and stop any abuse of the tax code by groups whose true mission is to influence the outcome of federal elections."

214.    Nine days after Representative Welch sent his letter to the IRS, Democrat Senators Schumer, Bennett, Whitehouse, Merkley, Udall, Shaheen, and Franken sent a second letter to Defendant Shulman demanding that the IRS "immediately change the administrative framework for enforcement of the tax code as it applies to groups designated as 'social welfare organizations.'"  These Senators claimed that an "absence of clarity in the administration of" the laws related to tax-exempt status could result in those organizations being "tempted to abuse" those laws and, "worse," that they might take advantage of their tax-exempt status "even though they are not legitimate social welfare organizations." The Senators further opined: "We think existing IRS regulations run afoul of the law" by allowing groups that engage in political activity to "hide behind a façade of charity work."

215.    On March 1, 2012, Plaintiff Liberty Township Tea Party received the first request for additional information from the IRS. The IRS request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled. Before this Plaintiff could respond to the first IRS request, this Plaintiff received a second request on April 4, 2012 with a cover letter signed by Defendant Lerner.

216.    On March 2, 2012, Defendant Lerner received an email from IRS Deputy Division Counsel Janine Cook referring to an article in a publication known as the *EO Tax Journal* about congressional investigations into the IRS's treatment of tax-exempt applications. Defendant Lerner responded in part: "we're going to get creamed."

217.    On March 6, 2012, *The New York Times* reported that the IRS was scrutinizing "dozens" of Tea Party organizations "demanding to know their political leanings and activities."

218.     On or about March 16, 2012, Plaintiff The Common Sense Campaign Corp. received a second request for information from the IRS, along with a cover letter from Defendant Lerner. On this same date, Plaintiff American Patriots Against Government Excess received a third request for information from the IRS.

219.     On March 27, 2012, Plaintiff First State Patriots, Inc. submitted its application to the IRS for 501(c)(3) tax-exempt status. It would be twelve (12) months before the IRS took any meaningful action with regard to this Plaintiff's application.

220.     On March 30, 2012, Plaintiff Roane County Tea Party provided a partial response to the IRS's intrusive request for information.

221.     In March of 2012, Defendant Shulman testified before a House of Representatives committee and denied that the IRS was targeting conservative organizations that had applied for tax-exempt status.

222.     On April 4, 2012, the IRS sent Plaintiff Linchpins of Liberty a second request for information under a cover letter signed by Defendant Lerner.

223.     On April 23, 2012, Defendant Wilkins met with President Obama. Two days later Defendant Wilkins's office released new guidelines for scrutinizing groups like Plaintiffs.

224.     On May 27, 2012, Plaintiff San Antonio Tea Party, Inc. submitted responses to the IRS's request for information.

225.     In May 2012, Plaintiff Liberty Township Tea Party replied to the IRS's intrusive requests.

226.     On June 18, 2012, Plaintiff Mid-South Tea Party received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

227.    On June 29, 2012, an IRS agent contacted Plaintiff PECAN stating that the IRS was revoking its burdensome, intrusive, and improper request for information of January 31, 2012, and that the IRS would send a new request for information in the next couple of weeks.  It would be nine (9) months before the IRS would send this new request for information.

228.    On July 5, 2012, the IRS contacted counsel for Plaintiff Wetumpka Tea Party, Inc. stating that it did not need the information it had sought in its burdensome, intrusive, and improper request for information that it had sent in February after all.

229.    On July 13, 2012, the IRS withdrew its earlier request for information that it had sent to Plaintiff Shelby County Liberty Group and sent a new request for information.

230.    On July 16, 2012, Plaintiff Greenwich Tea Party Patriots of New Jersey, Inc. sent to the IRS an eight (8) page response to the IRS's request for additional information. After its receipt of an additional request for information on August 2, 2012, this Plaintiff sent a ten (10) page response to the IRS.  On this same date, the IRS requested yet more information from Plaintiff First Coast Tea Party, Inc.

231.    On July 18, 2012, Plaintiff San Fernando Valley Patriots, Inc. withdrew its application for tax-exempt status in frustration over the IRS's harassment and delay.

232.    On July 27, 2012, Plaintiff Honolulu Tea Party received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

233.    Also on July 27, 2012, less than four months before the presidential election, Senator Carl Levin, a Democrat, wrote to Defendant Shulman following up on prior letters he had sent to the IRS.  Senator Levin claimed that "[o]rganizations are using the Internal Revenue Code . . . to gain tax exempt status while engaging in partisan political campaigns."  Senator Levin claimed

that "advocacy communication *is* political campaign activity" if it "coincides with an electoral campaign" and "targets voters."

234.    On or about August 1, 2012, the IRS sent a third request for additional information to Plaintiff The Common Sense Campaign Corp.  The IRS also sent a request for information to Plaintiff Portage County Tea Party. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

235.    On August 15, 2012, the IRS informed Plaintiff Waco Tea Party that it was withdrawing its February 1, 2012 request for information and said that request would be replaced with a more "narrow" request.

236.    On or about August 18, 2012, the IRS sent Plaintiff Roane County Tea Party a second request for information.

237.    On August 21, 2012, the IRS informed Plaintiffs Waco Tea Party and Tri-Cities Tea Party that it was withdrawing its previous requests for information that it had sent to these Plaintiffs.  To Plaintiff Tri-Cities Tea Party, the IRS asked eight (8) new questions containing twelve (12) subparts.

238.    On September 4, 2012, the IRS informed Plaintiff Kentucky 9/12 Project, Inc. that it no longer needed responses to its previous request for information and withdrew that request. In this letter, the IRS replaced its previous request for information with other questions.

239.    On or about September 6, 2012, the IRS sent Plaintiff Laurens County Tea Party a request for information. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

240.     On September 7, 2012, the IRS, after having failed to respond to three separate letters from counsel for Plaintiff Greater Phoenix Tea Party Patriots, sent a letter to this Plaintiff retracting its previous request for information and submitting different questions.

241.     On September 11, 2012, the IRS sent Plaintiff Waco Tea Party a second request for information.

242.     On or about September 14, 2012, the IRS sent a letter to Plaintiff Myrtle Beach Tea Party, Inc. retracting its prior request for information and submitting new questions.  These new questions were burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

243.     On September 26, 2012, the IRS sent a second request for information to Plaintiff Portage County Tea Party.

244.     On October 1, 2012, the IRS retracted its first request for information that it had sent to Plaintiff North East Tarrant Tea Party, Inc. and submitted a new set of questions to this Plaintiff.

245.     On or about October 11, 2012, Plaintiff East Jersey Tea Party received a request for information from the IRS.  That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

246.     On October 15, 2012, Plaintiff Shelby County Liberty Group submitted an 87-page response to the IRS's request for information.

247.     On October 19, 2012, Plaintiff Manassas Tea Party submitted a 21-page response to the IRS's requests for information.  On this same date, Plaintiff First Coast Tea Party, Inc. responded to the IRS's multiple requests for information.

