# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA (WASHINGTON, DC)

| | |
|---|---|
| **LINCHPINS OF LIBERTY,** *et al.*, | : |
| Plaintiffs, | : Civil Action No. 1:13-cv-00777-RBW |
| v. | : |
| **UNITED STATES OF AMERICA**, *et al.*, | : |
| Defendants. | : |

### REPLY OF STATES OF OHIO, ALABAMA, AND SOUTH CAROLINA IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE *AMICUS* BRIEF

Respectfully submitted,

**MICHAEL DeWINE (OH-0009181)**
**OHIO ATTORNEY GENERAL**

**FREDERICK D. NELSON (OH-0027977)**
Senior Advisor [A.G. designee per LCvR 83.2(f)]
30 E. Broad St., 17th Floor
Columbus, Ohio 43215
Tel: 614-728-4947
frederick.nelson@ohioattorneygeneral.gov

**LUTHER STRANGE**
**ALABAMA ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, Alabama 36104

**ALAN WILSON**
**SOUTH CAROLINA ATTORNEY GENERAL**
P.O. Box 11549
Columbia, SC 29211

*Counsel for proposed Amici Curiae States of Ohio, Alabama and South Carolina*

# REPLY OF STATES OF OHIO, ALABAMA, AND SOUTH CAROLINA IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE *AMICUS* BRIEF

Proposed State amici have asked leave of Court to file a narrowly focused amicus brief contesting the argument made by the individual IRS defendants, in the course of claiming qualified immunity, that a reasonable person would not have known that the targeting of conservative groups as alleged in Plaintiffs' complaint violates the First Amendment. The federal government and the individual defendants all have opposed that motion, and the proposed amici States understand full well that defendants might not want this Court to read the brief. Flattering or not, however, defendants' opposition is wrong in several ways that constrain the States to offer this short reply.

1)   The United States is simply incorrect, for example, to say that the proposed amicus "reiterates the same argument, and analyzes much of the same case law as the Plaintiffs' Response." Doc. 76 at 3. To be sure, Plaintiffs clearly understand that the well established law of this country does not countenance the remarkable viewpoint discrimination they allege. But a comparison of the tables of authorities in the proposed amicus brief and Plaintiffs' opposition to defendants' motions to dismiss reflects that of the 24 cases cited in the proffered amicus brief, fully 16 are unique to the States' submission as compared with Plaintiffs' memorandum. And of the remaining eight cases, five are decisions initially cited

by defendants – so the overlap of the additional three cases is extremely low. Indeed, for just a few examples of points and authorities provided only by the States, the amicus brief:

* uniquely invites the Court's attention to the important Supreme Court analysis in *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995), which among other matters elaborates on the powerful axiom that "discrimination against speech because of its message is presumed to be unconstitutional …. When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant …. Viewpoint discrimination is thus an egregious form of content discrimination;"

* uniquely references specific instances in which that principle has been found to apply including, among other precedents, *Children First Foundation v. Legreide*, 373 F/ App'x 156 (3d Cir. 2010) (because complaint stated "plausible claim of viewpoint discrimination," plaintiffs alleged violation of "clearly established rights of which a reasonable person would have known"); *Cuviello v. City and County of San Francisco*, 940 F. Supp. 2d 1071 (N.D. CA 2013) ("Plaintiffs allege that they were targeted because of their anti-circus views," so "qualified immunity does not prevent the claim of viewpoint discrimination from proceeding"); and various cases in which the courts have found claims of viewpoint discrimination contrary to the Constitution even in the application of supposedly neutral standards, *see e.g. AIDS Action Committee of Ma., Inc. v. Ma. Bay Transport Auth.*, 42 F.3d 1 (1st Cir. 1994); *OSU Student Alliance v. Ray*, 699 F.3d 1053 (9th Cir. 2012);

* uniquely notes our nation's attention to the IRS itself, in the context of alleged viewpoint targeting, by observing that some 40 years ago the U.S. House Judiciary Committee famously emphasized that even the President of the United States acts "in violation of the constitutional rights of citizens" when he causes IRS "investigations to be initiated or conducted in a discriminatory manner." Article II, ¶ 1, Articles of Impeachment adopted by House Judiciary Committee (July 27, 1994); and

2

    \*   uniquely demonstrates that the police dog bite case of *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (finding "clearly established" violation), in the passage cited by Defendant Hull was addressing not the quantum of injury necessary to establish a constitutional claim, but rather the official conduct and actions at issue (just as here, looking to the particular official conduct alleged, no government official should conclude that it is permissible to target citizens for special IRS scrutiny because of their conservative viewpoint); and similarly shows that the individual management defendants are wrong to the extent that they imply that plaintiffs' viewpoint discrimination claim is subject to an "ordinary firmness" analysis (citing *Wishnatsky v. Rovner*, 433 F.3d 608, 612 n.2 (8th Cir. 2006).