248.     On November 13, 2012, Plaintiff Portage County Tea Party withdrew its application for tax-exempt status due to its frustration over the IRS's discriminatory and harassing conduct.

48

249.     On December 13, 2012, Plaintiff Roane County Tea Party submitted its responses to the IRS's second request for information.

250.     On December 19, 2012, Plaintiff Honolulu Tea Party submitted a 37-page response to the IRS's request for information.

251.     On December 28, 2012, Plaintiff Laurens County Tea Party submitted its response to the IRS's request for information. On this same date, Plaintiff Greater Phoenix Tea Party submitted a 78-page response to the IRS's request for additional information.

252.     On January 8, 2013, Plaintiff Linchpins of Liberty sent a 225-page response to the IRS's request for information. On this same date, Plaintiff Waco Tea Party submitted a 201-page response to the IRS's request for information.

253.     On January 9, 2013, Plaintiff Tri-Cities Tea Party withdrew its application for tax-exempt status due to its frustration over the IRS's discriminatory and harassing conduct.

254.     On January 11, 2013, the IRS sent Plaintiff North East Tarrant Tea Party, Inc. a third request for information.  This third request was inexplicably accompanied by 250+ pages copied from this Plaintiff's website.

255.     On January 13, 2013, the IRS sent Plaintiff Roane County Tea Party a third request for information, to which this Plaintiff responded on January 21, 2013.

256.     On January 16, 2013, Plaintiff Liberty Township Tea Party received a second request for additional information from the IRS. This Plaintiff responded to the IRS's second request in February 2013. Since that date, the IRS has neither communicated with this Plaintiff nor granted its application for 501(c)(3) tax-exempt status.

257.    On or about January 25, 2013, Plaintiff Oregon Capitol Watch Foundation received a request for information from the IRS. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

258.    On or about February 1, 2013, the IRS sent a letter to Plaintiff Allen Area Patriots retracting its previous request for information and submitting new questions.

259.    On February 5, 2013, Plaintiff Kentucky 9/12 Project, Inc. submitted a 228-page response to the IRS's request for information.

260.    On February 11, 2013, Plaintiff Unite In Action, Inc. submitted a 189-page response to the IRS's request for information.

261.    On March 8, 2013, Plaintiff Allen Area Patriots submitted a 57-page response to the IRS's requests for information.

262.    On March 29, 2013, the IRS sent Plaintiff First State Patriots, Inc. a request for information. That request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

263.    On April 5, 2013, Plaintiff North East Tarrant Tea Party, Inc. submitted a 588-page response to the IRS's requests for information.

264.    On or about April 22, 2013, the IRS finally submitted a new request for information to Plaintiff PECAN. The IRS's new request for information contained seventeen (17) questions with twelve (12) subparts and was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

265.    On May 6, 2013, the IRS sent to Plaintiff Linchpins of Liberty, a third request for information, despite the fact that this Plaintiff had already provided a 225-page response to the IRS's previous request for information.

266.    On May 10, 2013, Plaintiff Myrtle Beach Tea Party, Inc. responded to the IRS's requests for information.

267.    On May 22, 2013, Plaintiff First State Patriots provided an extensive response to the IRS's request for information.

268.    On May 26, 2013, the IRS sent to Plaintiff Acadiana Patriots a request for information. This request was burdensome, intrusive, and sought irrelevant information to which the IRS was not entitled.

269.    Plaintiffs Linchpins of Liberty, PECAN, Liberty Township Tea Party, Inc., and AMEN, as of the date of filing of this Second Amended Complaint, still await determinations on their applications for 501(c)(3) tax-exempt status, each of which has been pending in excess of 270 days from the date on which the organization initially requested a determination as to its tax-exempt status, which included the submission of completed Form 1023. *See* Ex. 2.

270.    Plaintiffs Linchpins of Liberty, PECAN, Liberty Township Tea Party, Inc., and AMEN, have exhausted their administrative remedies and have taken, in a timely manner, all reasonable steps to secure a tax-exemption determination, including completion and submission of all necessary documentation, including Form 1023, and compliance with all reasonable and lawful requests for information by the IRS.

### *The Different Treatment Given to Liberal Groups*

271.    In stark contrast to how the IRS, with the encouragement of the President, Democrat members of Congress, and many in the media treated Plaintiffs, organizations with mission statements that are plainly political in nature, and which openly admit to the electioneering nature of their mission, had their applications for tax-exempt status approved by the IRS in a matter of months.    For example, Missourians Organizing for Reform has as its mission

"[s]upport [for] progressive politicians." Missourians Organizing for Reform's application for tax-exempt status was granted after nine months.

272.   An even worse example of the disparate treatment of Plaintiffs and organizations like them is the IRS's approval of the Barack H. Obama Foundation (the "Foundation"), which from its establishment in 2008 until May 2011, solicited tax deductible contributions yet had never filed either a tax return, a form 990, or an application to be treated as a tax-exempt organization. When this Foundation finally filed for tax-exempt status, its application was granted in only *six weeks* and, amazingly, *made retroactive to April 30, 2008,* the date of its incorporation. The favorable determination letter for the Foundation was signed by Defendant Lerner.

273.   The Foundation did not qualify for any of the exceptions that are required to be present when retroactive tax status is granted. Moreover, the Foundation engaged in activities in a foreign country (Kenya) and had the name of a presidential candidate in its name, both factors that would ordinarily have triggered requests for additional information from the IRS rather than an expedited determination.

*The TIGTA Report*

274.   On May 14, 2013, the Treasury Inspector General for Tax Administration ("TIGTA") released the report of an IRS audit it initiated based on concerns expressed by Republican members of Congress and some in the media about the targeting of certain conservative organizations seeking tax-exempt status. *See* Ex. 1 (TIGTA Report Ref. Number: 2013-10-053) at 3.

275.   TIGTA reported that the IRS, both before and during the 2012 election cycle, had engaged in the following:

   (a)   targeting of tax-exempt applications for additional scrutiny and inquiry based on "inappropriate criteria"—including organizational names and policy positions;

(b) significantly delaying the processing of these applications, keeping them open over twice the length of time typically required to process tax-exempt applications; and

(c) requesting additional information from these applicants that was entirely unnecessary and irrelevant to the IRS's determination regarding the organizations' respective tax-exempt statuses.

*See* Ex. 1 at 5-20.

276.    During the period from August 2010 through July 2012, the criteria on the BOLO list included, at various times, the following: ". . . various local organizations in the Tea Party movement," and "political action type organizations involved in limiting/expanding Government, educating on the Constitution and Bill of Rights, social economic reform/movement." *See* Ex. 1 at 6, 32-33, 35, 38.

277.    At least as early as June 2011, Defendant Lerner and, upon information and belief, Defendants Wilkins, Shulman, Paz, Ingram, Flax, Kindell, Grant, Seto, Hull, Grodnitzky, and the Unknown Named IRS Officials, were aware of the use of the following discriminatory criteria in identifying applications for further IRS scrutiny:

(a) reference to "Tea Party," "Patriots," or "9/12 Project" in the case file;

(b) issues in the case included "Government spending, Government debt, or taxes";

(c) the applicant was engaged in "[e]ducation of the public via advocacy/lobbying to 'make America a better place to live'"; and

(d) the case file included statements criticizing "how the country is being run."