    2)  Logically, Defendants really should have to choose between arguing on the one hand that the States do not offer a unique perspective here, and then on the other that the States' proposed brief "takes a legal position that is contrary to their States' own long-term, best interests ….," *cf.* Hull opp., doc. 78 at 1. In any event, they are wrong on both scores. As explained in the motion for leave and the proposed brief, the States do have strong institutional interests both in defending qualified immunity to the full extent of its appropriate reach, and in benefitting from America's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Thus, they offer a unique perspective on individual defendants' extraordinary proposition that government taxing authorities cannot be expected to know that targeting citizens on the basis of their protected beliefs violates the Constitution. Such conduct and such a disturbing view of

3

governmental powers could be deeply destructive to our democracy. And if the doctrine of qualified immunity is distorted beyond all recognition by acceptance of a 'who would have thought that the IRS can't target folks on the basis of their beliefs' defense, States may well see their own qualified immunity doctrines fairly abruptly altered or displaced. States also have an institutional interest in public respect for the understanding that there are some bounds beyond which powerful tax collecting bureaucracies know not to go. And given that all democratic institutions benefit from the free exchange of viewpoints across the political spectrum, the States have a particular interest in this matter where entities from each of the three States are plaintiffs alleging that IRS officials have systematically targeted them precisely for their views. Moreover, the States may perhaps be excused if they do not blindly adopt legal counsel here from parties who persist in asserting that the detailed targeting allegations of the complaint somehow do not "allege conduct that a reasonable person would know clearly violated" First Amendment rights, *cf.* Individual Management Defendants' Motion to Dismiss (doc. 67) at 1: despite Defendants' arguments, such a blinkered position not only is wrong as a matter of law but emphatically is not in the States' "own long-term, best interests."

    3) Defendant Hull's incorrect contention that the States' analysis in this case involving detailed allegations of particular IRS targeting on the basis of

viewpoint discrimination somehow conflicts with the States' position in *Plumhoff* that a constitutional right "must be sufficiently specific to provide state officials reasonable notice that their conduct violates" that right, *see* doc. 78 at 2, simply highlights the States' point here and underscores why they provide a valuable perspective. Defendant Hull says that if his and the other individual IRS defendants' conduct as alleged here is found to violate "clearly established" law, then State "troopers should be denied qualified immunity for every unconstitutional search …." Doc. 78 at 4. Not so, as the States are particularly well positioned to observe. The proposed amicus brief references abundant authority, including but not limited to our nation's inquiry into IRS targeting allegations four decades ago, establishing beyond peradventure that the sort of targeting alleged here violates the fundamental premises of our Republic. In this case, for example, by Management Defendants' own characterization, "Plaintiffs allege that the Individual Management Defendants subjected their applications for tax-exempt status to heightened scrutiny and delayed processing on the basis of Plaintiffs' viewpoint." Individual Management Defendants' Motion to Dismiss, doc. 67, at 4. The complaint further describes how that is said to have happened. This Court at the appropriate time will judge whether those allegations have sufficient evidence behind them in the extraordinary context of what the complaint recites as a public IRS acknowledgment that use of  "inappropriate criteria"

identifying for special scrutiny Tea Party and other conservative organizations based upon their names or policy positions (instead of indications of potential campaign intervention) resulted from both organizational and individual failures within the Internal Revenue Service. *See* Second Amended Complaint, doc. 51, at ¶¶ 274-80 (referencing Treasury Inspector General for Tax Administration report). Americans' right to be free from the sort of IRS targeting of organizations based on their political beliefs alleged here is clearly established under the First Amendment and its constraints on governmental viewpoint discrimination; it is a matter different in kind from the question of how to analyze what degree of force on a continuum police may constitutionally use to stop a high-speed chase suspect.