*See* Ex. 1 at 35.

278.    The EO Technical Unit, including Defendants Paz, Seto, Hull, Grodnitzky, and the Unknown Named IRS Officials, developed written guidelines to be used by IRS officials and employees who were processing the "Tea Party" applications. *See* Ex. 1 at 36-37.

279.    Based on these guidelines, IRS officials and employees, including, upon information and belief, Defendants Wilkins, Lerner, Paz, Ingram*,* Flax, Kindell, Grant, Seto, Hull, Grodnitzky, and the Unknown Named IRS Officials, then prepared, reviewed, and issued letters requesting additional information to the "Tea Party" applicants, including Plaintiffs herein. *See* Ex. 1 at 18, 38.

280.    The letters issued to "Tea Party" applicants, including Plaintiffs herein, requested such inappropriate and irrelevant information as (1) donor names; (2) a list of issues of importance to the applicant organization, as well as the organization's position regarding those issues; (3) the type of conversations and discussions between members and participants at organization activities; (4) whether the organization's officer(s) or director(s) have run or plan to run for public office; (5) the political affiliation of the officer(s) or director(s) of the organization; (6) information regarding the employment (other than for the organization) of the organization's officer(s) or director(s); and (7) information regarding the activities of other organizations with which the applicant had a connection. *See* Ex. 1 at 20.

281.    The IRS asked at least one Plaintiff herein to provide the names of individuals who volunteered with the organization.

282.    The IRS asked another Plaintiff herein to provide "a temporary Username and Password" with which IRS employees could access the organization's website, "hardcopy printouts" of its social media pages, copies of all solicitations and documents concerning the organization's fundraising activities "in an election year and non-election year," and "copies of handouts to the audience" and "workshop materials that instructors will use" at the organization's public events.

283.    The IRS requested from yet another Plaintiff herein information to refute the IRS's conclusion that the organization failed to qualify as an educational 501(c)(3) organization because of the organization's name (AMEN – Abortion Must End Now) and because the organization is "focused on defending the Sanctity of Life and to put an end to abortion once and for all"; intends to "provide education . . . about the effects of abortion and to present prolife brochures"; intends "to conduct regular speaking engagements . . . to hundreds of youth and various groups within the community;" and is involved in "promoting the sending of Red Envelopes to the President of the U.S. to stop abortions."

284.    In or around March 2012, IRS officials and employees created a list of template questions to be included in future letters requesting additional information from "Tea Party" applicants. This list was provided to members of the Guidance Unit in Washington, D.C., and still included inappropriate and unconstitutional requests for donor information. *See* Ex. 1 at 39.

285.    At least as early as March 2012, then-Deputy Commissioner for Services and Enforcement (upon information and belief, Defendant Miller) was aware that the additional information being requested from Tea Party applicants included donor information. Rather than halt such requests, however, Defendant Miller indicated that IRS officials and employees processing these applications should permit those applicants who complained about the request to refrain from sending in the donor information for the time being, but only with the clarification that the IRS might later require the applicant to provide such information. *See* Ex. 1 at 39.

286.    Between March 2012 and May 2012, the IRS, through various officials, including, upon information and belief, Defendants Wilkins, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Seto, Hull, Grodnitzky, and the Unknown Named IRS Officials, continued to review the Tea Party

applications and the additional information request letters issued to the applicants, and provided further guidance to the IRS employees regarding the processing of the applications.

*The House Interim Report*

287.    In September 2013, the Majority Staff, Committee on Oversight and Government Reform of the United States House of Representatives ("House Committee") released a report providing an "Interim update on the Committee's investigation of the IRS's inappropriate treatment of certain tax-exempt applicants." *See Ex. 3.*

288.    According to the Interim Report, in February 2010, the IRS office in Cincinnati, Ohio both elevated a tax-exempt application of a Tea Party group and notified Washington IRS officials.  The IRS screener's justification for elevating this application was that, "Recent media attention to this type of organization indicates to me that this is a 'high profile' case." The Washington IRS office accepted the case because of "the potential for media attention." *See* Ex. 3 at 8-9.

289.    In late March 2010, a Washington IRS employee reviewing additional applications reiterated that "[t]he concern is potential for media attention." The same employee commented that "[t]he Tea Party movement is covered in the *[Washington] Post* almost daily" and opined that the group's activity "looks more educational but with a republican slant obviously." *See* Ex. 3 at 9-10.

290.    In April 2010, Defendant Grodnitzky asked the Cincinnati IRS office for information on the remaining Tea Party applications pending there. Defendant Grodnitzky then directed the Washington office to begin drafting a "sensitive case report" for Tea Party applications given the potential for "media attention." *See* Ex. 3 at 10.

291.    IRS employees openly expressed disdain toward the Tea Party applications in internal communications. For example, in a July 2011 e-mail to an attorney in Defendant Wilkins's office,

Defendant Paz stated: "Lois [referring to Defendant Lerner] would like to discuss our planned approach for dealing with these cases. We suspect we will have to approve the majority of c4 applications." *See* Ex. 3 at 14-15.

292.    On June 9, 2013, a Cincinnati IRS employee testified to the House Committee that the activities of the Tea Party differed from those of other 501(c)(4) applications – characterizing Tea Party organizations as focusing on "limiting government" and "paying less tax" – and admitted that Tea Party applications were not treated the same as other applications. *See* Ex. 3 at 14.

293.    On July 16, 2013, Defendant Grodnitzky testified to the House Committee that "[l]ikely to attract media or Congressional attention" was the only "sensitive case" criterion selected for the Tea Party applications. *See* Ex. 3 at 10.

294.    In its September 2013 Interim Report, the Majority Staff reported:

> [W]hile the IRS should be a fair and neutral steward of our nation's tax laws, the agency is in fact affected by popular political rhetoric.  As prominent politicians publicly urged the IRS to take action on tax-exempt groups engaged in legal campaign intervention activities, the IRS treated Tea Party applications differently. … One such application was subjected to a multi-year delay, even after it had been recommended for approval.  This treatment was distinct for the applications filed by groups affiliated with the Tea Party movement.

*See* Ex. 3, at 10.

295.    The Interim Report concluded, "The treatment received by the Tea Party applicants was unprecedented for tax-exempt applicants engaged in political activity."  *See* Ex. 3, at 10.

296.    Subsequent to the issuance of the Interim Report, the House Committee discovered that Defendants Shulman, Lerner, Ingram, Flax and Kindell repeatedly used nonofficial, unsecure, personal email accounts to conduct official IRS business, including sending tax return information and official classified documents to non-agency email addresses, and that Defendant Lerner alone accumulated more than 1,600 pages of emails and documents related to official IRS

business in a nonofficial, unsecure, personal email account, including almost 30 pages of confidential taxpayer information.