  4) The fact that the proposed amicus brief was submitted the "same day" and a few hours before Plaintiffs' brief, *cf.* Management Defendants' Opposition, doc. 79 at 2, violates no rule of Court whatsoever. Indeed, it is entirely consistent with the point emphasized by the United States that an amicus brief should be "timely and useful," doc. 76 at 6. The States are not in a position to speculate as to whether Defendants' objections would be less vociferous had the States delayed and proposed their submission a week or two after Plaintiffs filed their brief, but by filing their motion for leave roughly contemporaneously with Plaintiffs' brief, the States avoided creating any timing prejudice to Defendants or any reason for parties to seek adjustment of the briefing schedule established well in advance by

the Court.  The States did not need to see Plaintiffs' brief to know that the States provide a unique perspective on a focused issue that implicates two matters of great State interest:  application of qualified immunity principles in which the States are well versed, and the imperative of allowing for the robust political debate that underpins our system of constitutional self-government.

5)  The States may consider among themselves the concept raised by Individual Management Defendants that the States might participate as amici in other actions said to be similar, even if such cases do not involve parties from all three States or the same briefing schedules.  But the fact that the States here contest one specific pillar of the individual defendants' qualified immunity position – the remarkable proposition that a reasonable person would not have known that the targeting of conservative groups as alleged in Plaintiffs' Second Amended Complaint violates the First Amendment – does not mark their submission as taking on an improper "advocacy role that goes beyond offering assistance to the Court," as defendants would have it.  *Cf.* doc. 76 at 8.  Amicus briefs may present "arguments," *id.* at 2, and here the States have been careful both clearly to identify the position they take as favoring Plaintiffs on this legal issue, and to make clear that their submission is limited to that point.  *See* Proposed amicus brief at 5. Significantly, to this juncture in the case, the States are the only governmental entities here to have put forward a brief reaffirming the essential principle that an

IRS targeting scheme as is alleged in the complaint would contravene well settled principles of First Amendment law: they do not agree with the Individual Management Defendants that "Plaintiffs have failed to allege conduct that a reasonable person would know clearly violated Plaintiffs' First … Amendment rights," *cf*. Individual Management Defendants' Motion to Dismiss, doc. 67 at 10.

-----------------------

As the motion for leave recites, and as defendants agree, this Court has broad discretion and "inherent authority" to determine whether to permit amicus participation. The States in their motion for leave and in their proposed brief have articulated important institutional interests that may be affected by a determination on the issue to which they ask to speak, and they submit they offer a unique perspective (Defendant Hull might say too unique) on that question. The States therefore respectfully renew their motion for leave to file the proposed amicus brief.

8

Respectfully submitted,

**MICHAEL DEWINE (OH-0009181)**
**OHIO ATTORNEY GENERAL**

*/s/ Frederick D. Nelson*
**FREDERICK D. NELSON (OH-0027977)**
Senior Advisor [A.G. designee per LCvR 83.2(f)]
30 E. Broad St., 17th Floor
Columbus, Ohio 43215
Tel: 614-728-4947
frederick.nelson@ohioattorneygeneral.gov

**LUTHER STRANGE**
**ALABAMA ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, Alabama 36104

**ALAN WILSON**
**SOUTH CAROLINA ATTORNEY GENERAL**
P.O. Box 11549
Columbia, SC 29211

*Counsel for Amicus Curiae States of Ohio, Alabama, and South Carolina*

9

**CERTIFICATE OF SERVICE**

I certify that the foregoing *Reply of States of Ohio, Alabama, and South Carolina in Support of Their Motion for Leave to File Amicus Brief* was electronically filed with the U.S. District Court of the District of Columbia (Washington DC) on the 27th day of February, 2014.  Electronic service was therefore made upon all counsel of record on the same day.

                                              Respectfully submitted,

                                              **MICHAEL DeWINE (OH-0009181)**
                                              **OHIO ATTORNEY GENERAL**

                                              */s/ Frederick D. Nelson*
                                              **FREDERICK D. NELSON (OH-0027977)**
                                              Senior Advisor [A.G. designee per LCvR 83.2(f)]
                                              Ohio Attorney General's Office