297.     The House Committee's investigation is ongoing.

*Treasury Regulation 1.501(c)(4)-(1)*

298.     The conduct of Defendants complained of herein, including their discriminatory targeting of Plaintiffs' applications for tax-exemption, their improper requests to Plaintiffs for intrusive and irrelevant information, and the consequent delay in the processing of Plaintiffs' applications, resulted not only from intentional and unlawful viewpoint discrimination, but also from a lack of understanding of various IRS officials as to the types of activities in which I.R.C. § 501(c)(4) organizations are permitted to engage. *See* Ex. 1 at 7, 18.

299.     The lack of understanding of IRS officials regarding the types of activities in which I.R.C. § 501(c)(4) organizations are permitted to engage is due to a "lack of specific guidance" within Treasury Regulations, including 26 C.F.R. § 1.501(c)(4)-1, "on how to determine the 'primary activity' of an I.R.C. § 501(c)(4) organization." *See* Ex. 1 at 14.

300.     According to the Treasury Inspector General, "Treasury Regulations state that I.R.C. § 501(c)(4) organizations should have social welfare as their 'primary activity'; however, the regulations do not define how to measure whether social welfare is an organization's 'primary activity.'" *See* Ex. 1, at 14.

301.     Treasury Regulation 26 C.F.R. § 1.501(c)(4)-1 further prohibits a § 501(c)(4) organization's "direct or indirect . . . intervention in political campaigns" but fails to define or otherwise provide guidance, for organizations or government officials tasked with applying the regulation, regarding the types of activities that constitute political campaign "intervention."

302.     As a result of the vagueness of 26 C.F.R. § 1.501(c)(4)-1, organizations seeking tax-exempt status under I.R.C. § 501(c)(4) are left to guess at what speech and other expressive activities constitute prohibited political campaign "intervention."

303.     Even IRS officials within the EO division have acknowledged that "organizations may not understand what constitutes political campaign intervention . . . ." *See* Ex. 1, at 10. The vagueness of 26 C.F.R. § 1.501(c)(4)-1 invites government officials responsible for processing applications for tax-exempt status under I.R.C. § 501(c)(4) to do exactly what they did in this case – engage in arbitrary and discriminatory enforcement and application of the regulation in determining an applicant's "primary activity" and whether the applicant engages in political campaign "intervention."

304.     The Treasury Inspector General concluded that the IRS's Acting Commissioner, Tax Exempt and Government Entities Division should "[r]ecommend to IRS Chief Counsel and the Department of the Treasury that guidance on how to measure the 'primary activity' of I.R.C. § 501(c)(4) social welfare organizations be included for consideration in the Department of the Treasury Priority Guidance Plan," which identifies "issues that should be addressed through regulations, revenue rulings, revenue procedures, notices, and other published administrative guidance." *See* Ex. 1 at 17 & n.41.

*Revenue Procedure 86-43*

305.     As it did in the case of AMEN, in determining whether a 501(c)(3) applicant qualifies as "educational," the IRS instructs its agents that the following criteria, set forth in IRS Revenue Procedure 86-43, 1986-2 C.B. 729, indicate that an applicant does not qualify: (1) The presentation of viewpoints or positions unsupported by facts is a significant portion of the organization's communications; (2) The facts that purport to support the viewpoints or positions are distorted; (3)

The organization's presentations make substantial use of inflammatory and disparaging terms and express conclusions more on the basis of strong emotional feelings than of objective evaluations; and (4) The approach used in the organization's presentations is not aimed at developing an understanding on the part of the intended audience or readership because it does not consider their background or training in the subject matter.

306.    Revenue Procedure 86-43 fails to provide guidance, either to applicant organizations or government officials tasked with applying the Revenue Procedure, as to how to determine if a given statement is sufficiently "factual" in nature, or as to how much of an organization's communications constitutes a "significant portion."

307.    Revenue Procedure 86-43 fails to provide any guidance as to who will determine if facts supporting a particular organizational viewpoint or position have been "distorted," or the manner in which such a determination is to be made.

308.    Revenue Procedure 86-43 fails to provide any guidance as to the distinction between "emotional" and "objective" evaluations, or the measure used to determine if "substantial use" of impermissibly "emotional" evaluations has occurred in an organization's presentation of its viewpoint(s).

<u>*Summary of Factual Allegations*</u>

309.    On May 10, 2013, the IRS publicly acknowledged that it inappropriately and unjustifiably targeted conservative groups for additional scrutiny during the 2012 election cycle.

310.    Defendant Lerner publicly acknowledged the IRS's discriminatory treatment of the Tea Party organizations, expressly admitting, on behalf of the IRS, that the applications of groups whose names included "Tea Party" or "Patriot" were singled out and subjected to additional IRS scrutiny.

311.    The extensive delay in processing their applications for tax-exempt status has cost Plaintiffs significant time and money that they could have used to further their tax-exempt purposes.

312.    Defendants' unconstitutional treatment of Plaintiffs based on their names and presumed viewpoints, and Defendants' conduct in issuing unconstitutional requests for additional information from Plaintiffs, has substantially and materially interfered with Plaintiffs' abilities to engage in effective advocacy and other expressive activities.

313.    Defendants Shulman, Lerner, Ingram, Flax, and Kindell's repeated use of nonofficial, unsecure, personal email accounts to conduct official IRS business, including sending tax return information and official classified documents to non-agency email addresses exposed the Plaintiffs' private tax return information to unauthorized public disclosure.

314.    Defendants' unconstitutional discrimination against Plaintiffs, and the resulting delay in processing their applications for tax-exempt status, also prohibited Plaintiffs from being eligible during the period of delay for receipt of various tax-exempt status benefits, including but not limited to state tax-exemption.

315.    The conduct of Defendants complained of herein has had a chilling effect on the willingness of potential donors and grantors to provide donations and grants to Plaintiffs.

316.    Defendants knew or should have known that their conduct - as described herein - would violate the federal constitutional and statutory rights of Plaintiffs.


## CAUSES OF ACTION

### COUNT I
(Violations of the First Amendment – Freedom of Speech – *Bivens* Action)

*By All Plaintiffs Against Defendants Wilkins, Shulman, Miller, Lerner, Paz,*
*Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials*
*In Their Individual Capacities While Acting Under Color of Federal Authority*

317.    The preceding allegations are all incorporated by reference herein as if fully set out.

318.    The First Amendment protects private speech from government interference or restriction when the specific motivating ideology, opinion, or perspective of the speaker is the rationale for the restriction.

319.    Plaintiffs' speech is entitled to First Amendment protection.

320.    The Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

321.    Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their applications for tax-exempt status by imposing upon such applications an unconstitutional requirement of heightened scrutiny; issuing unconstitutional and overly intrusive requests for information as described herein; delaying the processing of Plaintiffs' applications on the basis of Plaintiffs' viewpoints; and failing to prevent such conduct by other IRS employees under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

322.    In targeting Plaintiffs' applications for tax-exempt status for additional and illegitimate scrutiny, Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials engaged in impermissible viewpoint-based discrimination in violation of established First Amendment principles, while acting under color of federal authority in their respective official IRS positions.

323.    Defendants' conduct directly infringed upon Plaintiffs' speech by inhibiting their ability to engage in effective advocacy and other expressive activities.

324.     Defendants' conduct constitutes retaliation against Plaintiffs on the basis of the actual or perceived viewpoint of their protected speech.

325.     Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

326.     Plaintiffs have no other adequate monetary remedy in court for Defendants' violations of their constitutional rights as complained of herein.

COUNT II
(Violations of the First Amendment – Freedom of Association – <em>Bivens</em> Action)

<em>By All Plaintiffs Against Defendants Wilkins, Shulman, Miller, Lerner, Paz,<br>Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials<br>In Their Individual Capacities While Acting Under Color of Federal Authority</em>

327.     The preceding allegations are all incorporated by reference herein as if fully set out.

328.     The First Amendment to the United States Constitution protects Plaintiffs' right to freely associate with others of their choosing for the purposes of engaging in protected speech or religious activities.

329.     Plaintiffs' organizations and supporters are entitled under the First Amendment to freely associate with one another.

330.     The Supreme Court, in <em>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</em>, 403 U.S. 388 (1971), recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

331.     Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials unlawfully deprived Plaintiffs of their First Amendment rights in connection with and arising from their applications for tax-exempt status by imposing upon such applications an unconstitutional requirement of heightened scrutiny; issuing unconstitutional and overly intrusive requests for information as described herein; delaying the

processing of Plaintiffs' applications on the basis of Plaintiffs' protected speech; and failing to prevent such conduct by other IRS employees under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

332.    Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, while acting under color of federal authority in their respective official IRS positions, infringed upon Plaintiffs' ability to freely associate for protected speech purposes with others of their choosing - including potential donors and grantors.

333.    Defendants knew, or reasonably should have known, that targeting Plaintiffs' applications for tax-exempt status for additional and illegitimate scrutiny would violate Plaintiffs' federal constitutional rights.

334.    Plaintiffs have no other adequate monetary remedy in court for Defendants' violations of their constitutional rights as complained of herein.


## COUNT III

(Violations of the Fifth Amendment – Equal Protection under the Due Process Clause – *Bivens* Action)

*By All Plaintiffs Against Defendants Wilkins, Shulman, Miller, Lerner, Paz,*
*Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials*
*In Their Individual Capacities While Acting Under Color of Federal Authority*

335.    The preceding allegations are all incorporated by reference herein as if fully set out.

336.    The Fifth Amendment to the United States Constitution protects persons against the deprivation of life, liberty, or property without due process of the law and forbids the federal government from denying the equal protection of the laws.

337.    The Fifth Amendment to the United States Constitution guarantees persons the right to be free from illegal discrimination and selective viewpoint-based scrutiny and enforcement.

338.   The Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized a private damages action against federal officials for constitutional torts committed by such officials while acting under color of federal authority.

339.   Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials unlawfully deprived Plaintiffs of their Fifth Amendment rights in connection with and arising from their applications for tax-exempt status by imposing upon such applications an unconstitutional requirement of heightened scrutiny; issuing unconstitutional and overly intrusive requests for information as described herein; delaying the processing of Plaintiffs' applications on the basis of Plaintiffs' viewpoints; and failing to prevent such conduct by other IRS employees under their direct supervision and control while they were fully aware of such unconstitutional misconduct.

340.   Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, while acting under color of federal authority in their respective official IRS positions, caused Plaintiffs to be treated differently than other similarly situated organizations seeking tax-exempt status.

341.   The disparate treatment of Plaintiffs based on their viewpoints was a result of a discriminatory purpose on the part of Defendants.

342.   Defendants' disparate treatment of Plaintiffs based on their viewpoints is not rationally related to any legitimate governmental interest.

343.   Defendants knew, or reasonably should have known, that their conduct would violate Plaintiffs' federal constitutional rights.

344.   Plaintiffs have no other adequate monetary remedy in a court for Defendants' violations of their constitutional rights as complained of herein.

<u>COUNT IV</u>
(Violations of the Administrative Procedure Act ("APA"))

*By All Plaintiffs Against All Defendants in Their Official Capacities*

345.    The preceding allegations are all incorporated by reference herein as if fully set out.

346.    The APA provides a cause of action for persons suffering a legal wrong from - or adversely or aggrieved by - actions or inactions of an agency of the United States or officers thereof acting in an official capacity.  5 U.S.C. § 702

347.    The APA requires the federal courts to: (1) compel agency action unlawfully withheld or unreasonably delayed and (2) hold unlawful and set aside agency action, findings, and conclusions found to be contrary to any constitutional right, power, privilege, or immunity.  5 U.S.C. § 706

348.    The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702 in actions seeking relief other than money damages and stating a claim that an agency of the United States and/or officers thereof acted or failed to act in an official capacity.

349.    The Internal Revenue Service is an agency of the United States for purposes of the APA.

350.    The Department of Treasury is an agency of the United States for purposes of the APA.

351.    Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, at all times relevant herein, were officers of an agency of the United States for purposes of the APA.

352.    Defendants' unlawful and viewpoint-based targeting of Plaintiffs' applications for tax-exempt status for heightened scrutiny and unconstitutional and intrusive requests for information unreasonably delayed the IRS's final determinations of Plaintiffs' tax-exempt status.

353.    Defendants' unlawful conduct of implementing the policy and practice of targeting and singling out Plaintiffs' applications for tax-exempt status for heightened scrutiny, and Defendants' actions in issuing to Plaintiffs the unconstitutional and overly intrusive requests for information

described herein - based solely on Plaintiffs' viewpoints - constitute final agency actions having the force and effect of law that are contrary to Plaintiffs' federal constitutional rights to freedom of speech and freedom of association under the First Amendment and the equal protection of the laws under the Fifth Amendment.

354.    Defendants' demand that Plaintiffs respond to irrelevant, unconstitutional, and overly intrusive requests for information described herein is plainly contrary to the intent of Congress as expressed in 28 U.S.C. §§ 501(a), 501(c)(3), 501(c)(4), and 505(a), and therefore, such action is not committed to agency discretion by law.  5 U.S.C. §701(a)(2)

355.    Defendants' demand that Plaintiffs respond to irrelevant, unconstitutional, and overly intrusive requests for information as described herein violates Defendants' authority under 26 C.F.R. § 1.501(a)-(1)(b)(2) because such information is not "necessary for the proper determination of whether a particular organization is exempt . . . ."

356.    Defendants demand that Plaintiffs respond to irrelevant, unconstitutional and overly intrusive requests for information described herein violates Defendants' authority under Internal Revenue Manual § 7.20.2.4.1, which requires that "requests for additional information" must be "relevant to the paragraph of section 501(c) appropriate to the applicant."

357.    Plaintiffs have no other adequate remedy in court for the government's violations of their constitutional and statutory rights as complained of herein.

358.    Plaintiffs have suffered, and will continue to suffer absent an injunction, irreparable harm as a result of (1) Defendants' unlawful conduct of implementing the policy and practice of targeting and singling out Plaintiffs' applications for tax-exempt status for heightened scrutiny, and (2) Defendants' actions in issuing to Plaintiffs the unconstitutional and overly intrusive requests for information described herein.

359.     Under no circumstances can Defendants ultimately prevail on this claim as they have already admitted to their unlawful conduct of discriminatorily targeting Plaintiffs' applications for tax-exempt status for heightened scrutiny.

## COUNT V
### (Violations of the APA)

*By 501(c)(4) Plaintiffs Against All Defendants in Their Official Capacities*

360.     The preceding allegations are all incorporated by reference herein as if fully set out.

361.     The APA provides a cause of action for persons suffering a legal wrong from - or adversely affected or aggrieved by - actions or inactions of an agency of the United States or officers thereof acting in an official capacity.  5 U.S.C. § 702

362.     The APA requires the federal courts to (1) compel agency action unlawfully withheld or unreasonably delayed and (2) hold unlawful and set aside agency action, findings, and conclusions found to be contrary to any constitutional right, power, privilege, or immunity.  5 U.S.C. § 706

363.     The APA requires each agency of the United States, or officers thereof acting in an official capacity, to publish in the Federal Register, for the guidance of the public, all substantive rules of general applicability adopted as authorized by law and statements of general policy or interpretations of general applicability formulated and adopted by the agency and each amendment, revision, or repeal of the foregoing. 5 U.S.C. § 552(a)(1)(C),(D), and (E)

364.     Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. 5 U.S.C. § 552(a)(1)

365.     The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702 in actions seeking relief other than money damages and stating a claim that an agency of the United States and/or officers thereof acted or failed to act in an official capacity.

366.    The Internal Revenue Service is an agency of the United States for purposes of the APA.

367.    The Department of Treasury is an agency of the United States for purposes of the APA.

368.    Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, at all times relevant herein, were officers of an agency of the United States for purposes of the APA.

369.    Defendants' unlawful conduct of adopting and implementing the BOLO policy of targeting and singling out Plaintiffs' applications for tax-exempt status for heightened scrutiny imposed upon Plaintiffs substantive rules, policies, or interpretations that required Plaintiffs to produce voluminous, unnecessary private information.

370.    Defendants' unlawful conduct of adopting and implementing the BOLO policy of targeting and singling out Plaintiffs' applications for tax-exempt status for heightened scrutiny was required to be published in the Federal Register.

371.    Defendants failed to publish the BOLO policy in the Federal Register.

372.    Plaintiffs did not have actual and timely notice of the terms of the BOLO policy.

373.    Defendants' unlawful and viewpoint-based targeting of Plaintiffs' applications for tax-exempt status for heightened scrutiny and unconstitutional and intrusive requests for information unreasonably delayed the IRS's final determinations of Plaintiffs' tax-exempt status and thereby adversely affected Plaintiffs.

374.    Defendants' unlawful conduct of implementing the policy and practice of targeting and singling out Plaintiffs' applications for tax-exempt status for heightened scrutiny, and Defendants' actions in issuing to Plaintiffs the unconstitutional and overly intrusive requests for information described herein, based solely on Plaintiffs' viewpoints, were contrary to Plaintiffs' federal constitutional rights to freedom of speech and freedom of association under the First Amendment

and the equal protection of the laws under the Fifth Amendment and thereby adversely affected Plaintiffs.

375.    Plaintiffs have no other adequate remedy in court for the government's violations of their constitutional and statutory rights as complained of herein.

376.    Plaintiffs have suffered, and will continue to suffer absent an injunction, irreparable harm as a result of (1) Defendants' unlawful conduct of implementing the policy and practice of targeting and singling out Plaintiffs' applications for tax-exempt status for heightened scrutiny, and (2) Defendants' actions in issuing to Plaintiffs the unconstitutional and overly intrusive requests for information described herein.

377.    Under no circumstances can Defendants ultimately prevail on this claim as they have already admitted to their unlawful conduct of discriminatorily targeting Plaintiffs' applications for tax-exempt status for heightened scrutiny.

<u>COUNT VI</u>
(Violations of the APA)

*By 501(c)(4) Plaintiffs Against All Defendants in Their Official Capacities*

378.    The preceding allegations are all incorporated by reference herein as if fully set out.

379.    The APA provides a cause of action for persons suffering a legal wrong from - or adversely affected or aggrieved - by actions or inactions of an agency of the United States, or officers thereof while acting in an official capacity.  5 U.S.C. § 702

380.    The APA requires the federal courts to (1) compel agency action that was either unlawfully withheld or unreasonably delayed and (2) hold unlawful and set aside agency action, findings, and conclusions found to be contrary to any constitutional right, power, privilege, or immunity.  5 U.S.C. § 706

381.    The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702 in actions seeking relief other than money damages and stating a claim that an agency of the United States and/or officers thereof acted or failed to act in an official capacity.

382.    The Internal Revenue Service is an agency of the United States for purposes of the APA.

383.    The Department of Treasury is an agency of the United States for purposes of the APA.

384.    Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, at all times relevant herein, were officers of an agency of the United States for purposes of the APA.

385.    26 C.F.R. § 1.501(c)(4)-1 is impermissibly vague, both on its face and as-applied to the 501(c)(4) Plaintiffs, and thus constitutes final agency action having the force and effect of law that is contrary to constitutional right, because it:

    a. Requires an I.R.C. § 501(c)(4) organization to engage in the promotion of social welfare as its "primary activity," but fails to define that term or provide any guidance for applicant organizations or for government officials tasked with enforcing and applying the regulation as to the means of determining an organization's "primary activity"; and

    b.  Prohibits an I.R.C. § 501(c)(4) organization from "direct or indirect . . . intervention in political campaigns," but fails to define such "intervention" or provide any guidance for applicant organizations or for government officials tasked with enforcing and applying the regulation as to what speech and/or other expressive activities constitute political campaign "intervention."

386.    The failure of 26 C.F.R. § 1.501(c)(4)-1 to define or otherwise provide guidance regarding the meaning and application of the term "primary activity" and political campaign "intervention" is contrary to the intent of Congress as expressed in 26 U.S.C. §501(c)(4).

387.    The failure of 26 C.F.R. § 1.501(c)(4)-1 to define or otherwise provide guidance regarding the meaning and application of the term political campaign "intervention" violates the First and Fifth Amendment rights of the 501(c)(4) Plaintiffs and others similarly situated, by causing them to steer far wider of the zone of prohibited speech and expressive activity than if the boundaries were clearly marked.

388.    The failure of 26 C.F.R. § 1.501(c)(4)-1 to define or otherwise provide guidance regarding the meaning and application of the terms "primary activity" and political campaign "intervention" violates the First and Fifth Amendment rights of the 501(c)(4) Plaintiffs and others similarly situated by inviting arbitrary and discriminatory application and enforcement by government officials.

389.    Plaintiffs have no other adequate remedy in court for the government's violations of their constitutional and statutory rights as complained of herein.

390.    The 501(c)(4) Plaintiffs that have been granted tax-exempt status have already suffered irreparable harm as a result of Defendants' application of 26 C.F.R. § 1.501(c)(4)-1, and those 501(c)(4) Plaintiffs awaiting a tax-exempt determination, as well as all others similarly situated, will suffer, absent an injunction, irreparable harm if Defendants are permitted to continue enforcement of this unconstitutionally vague regulation.

391.    Under no circumstances can Defendants ultimately prevail on this claim as they have already admitted to their unlawful conduct of discriminatorily targeting Plaintiffs' applications for tax-exempt status for heightened scrutiny, a process that included application of 26 C.F.R. § 1.501(c)(4)-1.

## COUNT VII
### (Violations of the APA)

*By 501(c)(3) Plaintiffs Against All Defendants in Their Official Capacities*

392.    The preceding allegations are all incorporated by reference herein as if fully set out.

393.    The APA provides a cause of action for persons suffering a legal wrong from - or adversely affected or aggrieved by - actions or inactions of an agency of the United States, or officers thereof while acting in an official capacity.  5 U.S.C. § 702

394.    The APA requires the federal courts to (1) compel agency action unlawfully withheld or unreasonably delayed and (2) hold unlawful and set aside agency action, findings, and conclusions found to be contrary to any constitutional right, power, privilege, or immunity.  5 U.S.C. § 706

395.    The United States has waived its sovereign immunity pursuant to 5 U.S.C. § 702 in actions seeking relief other than money damages and stating a claim that an agency of the United States and/or officers thereof acted or failed to act in an official capacity.

396.    The Internal Revenue Service is an agency of the United States for purposes of the APA.

397.    The Department of Treasury is an agency of the United States for purposes of the APA.

398.    Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Ingram, Flax, Grant, Grodnitzky, Hull, and the Unknown Named IRS Officials, at all times relevant herein, were officers of an agency of the United States for purposes of the APA.

399.    Internal Revenue Procedure 86-43 is unconstitutionally vague, both on its face and as-applied to the 501(c)(3) Plaintiffs herein, and thus constitutes final agency action having the force and effect of law that is contrary to constitutional right for at least the following reasons:

   a. It permits the IRS to deny 501(c)(3) tax-exempt status to an educational organization because IRS officials subjectively deem that a "significant portion" of the organization's expressed viewpoints are unsupported by facts, but fails to provide any guidance, either to applicant organizations or government officials tasked with applying the Revenue Procedure, as to the meaning of the phrase "significant portion" or the means of determining whether a given expression is sufficiently "factual" in nature;

73

b. It permits the IRS to deny 501(c)(3) tax-exempt status to an educational organization because IRS officials subjectively deem that "the facts that purport to support the [applicant's] viewpoints or positions are distorted" but fails to provide any guidance as to who will determine whether a given fact is "distorted," or on what basis such a determination is to be made; and

c. It permits the IRS to deny 501(c)(3) tax-exempt status to an educational organization when IRS officials subjectively deem that "[t]he organization's presentations make substantial use of inflammatory and disparaging terms and express conclusions more on the basis of strong emotional feelings than of objective evaluations," but fails to provide any guidance as to the distinction between "emotional" and "objective" evaluations, or the measure used to determine if "substantial use" of impermissibly "emotional" evaluations has occurred.

400.    The failure of Internal Revenue Procedure 86-43 to provide sufficiently clear standards and guidance violates the First and Fifth Amendment rights of the 501(c)(3) Plaintiffs, and all others similarly situated, by causing them to steer far wider of the zone of prohibited speech and expressive activity than if the boundaries were clearly marked.

401.    The failure of Internal Revenue Procedure 86-43 to provide sufficiently clear standards and guidance violates the First and Fifth Amendment rights of the 501(c)(3) Plaintiffs and all others similarly situated by inviting arbitrary and viewpoint-discriminatory application and enforcement by government officials.

402.    Plaintiffs have no other adequate remedy in court for the government's violations of their constitutional and statutory rights as complained of herein.

403.    The 501(c)(3) Plaintiffs awaiting a tax-exempt determination, as well as all others similarly situated, will suffer, absent an injunction, irreparable harm if Defendants are permitted to continue enforcement of this unconstitutionally vague revenue procedure.

404.    Under no circumstances can Defendants ultimately prevail on this claim as they have already admitted to their unlawful conduct of discriminatorily targeting Plaintiffs' applications for tax-exempt status for heightened scrutiny, a process that included application of Revenue Procedure 83-46.

<u>COUNT VIII</u>
(Violations of the Internal Revenue Code – 26 U.S.C. § 7428)

*By Plaintiffs Still Awaiting Determination of 501(c)(3) Tax-Exempt Status Against Defendants
United States and the Secretary of the Treasury in His Official Capacity*

405.    The preceding allegations are all incorporated by reference herein as if fully set out.

406.    26 U.S.C. § 7428 creates a cause of action for organizations whose applications for a determination with respect to qualification for tax-exempt status under 26 U.S.C. § 501(c)(3) have not been acted upon within 270 days of the organization's request for such determination.

407.    26 U.S.C. § 7428 authorizes this Court to issue a declaratory judgment regarding the initial qualification of an organization as an organization described in Section 501(c)(3) of the Internal Revenue Code.

408.    The United States has waived its sovereign immunity, pursuant to 26 U.S.C. § 7428, for suits seeking a declaratory judgment regarding a determination of whether an organization is tax-exempt under 26 U.S.C. § 501(c)(3).

409.    Plaintiffs Linchpins of Liberty, PECAN, Liberty Township Tea Party, Inc., and AMEN, through no fault of their own, and as a direct result of the intentional delay by Defendants acting in their official capacities, are still awaiting a determination regarding their qualification for tax-

75

exemption under Section 501(c)(3) - more than 270 days from the dates on which they made their requests for determination, which included submission of a completed Form 1023.

410.    These Plaintiffs have exhausted their administrative remedies and have taken, in a timely manner, all reasonable steps to secure a tax-exemption determination, including completion and submission of all necessary documentation, including Form 1023, and compliance with all reasonable and lawful requests for information by the IRS.

411.    As a direct result of Defendants' intentional delay in the processing of Plaintiffs' applications for tax-exempt status, these Plaintiffs have experienced significant hardship, including the loss of monetary grants and donations.

<u>COUNT IX</u>
(Violations of the Internal Revenue Code - 26 U.S.C. § 6103)

*By Plaintiffs Who Produced Return Information to the IRS Against Defendants*
*United States and the IRS*

412.    The preceding allegations are all incorporated by reference herein as if fully set out.

413.    26 U.S.C. § 6103 provides that tax "[r]eturns and return information shall be confidential" and may be inspected and/or disclosed only as specifically authorized under Section 6103.

414.    26 U.S.C. § 7431 creates a cause of action for any taxpayer whose tax return information is knowingly or by reason of negligence inspected or disclosed by an officer or employee of the United States in violation of any provision of 26 U.S.C. § 6103.

415.    The United States has waived its sovereign immunity, pursuant to 26 U.S.C. § 7431, for suits alleging a knowing or negligent violation of 26 U.S.C. § 6103 by an officer or employee of the United States.

416.    The information obtained by the IRS's unconstitutional demands for additional information and produced to the IRS by Plaintiffs qualifies as tax "return information," under 26 U.S.C. § 6103(b)(2).

417.    26 U.S.C. § 6103(h) authorizes disclosure of return information only to such officers and employees of the Department of the Treasury "whose official duties require such inspection or disclosure for tax administration purposes."

418.    The IRS issued its demands to Plaintiffs for additional information in furtherance of its unconstitutional and discriminatory policy targeting Plaintiffs based on their actual or perceived viewpoints.

419.    The additional information demanded by the IRS in furtherance of its unconstitutional and discriminatory policy targeting Plaintiffs - based on their actual or perceived viewpoints - was illegally obtained, inspected, handled, and disclosed by the IRS Defendants.

420.    The IRS officials and employees and others who inspected and/or disclosed the tax return information produced by Plaintiffs in response to the IRS's unconstitutional and discriminatory requests for additional information knew or should have known that such unauthorized, unnecessary, and unconstitutional acquisition, inspection, handling, and disclosure was not authorized by Section 6103.

421.    Each inspection and disclosure by any employee or officer of the IRS of the tax return information produced by Plaintiffs in response to the IRS's unconstitutional and discriminatory requests for additional information constitutes a separate violation of Section 6103(h) as such inspections and disclosures were not "for tax administration purposes."

422.     Each inspection and disclosure by IRS officials and employees of the tax return information produced by Plaintiffs in response to the IRS's unconstitutional and discriminatory requests for additional information was done knowingly, or at a minimum as a result of negligence.

423.     None of the inspections or disclosures by IRS officials and employees of the tax return information produced by Plaintiffs in response to the IRS's unconstitutional and discriminatory requests for additional information resulted from a "good faith, but erroneous interpretation of section 6103," 26 U.S.C. §7431(b)(1), because the unauthorized, unnecessary, and unconstitutional acquisition, inspection, handling, and disclosure of tax return information done knowingly, or negligently, cannot be in good faith.

424.     26 U.S.C. § 7431 authorizes an award of damages in the amount of the greater of $1,000 or the actual damages sustained by a plaintiff for each act of unauthorized inspection or disclosure in violation of 26 U.S.C. § 6103 for which the United States is found liable.

PRAYER FOR RELIEF

WHEREFORE Plaintiffs demand judgment against Defendants and in favor of Plaintiffs as follows:

A.     Under Count I, that this Court declare that the conduct of Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, while acting under color of federal authority, violated the constitutional rights of Plaintiffs and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority;

B.      Under Count II, that this Court declare that the conduct of Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, while acting under color of federal authority, violated the constitutional rights of Plaintiffs and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority;

C.      Under Count III, that this Court declare that the conduct of Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials, while acting under color of federal authority, violated the constitutional rights of Plaintiffs and award Plaintiffs compensatory and punitive damages in an amount to be proved at trial against Defendants Wilkins, Shulman, Miller, Lerner, Paz, Ingram, Flax, Kindell, Grant, Grodnitzky, Seto, Hull, and the Unknown Named IRS Officials for their violations of Plaintiffs' constitutional rights committed while acting under color of federal authority;

D.      Under Counts IV and V, that this Court:

(i)      declare that the conduct of all Defendants, as agencies of the United States and/or officials thereof acting in an official capacity, violated the Administrative Procedure Act;

(ii)      issue a permanent injunction prohibiting all Defendants, and all those in active concert with them, from unlawfully targeting Plaintiffs, including their officers, directors, and members, for disparate treatment and particular scrutiny based on the unconstitutional criteria of viewpoint or association; and

(iii)     issue a mandatory injunction compelling Defendant Secretary of the Treasury to immediately issue a determination regarding the qualification of Plaintiffs Greenwich Tea Party Patriots of South Jersey, LLC, Greater Phoenix Tea Party, Unite in Action, Inc., Allen Area Patriots, Laurens Co. Tea Party, North East Tarrant Tea Party, Inc., Myrtle Beach Tea Party, Inc., Albuquerque Tea Party, Inc., Arlington Tea Party, Inc., and Acadiana Patriots, pursuant to 26 U.S.C. § 501(c)(4), for exemption from taxation;

E.     Under Count VI, that this Court declare that 26 C.F.R. § 1.501(c)(4)-1 is void for vagueness, both facially and as-applied to the 501(c)(4) Plaintiffs, and thus contrary to constitutional right in violation of the Administrative Procedure Act, and issue an injunction prohibiting Defendants Jacob Lew, Secretary of the Treasury, and Daniel Werfel, Acting Commissioner of the IRS, from further application of 26 C.F.R. § 1.501(c)(4)-1;

F.     Under Count VII, that this Court declare that Internal Revenue Procedure 86-43 is void for vagueness, both facially and as-applied to the 501(c)(3) Plaintiffs, and thus contrary to constitutional right in violation of the Administrative Procedure Act, and issue an injunction prohibiting Defendants Jacob Lew, Secretary of the Treasury, and Daniel Werfel, Acting Commissioner of the IRS, from further application of Revenue Procedure 86-43;

G.     Under Count VIII, that this Court declare that Plaintiffs Linchpins of Liberty, PECAN, Liberty Township Tea Party, Inc., and AMEN, qualify, pursuant to 26 U.S.C. § 501(c)(3), as organizations that are tax-exempt;

H.     Under Count IX, that this Court award Plaintiffs damages in an amount to be proved at trial for each unauthorized inspection and disclosure of Plaintiffs' return information in violation of 26 U.S.C. § 6103, or in the amount of $1,000 per such violation, whichever is greater;

I.      Award Plaintiffs their reasonable attorney's fees, costs and expenses associated with this action pursuant to 28 U.S.C. § 2412 and 26 U.S.C. § 7431; and

J.      Award Plaintiffs such other and further relief as this Court deems necessary and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all claims and issues so triable.

DATED: October 18, 2013.

/s/ Jay Alan Sekulow
Jay Alan Sekulow, *Counsel of Record*
(D.C. Bar No. 496335)
Stuart J. Roth (D.C. Bar No. 475937)
Andrew J. Ekonomou**
Jordan A. Sekulow (D.C. Bar No. 991680)
Robert W. Ash*
David A. French**
Abigail A. Southerland**
Carly F. Gammill (D.C. Bar No. 982663)**
Miles L. Terry (D.C. Bar No. 1011546)**
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel. (202) 546-8890
Fax (202) 546-9309
sekulow@aclj.org

*Counsel for Plaintiffs*

*Motion for *pro hac vice* admission pending
**Admitted *pro hac vice*