# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
LINCHPINS OF LIBERTY, <u>et al.</u>,                    )
                                                      )
            Plaintiffs,                               )
                                                      )
      v.                                              )          Civil Action No. 13-777 (RBW)
                                                      )
UNITED STATES, <u>et al.</u>,                         )
                                                      )
            Defendants.                               )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiffs, forty-one organizations that sought or are still seeking tax-exempt status

from the Internal Revenue Service ("IRS"), filed this civil action against the United States of

America, the IRS, and several known and unknown IRS officials in both their official and

individual capacities,[1] alleging violations of the First Amendment, the Fifth Amendment, the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706 (2012), the Internal Revenue

Code, 26 U.S.C. § 6103 (2012), as well as seeking declaratory and injunctive relief, and

monetary damages. <u>See</u> Second Amended Complaint ("Am. Compl.") ¶¶ 13, 139-424, A-J

(prayer for relief). Currently pending before the Court are the defendants' Motion to Dismiss

Counts IV, V, VI, VII, IX, and Part of VIII [of the Complaint] and Supporting Statement of

Points and Authorities ("Defs.' Mot."); Defendant Carter Hull's Motion to Dismiss ("Hull

---

[1] The known individual defendants are: Jacob Lew, Daniel Werfel, William Wilkins, Douglas H. Shulman, Steven T. Miller, Lois Lerner, Sarah Hall Ingram, Joseph Grant, Nikole Flax, Judith Kindell, Holly Paz, Michael Seto, Steven Grodnitzky, and Carter Hull. For purposes of resolving the several motions to dismiss, these individual defendants fall into two categories: the Individual Management defendants (Nikole Flax, Joseph Grant, Steven Grodnitzky, Sarah Hall Ingram, Judith E. Kindell, Lois Lerner, Steven T. Miller, Holly Paz, Michael Seto, Douglas H. Shulman, and William Wilkins) and Carter Hull alone. Jacob Lew and Daniel Werfel were only sued in their official capacities.

Mot."); and the Individual Management Defendants' Motion to Dismiss ("Mgmt. Mot.").[2] The

Court concludes for the following reasons that it must grant all of the defendants' motions to

dismiss.[3]

## I. BACKGROUND

The plaintiffs assert that they "are all organizations that applied for [26 U.S.C. §

501(c)(3) or 26 U.S.C. § 501(c)(4)] tax-exempt status with the IRS between 2009 and 2012."

Am. Compl. ¶ 73. Altogether there are forty-one such organizations. Id. ¶¶ 15-55. At the time

the plaintiffs filed their complaint, there were four categories of plaintiffs: (1) four plaintiffs that

were awaiting an IRS determination of their Section 501(c)(3) tax-exempt status; (2) ten

plaintiffs that were awaiting an IRS determination of their Section 501(c)(4) tax-exempt status;

---

[2]  In addition to the submissions already identified, the Court considered the following filings submitted by the parties in rendering its decision: (1) the Plaintiffs' Consolidated Response to [the] Defendants' Motions to Dismiss ("Pls.' Resp."); (2) the Federal Defendants' Reply in Support of Motion to Dismiss Counts IV, V, VI, VII, IX, and Part of VIII ("Defs.' Reply"); (3) the Reply Brief in Support of Individual Management Defendants' Motion to Dismiss the Second Amended Complaint ("Mgmt. Reply"); (4) the Reply in Support of Carter Hull's Motion to Dismiss ("Hull Reply"); (5) the Motion of States of Ohio, Alabama, and South Carolina for Leave to File Amicus Brief in Support of [the] Plaintiffs ("Amicus Mot."); (6) Defendant Carter Hull's Opposition to Motion for Leave to File Amicus Brief ("Hull Opp'n to Amicus Mot."); (7) the Opposition of Individual Management Defendants to the Motion of States of Ohio, Alabama, and South Carolina for Leave to File Amicus Brief in Support of [the] Plaintiffs ("Mgmt. Opp'n to Amicus Mot."); (8) the United States of America's Opposition to Motion of the States of Ohio, Alabama, and South Carolina for Leave to File Amicus Curiae Brief ("U.S. Opp'n to Amicus Mot."); (9) the Reply of States of Ohio, Alabama, and South Carolina in Support of Their Motion for Leave to File Amicus Brief ("Amicus Reply Mot."); (10) the Brief of Amici Curiae States of Ohio, Alabama, and South Carolina in Support of [the] Plaintiffs ("Amicus Br."); (11) the Response of Individual Management Defendants to the Brief of Amici Curiae States of Ohio, Alabama, and South Carolina in Support of [the] Plaintiffs ("Resp. to Amicus Br."); (12) the Plaintiffs' Notice of Supplemental Authority ("Pls.' Supp'l Authority I"); (13) the Defendants' Joint Notice of Supplemental Authority ("Defs.' Supp'l Authority"); (14) the Plaintiffs' Response to [the] Defendants' Joint Notice of Supplemental Authority ("Pls.' Resp. to Defs.' Supp'l Authority"); (15) the Federal Defendants' Response to [the] Plaintiffs' Notice of Supplemental Authority ("Defs.' Resp. to Pls.' Supp'l Authority I"); (16) the Plaintiffs' Notice of Supplemental Authority ("Pls.' Supp'l Authority II"); (17) the Federal Defendants' Response to [the] Plaintiffs' Notice of Supplemental Authority ("Defs.' Resp. to Pls.' Supp'l Authority II"); (18) the Individual Defendants Joint Notice of Supplemental Authority ("Individual Defs.' Supp'l Authority"); and (19) the Plaintiffs' Notice of Supplemental Authority ("Pls.' Supp'l Authority III").

[3]  The Court's opinion should not be interpreted as an assessment of the propriety of the alleged conduct by the defendants, as resolution of the motions does not require an assessment of the merits of the plaintiffs' claims.

(3) twenty-two plaintiffs that had already received tax-exempt status;[4] and (4) five plaintiffs that chose to forego pursuit of tax-exempt status in light of the allegations below.  Id.

The plaintiffs allege that "[a]s early as February 2010, the IRS began identifying [tax-exempt] applications for additional scrutiny," which "includ[ed] the issuance of letter requests for additional information" from organizations with "conservative-sounding names."  Id. ¶ 92 (citing Am. Compl., Exhibit ("Ex.") 1 (May 14, 2013 Report from the Treasury Inspector General for Tax Administration ("the Report")) at 5-6, 30); see also id. ¶¶ 94-95, 280.  The plaintiffs further allege that in August 2010, IRS employees distributed a list entitled "Be On The Lookout"—otherwise known as the "BOLO" list.  Id. ¶ 124.  The BOLO list allegedly contained terms that would identify "organizations with conservative[-]sounding names that had applied for tax-exempt status under [Sections] 501(c)(3) or 501(c)(4)," but "no terms that would identify progressive or liberal groups."  Id.  The plaintiffs assert that as of July 2011, the BOLO list "continued to focus on organizations associated with . . . conservative philosophies."  Id. ¶ 170. The BOLO list "remained in place for another eighteen (18) months."[5]  Id.; see also id. ¶¶ 276-77.

In support of their allegations, the plaintiffs note that on May 10, 2013, one of the named individual defendants "apologized in a speech before the American Bar Association for a pattern of misconduct whereby the IRS intentionally and systematically targeted for additional and

---

[4]  There is an outlier in this category of plaintiffs: Roane County Tea Party.  Am. Compl. ¶ 44.  Following its receipt of tax-exempt status under Section 501(c)(4), the Roane County Tea Party had its tax-exempt status revoked.  Id. The plaintiffs, however, treat Roane County Tea Party in its opposition to the motions to dismiss no differently than the other plaintiffs in this category.  And so the Court will assume that is the case.

[5]  Thus, according to the plaintiffs, the "BOLO" list "remained in place" until approximately January 2013.

unconstitutional scrutiny[,] conservative organizations applying for tax-exemption."[6]  Id. ¶ 1; see also id. ¶¶ 309-10.  The plaintiffs also cite the May 14, 2013 Report released by the Treasury Inspector General for Tax Administration, which stated, among other things, that the IRS had engaged in the following, "both before and during the 2012 election cycle":

> (a) targeting of tax-exempt applications for additional scrutiny and inquiry based on "inappropriate criteria"—including organizational names and policy positions;
> (b) significantly delaying the processing of these applications, keeping them open over twice the length of time typically required to process tax-exempt applications; and
> (c) requesting additional information from these applicants that was entirely unnecessary and irrelevant to the IRS's determination regarding the organizations' respective tax-exempt statuses.

Id. ¶ 275 (citing Ex. 1 (The Report) at 5-20).

Under this alleged "IRS scheme," IRS officials across the country purportedly "pulled applications from conservative organizations, delayed processing those applications for sometimes well over a year, [and] then made harassing, probing, and unconstitutional requests for additional information."  Id. ¶ 2; see also id. ¶¶ 288-92.  According to the plaintiffs, "[t]he IRS scheme had a dramatic impact on targeted groups, causing many to curtail lawful activities, expend considerable unnecessary funds, lose donor support, and devote countless hours of time to responding to onerous and targeted IRS information requests that were outside the scope of legitimate inquiry."  Id. ¶ 3.  As a result of the aforementioned allegations, the plaintiffs "seek[] damages" for the implementation of the alleged IRS scheme, as well as "declaratory[] and injunctive relief" to "halt IRS targeting" and "strike down all unconstitutional rules, regulations,

---

[6]  In addition to the "BOLO" list, the plaintiffs allege that the IRS intended to scrutinize "conservative" Section 501(c)(4) groups further by invoking a gift tax provision that the IRS had rarely used in connection with contributions to these organizations.  See Am. Compl. ¶¶ 162-67.  The IRS would eventually "suspend[] its open investigation of gift taxes on contributions to [conservative Section] 501(c)(4) organizations."  Id. ¶ 167.

practices, and procedures that empowered the IRS's unlawful acts."  Id. ¶ 5; see also id. ¶¶ 311-16.

The plaintiffs filed suit on May 29, 2013, ECF No. 1, and have since amended their complaint twice, once on June 25, 2013, ECF No. 27, and again on October 18, 2013, Am. Compl. at 81.  Counts one through three seek monetary damages against certain defendants in their individual capacities for carrying out the alleged IRS scheme in violation of the First and Fifth Amendments.  See Am. Compl. at 61-65.  Counts four through seven generally accuse the defendants of violating the APA and seek declaratory and injunctive relief.  See id. at 66-75.  Count eight seeks declaratory relief under 26 U.S.C. § 7428 for those plaintiffs that are awaiting determination of their Section 501(c)(3) tax-exempt status.  See id. at 75-76.   And through count nine, the plaintiffs seek monetary damages for violations of 26 U.S.C. § 6103, because the defendants allegedly "obtained, inspected, handled, and disclosed" the plaintiffs' tax return information "illegally."  Id. ¶ 419; see also id. at 76-78.

After the plaintiffs instituted this action, the IRS publicly released a memorandum on its website stating that the challenged IRS scheme had been suspended as of June 20, 2013.  Daniel Werfel, Charting a Path Forward at the IRS: Initial Assessment and Plan of Action, at 7 (June 24, 2013), www.irs.gov/PUP/newsroom/Initial%20Assessment%20and%20Plan%20of% 20Action.pdf) ("IRS Action Plan") ("We have suspended the use of 'be-on-the-lookout,' or BOLO, lists in the application process for tax exempt status."); id. at 14 ("Specifically, the IRS has[] suspended the use of BOLO lists in the application process for tax[-]exempt status . . . ."); id. at Appendix ("App.") C ("Memo Suspending [U]se of BOLO Lists (June 20, 2013)"); id. ("Effective immediately, the use of watch lists to identify cases or issues requiring heightened awareness is suspended until further notice . . . ."), and that remedial steps had been taken to

address the scheme, IRS Charts a Path Forward [W]ith Immediate Actions,

http://www.irs.gov/uac/Newsroom/IRS-Charts-a-Path-Forward-with-Immediate-Actions (last

visited Oct. 23, 2014) ("IRS Path Forward") (listing the completion of "recommended actions

from the Treasury Inspector General for Tax Administration's . . . report on IRS's tax-exempt

area").[7]  The defendants have filed several motions to dismiss, all of which are opposed by the

plaintiffs.

## II. STANDARDS OF REVIEW

### A.  Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) allows a party to move to dismiss for "lack of subject-matter jurisdiction."

Fed. R. Civ. P. 12(b)(1).  When a defendant moves to dismiss under Rule 12(b)(1), "the

plaintiff[] bear[s] the burden of proving by a preponderance of the evidence that the Court has

subject[-]matter jurisdiction."  Biton v. Palestinian Interim Self-Gov't Auth., 310 F. Supp. 2d

172, 176 (D.D.C. 2004); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  A

court considering a Rule 12(b)(1) motion must "assume the truth of all material factual

allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the

benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC,

642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir.

2005)).  But a "court must give [a] plaintiff's factual allegations closer scrutiny when resolving a

Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a

---

[7]  The Court takes judicial notice of the publicly available information on the IRS website.  See, e.g., Seifert v.
Winter, 555 F. Supp. 2d 3, 11 n.5 (D.D.C. 2008) (Walton, J.) (citing cases that allow the taking of judicial notice of
information published on government websites); see also Fed. R. Evid. 201(b)(2), (c)(1) ("The court may judicially
notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from
sources whose accuracy cannot reasonably be questioned. . . . The [C]ourt . . . may take judicial notice on its
own[.]"); Peart v. Latham & Watkins LLP, 985 F. Supp. 2d 72, 81 (D.D.C. 2013) (taking judicial notice for
purposes of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and citing cases).

claim." <u>Byrum v. Winter</u>, 783 F. Supp. 2d 117, 122 (D.D.C. 2011) (citing <u>Macharia v. United States</u>, 334 F.3d 61, 64, 69 (D.C. Cir. 2003)).  And "[a]lthough 'the District Court may in appropriate cases dispose of a motion to dismiss for lack of subject[-]matter jurisdiction under Fed. R. Civ. P. 12(b)(1) on the complaint standing alone,' 'where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" <u>Coal. for Underground Expansion v. Mineta</u>, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Finally, in determining whether it has jurisdiction, the Court "may consider materials outside of the pleadings." <u>Jerome Stevens Pharm., Inc. v. FDA</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.  Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(b)(6) motion, the Court affords a plaintiff the "benefit of all inferences that can be derived from the facts alleged." <u>Am. Nat'l Ins. Co. v. FDIC</u>, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotations and citation omitted).  But raising a "sheer possibility that a defendant has acted unlawfully" fails to satisfy the facial plausibility requirement.  <u>Iqbal</u>, 556 U.S. at 678.  Rather, a claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations"

in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

"In determining whether a complaint states a claim, the [C]ourt may consider the facts alleged in

the complaint, documents attached thereto or incorporated therein, and matters of which it may

take judicial notice." Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007)

(internal quotations omitted).  And among the documents "subject to judicial notice on a motion

to dismiss" are "public records," Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004), which

includes records from other court proceedings, Covad Commc'ns Co. v. Bell Atl. Corp., 407

F.3d 1220, 1222 (D.C. Cir. 2005).

### III. ANALYSIS

**A.  Counts One Through Three of the Plaintiffs' Complaint**

The plaintiffs seek a "monetary remedy," also commonly known as a Bivens remedy,[8]

against the individual IRS defendants in their individual capacities for their alleged violations of

the First and Fifth Amendments in counts one through three of the amended complaint.  Am.

Compl. at 61-65; see also Pls.' Resp. at 5-42.  In response, the individual IRS defendants

generally have two bases for dismissal of these counts: (1) no Bivens claims can be asserted

against the individual IRS defendants; and (2) to the extent any Bivens claims are allowed, the

individual IRS defendants are entitled to qualified immunity.  See, e.g., Mgmt. Mot. at 4-17; Hull

Mot. at 9-41.  As explained below, contrary to the plaintiffs' contention that the District of

Columbia Circuit "has long recognized the availability of a Bivens action for constitutional

claims similar to those raised by the [p]laintiffs," Pls.' Resp. at 9, this Circuit does not permit the

---

[8]  In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court held that a plaintiff could recover monetary damages against federal officials who violated the constitutional rights of the plaintiff while acting under the color of federal law.

Court to create a <u>Bivens</u> remedy against the individual IRS defendants, and thus the Court need not address whether qualified immunity bars the relief sought in counts one through three.

In <u>Kim v. United States</u>, 632 F.3d 713 (D.C. Cir. 2011), the Circuit dealt with aggrieved taxpayers who alleged IRS wrongdoing, including unconstitutional conduct by individual IRS employees, and sought <u>Bivens</u> relief as a result of the alleged harm.  <u>Id.</u> at 714-15.  The Circuit affirmed the district court's dismissal of the "<u>Bivens</u> claims against the [d]efendants in their official capacities" pursuant to Fed. R. Civ. P. 12(b)(1), noting that it is "well established that <u>Bivens</u> remedies do not exist against officials sued in their official capacities."  <u>Id.</u> at 715.  The Circuit also affirmed the district court's dismissal of the "<u>Bivens</u> claims against the [d]efendants in their individual capacities" pursuant to Fed. R. Civ. P. 12(b)(6) because "no <u>Bivens</u> remedy was available in light of the comprehensive remedial scheme set forth by the Internal Revenue Code."  <u>Id.</u> at 717.  Obviously, this Court is bound by this Circuit's precedent.

The plaintiffs attempt to distinguish <u>Kim</u> on the basis that the alleged injuries in <u>Kim</u> "bear no resemblance to the injuries at issue here."[9]  Pls.' Resp. at 13.  The distinction is without merit when the Circuit's opinion is read in context with the district court's opinion.  In the district court, the aggrieved taxpayers accused the defendants of "due process violations" in connection with an alleged "ongoing campaign of harassment by correspondence" and sought a <u>Bivens</u> remedy for those violations.  <u>Kim v. United States</u>, 618 F. Supp. 2d 31, 33, 34 (D.D.C. 2009) (internal quotations omitted), <u>aff'd in part, rev'd in part and remanded</u>, 632 F.3d 713 (D.C. Cir. 2011).  Refusing to create a <u>Bivens</u> remedy for the alleged constitutional violations, the district court recognized that the existence of the Internal Revenue Code, a comprehensive

---

[9]   The plaintiffs appear to argue that their alleged constitutional injuries do not stem from violations of the Internal Revenue Code.  <u>See</u> Pls.' Resp. at 13.  But if not for the Internal Revenue Code, the plaintiffs could not have even sought tax-exempt status in the first place.  The Court, therefore, rejects any claim that the alleged injuries do not arise from the Internal Revenue Code.

remedial scheme enacted by Congress, precluded it from doing so.  Id. at 38-39.  On appeal, the

Circuit "agree[d] with the district court's reasoning"  that "no Bivens remedy was available in

light of the comprehensive remedial scheme set forth by the Internal Revenue Code."  Kim, 632

F.3d at 718; see also NorCal Tea Party Patriots v. IRS, No.1:13-cv-341, 2014 WL 3547369, at

*5-8 (S.D. Ohio July 17, 2014); Church By Mail, Inc. v. United States, No. 87-cv-0754-LFO,

1988 WL 8271, at *3 (D.D.C. Jan. 22, 1988) (explaining that declaratory relief for applicants

seeking tax-exempt status under 26 U.S.C. § 7428 renders Bivens remedy improper for

aggrieved applicants).

Here, as in Kim, the alleged injuries in the plaintiffs' Bivens claims against the individual

IRS defendants are also constitutional violations.  See Am. Compl. at 61-65.  The plaintiffs have

not meaningfully distinguished—by case authority or otherwise—between the "due process

violations" in Kim and the First and Fifth Amendment violations alleged in this case.[10]  In light

of the district court's dismissal of the aggrieved taxpayers' Bivens claims and the Circuit's

unequivocal endorsement of the district court's Bivens analysis in doing so, the Court can find

no compelling reason to depart from Kim.[11]

Moreover, a former member of this Court was confronted with a nearly identical case to

the one before the Court here and refrained from fashioning a Bivens remedy as well.  In Church

By Mail, the plaintiff, a non-profit church seeking tax-exempt status, filed suit against the

defendants, the IRS and various individual IRS agents, for the denial of its tax-exempt status

application.  1988 WL 8271, at *1.  The plaintiff claimed, inter alia, that the defendants violated

---

[10]   The fact that the plaintiffs are dissatisfied with the relief prescribed in the Internal Revenue Code, see Pls.' Resp. at 14, is not a legally sufficient reason for the Court to create a Bivens remedy, see Spagnola v. Mathis, 859 F.2d 223, 227 (D.C. Cir. 1988) ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention.").

[11]   "The trend in other Circuits also has been to not recognize Bivens actions against IRS agents."  NorCal, 2014 WL 3547369, at *8 (citing Circuit cases, "follow[ing] the majority position," and dismissing Bivens actions).

the Constitution, including the First Amendment, by "favoring traditional churches over more unusual ones," id., "demonstrat[ing] dislike and intolerance of [the] plaintiff's religion," id. at *2 (internal quotations omitted), and "engag[ing] in invidious discrimination against [the] plaintiff by singling it out for investigation and attack," id. According to the plaintiff, in denying its tax-exempt application, the defendants "exceeded the bounds of the authority given to [the] defendants under existing law." Id. In dismissing the plaintiff's claims seeking Bivens damages for the constitutional violations alleged against the defendants, the Court in Church By Mail reasoned that "a court-created remedy" was unnecessary where "Congress has created a specific remedy for challenges to rulings on tax exemption." Id. at *3. Specifically, the Court recognized "that no Bivens-type damages remedy against the individual IRS agents should be created by the Court . . . because Congress has created a specific, meaningful declaratory judgment remedy under 26 U.S.C. [§] 7428 for cases . . . in which an application for tax[-]exempt status has been denied." Id. Had it created a Bivens remedy, the Court opined that it could have "'wre[acked] havoc . . . [on] the federal tax system.'" Id. (quoting Baddour, Inc. v. United States, 802 F.2d 801, 807 (5th Cir. 1986)). The Court reasoned that "[i]t would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [IRS] employees." Id. (internal quotations and alterations omitted). This Court agrees with Judge Oberdorfer's assessment, and therefore dismisses counts one through three of the complaint against all of the plaintiffs with prejudice for the failure to state a cognizable claim for relief under Federal Rule of Civil Procedure 12(b)(6).

**B. Counts Four Through Seven of the Plaintiffs' Complaint**

In counts four through seven of the amended complaint, the plaintiffs, either collectively or a subset of them, seek declaratory and injunctive relief for the defendants' violations of the

APA.  Am. Compl. at 66-75, 79-80.  The "[p]laintiffs' statutory and constitutional claims in

[c]ounts [four] through [seven] are all based upon the adoption and implementation of the IRS

'[t]argeting [s]cheme' or 'BOLO [p]olicy.'"  Pls.' Resp. at 44 n.18; see also id. at 57 ("Counts

[four] through [seven] seek to enjoin the IRS from applying criteria and demanding confidential

information . . . .").  But unless an actual, ongoing controversy exists, this Court is without power

to decide it.  See Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990).  Even where a

case once posed "a live controversy when filed, the [mootness] doctrine requires" the Court "to

refrain from deciding it if 'events have so transpired that the decision will neither presently affect

the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  Id.

(quoting Transwestern Pipeline Co. v. FERC, 897 F.2d 570, 575 (D.C. Cir. 1990)).  If "the

[C]ourt can provide no effective remedy because a party has already 'obtained all the relief that

[it] sought,'" then the case is moot.  Schmidt v. United States, 749 F.3d 1064, 1068 (D.C. Cir.

2014) (second alteration in original) (quoting Conservation Force, Inc. v. Jewell, 733 F.3d 1200,

1204 (D.C. Cir. 2013)); see also Burlington N. R.R. Co. v. Surface Transp. Bd., 75 F.3d 685, 688

(D.C. Cir. 1996) (explaining that cases are moot if intervening events "make it impossible to

grant the prevailing party with effective relief").

        Here, after the plaintiffs commenced this case, the defendants allegedly "admitted" their

wrongful conduct.  See, e.g., Am. Compl. ¶¶ 359, 377, 391, 404.  The defendants then publicly

announced that they suspended the unconstitutional conduct complained of by the plaintiffs and

implemented changes to the tax-exempt review process to assure the public that the conduct will

not recur.  See IRS Action Plan at 7 ("We have suspended the use of 'be-on-the-lookout,' or

BOLO, lists in the application process for tax exempt status."); id. at 14 ("Specifically, the IRS

has[] [s]uspended the use of BOLO lists in the application process for tax[-]exempt status . . . .");

id. at App. C ("Effective immediately, the use of watch lists to identify cases or issues requiring heightened awareness is suspended until further notice . . . ."); see also IRS Path Forward (listing the completion of "recommended actions from the Treasury Inspector General for Tax Administration's . . . report on IRS's tax-exempt area").  Thus, the allegedly unconstitutional governmental conduct, which had delayed the processing of the plaintiffs' tax-exempt applications and spawned this litigation, is no longer impacting the plaintiffs.[12]  See Mont. Shooting Sports Ass'n v. Norton, 355 F. Supp. 2d 19, 21-22 (D.D.C. 2004) (mooting case where government "rescinded" its challenged action), aff'd, No. 04-5434, 2005 WL 2810686 (D.C. Cir. June 14, 2005).  Counts four through seven are therefore moot, as these counts were "all based upon the adoption and implementation of the 'IRS [t]argeting [s]cheme' or 'BOLO [p]olicy,'" Pls.' Resp. at 44 n.18 (emphasis added), which the defendants have suspended.[13]

The Court is aware, however, that the "voluntary cessation" of challenged governmental conduct does not necessarily moot a case unless "'(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  Qassim v. Bush, 466 F.3d 1073, 1075 (D.C. Cir. 2006) (quoting Motor & Equip. Mfrs. Ass'n v. Nichols, 142 F.3d 449, 459 (D.C. Cir. 1998)).  The defendants bear a heavy burden of showing that these criteria have been met.  See Am. Bar Ass'n v. FTC, 636 F.3d 641, 648 (D.C. Cir. 2011).   And "where the defendant is a government actor—and not a private litigant—there is less concern about the recurrence of objectionable behavior."  Citizens for Responsibility & Ethics in Wash. v. SEC, 858 F. Supp. 2d 51, 61, 62

_____

[12]  By plaintiffs' own allegations in the amended complaint, the challenged conduct did not extend beyond January 2013.  See Am. Compl. ¶ 170 (stating that the "BOLO" list "remained in place for another eighteen (18) months").

[13]  Although the Court's analysis is applicable to all of the plaintiffs, the Court notes that at a minimum, these counts cannot be brought by the plaintiffs "who have either had their applications for tax-exempt status ruled upon or have withdrawn their applications."  NorCal, 2014 WL 3547369, at *9 n.11.

(D.D.C. 2012); D.C. Prof'l Taxicab Drivers Ass'n v. District of Columbia, 880 F. Supp. 2d 67, 75 (D.D.C. 2012) (same).

Here, the Court is satisfied that there is no reasonable expectation that the alleged conduct will recur, as the defendants have not only suspended the conduct, but have also taken remedial measures to ensure that the conduct is not repeated.  See IRS Action Plan at 7, 14, App. C; IRS Path Forward; see also Initiative & Referendum Inst. v. U.S. Postal Serv., 685 F.3d 1066, 1074 (D.C. Cir. 2012), cert. denied, _ U.S. _, 133 S. Ct. 1802 (2013) ("It is implausible that the [defendant] would have gone through the cumbersome process of amending its regulation . . . only to [unconstitutionally] re-amend the regulation after this case is resolved . . . ."); Coal. of Airline Pilots Ass'ns v. FAA, 370 F.3d 1184, 1191 (D.C. Cir. 2004) (mooting case where government provided "unequivocal assurances" that application of challenged regulation was "effectively dead"); Citizens for Responsibility, 858 F. Supp. 2d at 62-63 (finding abandonment of challenged policy by the defendant was enough to provide the Court with "comfort that the [defendant] [wa]s taking seriously [the] [p]laintiff's concerns with the prior policy and is undertaking efforts to ensure" its discontinu[ation]"); Mont. Shooting Sports, 355 F. Supp. 2d at 21 n.1; Jean v. Dep't of Labor, No. 89-cv-0611-OG, 1990 WL 515163, at *4 (D.D.C. Jan. 9, 1990) (rendering case moot by defendants' actions and assurances of good faith as to future behavior).[14]  Accordingly, counts four through seven no longer warrant the Court's attention and

---

[14] While the defendants' motions to dismiss were pending, the IRS "granted the [tax-exempt] applications of . . . Linchpins of Liberty . . . and Abortion Must End Now," two of the plaintiffs that were awaiting an IRS determination as to their Section 501(c)(3) tax-exempt status when the plaintiffs filed this case. Defs.' Reply at 5; see also id. at 6 n.4.  The plaintiffs do not dispute this fact. Pls.' Resp. at 67 (admitting that the "IRS has . . . issued [favorable] [d]etermination [l]etters" to Linchpins of Liberty and Abortion Must End Now).  So in light of the parties' representations, the Court takes judicial notice that these plaintiffs' applications for tax-exempt status have been approved by the IRS. Fed. R. Evid. 201(b)(2), (c)(2). Thus, at a minimum, these counts are moot with respect to Linchpins of Liberty and Abortion Must End Now, plaintiffs who have been approved for Section 501(c)(3) tax-exempt status. See True the Vote v. IRS, No. 13-734, slip op. at 8-13 (D.D.C. Oct. 23, 2014) (Walton, J.) (analyzing mootness issue in analogous case with respect to organizations seeking tax-exempt status under Section 501(c)(3) and receiving such status while motions to dismiss were pending).

further use of its resources.[15]  Newdow v. Roberts, 603 F.3d 1002, 1008 (D.C. Cir. 2010)

(holding that while the constitutionality of certain governmental conduct "may be an important

question to [the] plaintiffs, . . . it is not a live controversy that can avail itself of the judicial

powers of the federal courts[, and the question] is therefore moot").  The Court will, therefore,

dismiss counts four through seven for want of subject-matter jurisdiction pursuant to Federal

Rule of Civil Procedure 12(b)(2) as to all of the plaintiffs.[16]

---

[15]   To the extent that the plaintiffs contend that these counts are not moot because of potential, future harm by the defendants, see, e.g., Pls.' Resp. at 68 (proffering future constitutional injuries "in the form of surveillance, watch lists, audits, and other similar burdensome administrative regulation"); id. at 73, the contention is without merit. The plaintiffs have not sufficiently alleged in the complaint that there is potentially an unlawful ongoing scheme or policy at the IRS in carrying out its other responsibilities besides reviewing tax-exempt applications.  See Don't Tear It Down, Inc. v. Gen. Servs. Admin., 401 F. Supp. 1194, 1199 (D.D.C. 1975) (mooting case where challenged governmental conduct "[s]o far as the Court [wa]s aware . . . ha[d] not been duplicated in any other instance," and "that i[t] will be duplicated must be deemed speculative").  And the Court will not allow the plaintiffs to "amend [their] complaint by making new allegations in [the] opposition brief."  Budik v. Ashley, _ F. Supp. 2d _, _, No. 12-cv-1949(RBW), 2014 WL 1423293, at *8 (D.D.C. Apr. 14, 2014) (Walton, J.) (citing Larson v. Northrop Corp., 21 F.3d 1164, 1173-74 (D.C. Cir. 1994)).  But even if the plaintiffs did sufficiently allege such a widespread and ongoing scheme in their complaint, the plaintiffs have not explained either how they have standing to seek "prospective relief," Pls.' Resp. at 67, or how their claims are ripe for judicial review, see City of Hous. v. Dep't of Hous. & Urban Dev., 24 F.3d 1421, 1429-30 (D.C. Cir. 1994) (enumerating outcomes when a plaintiff's claim for declaratory relief regarding agency action taken against the plaintiff pursuant to an unlawful policy is moot, one of which is that the plaintiff "has standing to challenge the future implementation of that policy" and "declaratory relief may be granted if the claim is ripe for review").

        Assuming arguendo that the defendants continue to implement the allegedly unlawful IRS policy against other organizations like the plaintiffs in the review of their applications for tax-exempt status, see Pls.' Resp. at 71 ("[T]he IRS may continue to engage in such tactics against . . . other applicants with similar viewpoints."), notwithstanding facts to the contrary, the plaintiffs could not challenge the continuing application of the policy as they filed their complaint on the basis of alleged harm to themselves during their application processes for tax-exempt status and not on the behalf of others that may be similarly situated to the plaintiffs, i.e., other organizations subjected to the same alleged conduct during their application processes for tax-exempt status, see Qassim, 466 F.3d at 1076 (explaining that constitutional challenge to a government policy can proceed if seeking "relief for individuals similarly situated").

[16]   Under count five, the plaintiffs request that the Court compel the defendants "to immediately issue a determination regarding the qualification" of those plaintiffs seeking tax exemption pursuant to 26 U.S.C. § 501(c)(4).  Am. Compl. at 80, ¶ (iii).  The defendants insist that the Court cannot grant the plaintiffs this relief, as "there is no legally specified deadline by which the IRS must act on an application for tax exemption under [S]ection 501(c)(4)," Defs.' Mot. at 12, Defs.' Reply at 18, and "the APA does not allow the Court to create one," Defs.' Mot. at 13.  Because the plaintiffs have not responded to this argument, the Court will treat it as conceded. See Lewis v. District of Columbia, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" (quoting Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), aff'd, 98 F. App'x 8 (D.C. Cir. 2004))); Local Civ. R. 7(b); see also NorCal, 2014 WL 3547369, at *11

(continued . . .)

### C.  Count Nine of the Plaintiffs' Complaint

In count nine of the amended complaint, the plaintiffs seek monetary judgments against the defendants due to their allegedly "illegal[] obtain[ment], inspect[ion], handl[ing], and disclos[ure] by the IRS [d]efendants" of the plaintiffs' tax return information.  Am. Compl. ¶ 419; see also id. ¶¶ 412-18.  According to the plaintiffs, "[e]ach inspection and disclosure by any employee or officer of the IRS of the tax return information produced by [the] [p]laintiffs in response to the IRS's unconstitutional and discriminatory requests for additional information constitutes a separate violation of [26 U.S.C. §] 6103(h) as such inspections and disclosures were not for 'tax administration purposes'" as defined in the statutory provision.  Id. ¶ 421 (certain internal quotations omitted).  Consequently, the plaintiffs argue that the defendants are liable under 26 U.S.C. § 7431, which provides damages for violations of 26 U.S.C. § 6103.  Am. Compl. ¶¶ 423-24; see also Pls.' Resp. at 74-84.  In response, the defendants argue that count nine is "based upon the nature and scope of the IRS's [allegedly unconstitutional] request[s]" for information in support of their applications for tax-exempt status, Defs.' Mot. at 13, which is not actionable under 26 U.S.C. § 6103, as this provision only prohibits "unauthorized inspection or disclosure of that tax return information,"  Defs.' Mot. at 16.

26 U.S.C. § 6103 protects the confidentiality of taxpayers' tax "[r]eturns and [tax] return information."  Id. § 6103(a).  Tax "return information" is broadly defined to include:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability,

---

(continued . . .)

(observing that Anti-Injunction Act and the tax exception in the Declaratory Judgment Act precludes the Court from issuing "a determination that [certain plaintiffs] are entitled to § 501(c)(4) status"); Z St., Inc. v. Koskinen, _ F. Supp. 2d. _, _, 2014 WL 2195492, at *7 (D.D.C. May 27, 2014) ("asking for any judicial determination" regarding tax-exempt status would be barred by the Anti-Injunction Act and the tax exception in the Declaratory Judgment Act); accord Viet. Veterans Against the War, Inc. v. Voskuil, 389 F. Supp. 412, 413 (E.D. Mo. 1974).

> tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]

Id. § 6103(b)(2)(A); see also id. § 6103(b)(2)(B)-(D).  Section 6103 contains numerous

exceptions to the general prohibition against disclosure or inspection of tax returns and tax return

information, including that:

> Returns and return information shall, without written request, be open to inspection[17] by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes.

Id. § 6103(h)(1).  And "[t]he term tax administration":

> (A) means—
> (i) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party, and
> (ii) the development and formulation of Federal tax policy relating to existing or proposed internal revenue laws, related statutes, and tax conventions, and
> (B) includes assessment, collection, enforcement, litigation, publication, and statistical gathering functions under such laws, statutes, or conventions.

Id. § 6103 (b)(4).  In short, Section 6103 addresses "improper disclosure of tax return

information."  Mann v. United States, 204 F.3d 1012, 1020 (10th Cir. 2000); see also Venen v.

United States, 38 F.3d 100, 105 (3d Cir. 1994) ("The history of [S]ection 6103 indicates that

Congress enacted the provision to regulate a discrete sphere of IRS activity—information

handling.").

---

[17] "The terms 'inspected' and 'inspection' mean any examination of a return or return information."  26 U.S.C. § 6103(b)(7).

Section 6103 does not provide a means for the plaintiffs to avoid dismissal of count nine of their complaint.  As just noted, Section 6103 concerns the disclosure or inspection, i.e., the "handling," of tax return information.  Venen, 38 F.3d at 105.  To the extent the plaintiffs take issue with the defendants' handling of its tax return information, those allegations, see Pls.' Resp. at 75 n.31 (citing Am. Compl. ¶¶ 296, 419-24), are insufficiently pleaded in their amended complaint,[18] see Iqbal, 556 U.S. at 679 (conclusory allegations "are not entitled to the assumption of truth").[19]

The plaintiffs' real bone of contention is that the defendants allegedly "demanded information" that "was not necessary for determining [their tax-]exempt status," and then "inspected, handled, and disclosed" it.  Pls.' Resp. at 77-78 (internal quotations omitted).  Thus, although the plaintiffs challenge the defendants' inspection of their tax return information, it is actually the defendants' alleged unconstitutional conduct in acquiring that information that forms the basis for count nine of the complaint.  See id. at 80 ("[T]he IRS inspected return information that was unnecessary to the determination of [the] [p]laintiffs' tax-exempt status."); id. at 82 ("The IRS does not . . . explain how information unnecessary to the [tax-exempt] determination[] process can be used for lawful purpose of 'tax administration.'").  But, unfortunately for the plaintiffs, Section 6103 is silent as to how tax return information can be acquired.  And even assuming that the defendants improperly acquired the plaintiffs' tax return information, that does

---

[18]  Indeed, paragraph 296 of the twice-amended complaint highlights this deficiency as the plaintiffs admit that certain individual defendants were using tax return information "to conduct official IRS business."  Am. Compl. ¶ 296; see also id. ¶ 313 (same).  Moreover, paragraph 296 does not allege that any of the defendants improperly inspected or disclosed the plaintiffs' tax return information.  It is a general averment that certain unauthorized inspections or disclosures may have occurred, but not with respect to the plaintiffs in this case.

[19]  As the Court will explain, any alleged inspections of the plaintiffs' tax return information by the defendants cannot support a claim for a violation of 26 U.S.C. § 6103, as the predicate for these allegedly unauthorized inspections is the defendants' requests for information that were allegedly "wholly unnecessary" to their applications to obtain tax-exempt status.  Pls.' Resp. at 81.

not compel a finding that such information was improperly <u>inspected</u>.[20]  In the Court's view, there is a clear dichotomy between the means by which tax return information is acquired and the disclosure or inspection of that information thereafter.  The plaintiffs, however, attempt to have the Court disregard this dichotomy, which conflicts with cases finding that the propriety of certain conduct separate and apart from the actual handling of tax return information is irrelevant and cannot be the predicate of a Section 6103 violation.  <u>Cf.</u> <u>Mann</u>, 204 F.3d at 1020 ("Sections 6103 and 7431 address improper disclosure of tax return information and not improper collection activity.  We therefore agree with the district court that the validity of the means by which the return information was disclosed is irrelevant to whether the disclosure of the information violated § 6103.  We further agree with the district court and the <u>majority of courts</u> which have considered the issue that there is nothing in § 6103 which requires that the underlying means of disclosure be valid before [a disclosure exception] applies." (emphasis added)); <u>Wilkerson v. United States</u>, 67 F.3d 112, 117 (5th Cir. 1995) (holding that disclosures of tax return information "were not wrongful" notwithstanding "improper levying procedures"); <u>Venen</u>, 38 F.3d at 106 ("Section 6103 and its attendant damages provision, [S]ection 7431, were meant to regulate only one sphere of activity—information handling—and were not intended to interfere with collection actions.  Thus, the propriety of the underlying collection action, in this instance the validity of the levy, is irrelevant to whether disclosure is authorized under [S]ection 6103 and the basis for liability under [S]ection 7431."  (internal citations, quotations, and ellipses

---

[20]  The plaintiffs also appear to assert that the defendants violated 26 U.S.C. § 6103 because the defendants did not use "[]official" and "[]secure . . . email accounts" to "conduct official IRS business."  Am. Compl. ¶¶ 296, 313.  This assertion does not provide a lifeline for the plaintiffs.  There is no allegation in the complaint that the manner in which the defendants conducted "official IRS business" did not sufficiently maintain the confidentiality of the tax return information.  <u>See</u> 26 U.S.C. § 6103 ("[tax] return information shall be confidential . . . except as authorized" herein).  Provided that the confidentiality of the tax return information was protected by the defendants—and the plaintiffs have not alleged otherwise—the statute does not prescribe the <u>manner</u> in which "tax administration" must be conducted.  The plaintiffs have not directed the Court to a statute or case authority that either supports their proposition or provides insight on this subject.

omitted)); Huff v. United States, 10 F.3d 1440, 1447 (9th Cir. 1993) (finding no liability under

Section 6103 "despite the possible procedural lapses involving the actual levy").

Supporting the Court's adherence to the dichotomy between the IRS's acquisition of tax

return information for assessing tax-exempt status and the IRS's inspection of that information

thereafter, is the availability of judicial review and a separate and distinct remedy for an

applicant aggrieved during the tax-exempt application process. Cf. Wilkerson, 67 F.3d at 116

("Congress enacted separate and distinct provisions concerning collection activities and

information handling."); Venen, 38 F.3d at 105 ("In a claim such as the present one based on an

improper levy, the concern is not improper information handling but rather improper collection

activity. Collection activity is a separate sphere of IRS activity governed by a separate body of

law."). Under 26 U.S.C. § 7428, an applicant requesting tax-exempt status under 26 U.S.C. §

501(c)(3) may seek a declaratory judgment that it indeed qualifies for tax-exempt status if either

the application has been denied by the IRS or the IRS has failed to act on the application in 270

days. 26 U.S.C. §§ 7428(a)-(b). If the application is denied, the applicant may file suit within

ninety days after the IRS mails the applicant its rejection letter. Id. § 7428(b)(3). Alternatively,

if the IRS fails to act on the application within 270 days, the applicant is "deemed to have

exhausted its administrative remedies," provided that it, "in a timely manner, [took] all

reasonable steps to secure . . . [a] determination" of its tax-exempt status. Id. § 7428(b)(2). In

either case, the applicant may file suit in the United States Tax Court, the United States Court of

Federal Claims, or the United States District Court for the District of Columbia. Id. §§ 7428(a),

(b)(2). In light of the available relief under 26 U.S.C. § 7428 for controversies arising out of the

tax-exempt application process,[21] which would encompass plaintiffs' allegations against the

defendants, cf. Church By Mail, 1988 WL 8271, at *3 (holding that "plaintiff clearly has an

adequate remedy under 26 U.S.C. [§] 7428" for constitutional violations during the tax-exempt

application process), it must remain separate and distinct from the relief provided under 26

U.S.C. § 7431 for unauthorized inspections of tax return information that occur after the

application process has either stalled or concluded.[22]   Accordingly, count nine of the complaint

fails to state a proper claim for relief and will be dismissed with prejudice as to all of the

plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6).[23]

### D.  Count Eight of the Plaintiffs' Complaint

Count eight of the amended complaint is brought on behalf of the four plaintiffs that were

still awaiting a determination as to whether they qualify as a Section 501(c)(3) tax-exempt

---

[21]  Other avenues of relief may also be better candidates than 26 U.S.C. § 7431.  For example, the plaintiffs acknowledge that the defendants' conduct could potentially be governed by 26 U.S.C. § 7605(b), which generally ensures that "[n]o taxpayer shall be subjected to unnecessary examination or investigations . . . ." Pls.' Resp. at 82 n.35.  And in NorCal, the Court identified 26 U.S.C. § 7433, as well as 26 U.S.C. §§ 6212, 6213, 7422, 7425, 7431, 7432 for Section 501(c)(4) applicants specifically, as potentially providing adequate relief to aggrieved applicants for tax-exempt status, as it "creates a damages remedy for the wrongful collection of federal tax." 2014 WL 3547369, at *6.  The Court will not weigh in, however, on the merits of any potential argument under these statutory provisions.

[22]  A parallel statutory remedy does not exist for Section 501(c)(4) applicants, as they "are not required to submit applications and can hold themselves out as exempt." NorCal, 2014 WL 3547369, at *6 (citing 26 U.S.C. § 508 and Treas. Reg. 1.6033-1).  Nevertheless, in light of the language of 26 U.S.C. § 7431 and the case law cited in this opinion, this fact alone does not persuade the Court to reach a different conclusion.

[23]  In light of the Court's interpretation of the authority cited in this Memorandum Opinion, the Court must respectfully disagree with that portion of the NorCal opinion, which permitted the plaintiffs to take discovery "to establish with evidence that IRS officials inspected or disclosed the [plaintiffs]' return information for improper purposes," 2014 WL 3547369, at *13, even though the plaintiffs' complaint there apparently muddied the dichotomy identified by the Court in this opinion, and thus did not sufficiently plead allegations concerning a violation of 26 U.S.C. § 7431.  See 2014 WL 3547369, at *13 (citing "PageID 1046" of the plaintiffs' complaint); Second Amended Class Action Complaint ¶ 247, NorCal, No.1:13-cv-341 (S.D. Ohio Jan. 23, 2014), ECF No. 71 ("Defendants inspected [p]laintiffs' information and shared it amongst themselves even though they knew it was unnecessary for making a decision on [p]laintiffs' tax-exempt status, and even though they knew it had been sought based on [p]laintiffs' political viewpoint.  Accordingly, the inspection, review, and disclosure was objectively unnecessary, and subjectively not undertaken, 'for tax administration purposes' under 26 U.S.C. § [6103(h)]."). Here, the Court will not allow the plaintiff to take discovery because it has only pleaded conclusory allegations.

organization and seeking a declaratory judgment regarding their Section 501(c)(3) tax-exempt statuses when the complaint was filed.  See Am. Compl. ¶¶ 405-11.  Since the filing of the complaint, however, two of the four plaintiffs that were awaiting such a determination—Linchpins of Liberty and Abortion Must End Now—have been granted Section 501(c)(3) tax-exempt status.  Pls.' Resp. at 67 ("IRS has . . . issued [favorable] [d]etermination [l]etters" to Linchpins of Liberty and Abortion Must End Now); see also Defs.' Reply at 5, 6 n.4.  Thus, the defendants contend that count eight is moot as it relates to Linchpins of Liberty and Abortion Must End Now.  See Defs.' Mot. at 2.  The plaintiffs do not contest this point, see Pls.' Resp. at 67, and the Court will accordingly treat it as conceded.[24]  See Lewis, 2011 WL 321711, at *1. Therefore, count eight, with respect to Linchpins of Liberty and Abortion Must End Now, will be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss.[25]

**SO ORDERED** this 23rd day of October, 2014.

REGGIE B. WALTON
United States District Judge

---

[24]   It would be improper for the Court to enter "final judgments in favor" of plaintiffs Linchpins of Liberty and Abortion Must End Now as to count eight, Pls.' Resp. at 67, because the claim asserted in this count is now moot. See Schmidt, 749 F.3d at 1068 (case is moot when all relief sought by party has already been obtained).  However, defendants United States and the Secretary of the Treasury in his official capacity will be ordered to file an answer or otherwise respond to the claim in count eight asserted by Patriots Educating Concerned Americans Now and Liberty Township Tea Party, Inc., see Am. Compl. ¶¶ 16-17; id. at 75, within fourteen days from the date of this opinion as they only sought partial dismissal of count eight, see Kangethe v. D.C. Dep't of Emp't Servs., 891 F. Supp. 2d 69, 71 (D.D.C. 2012) ("[W]here a party has filed a responsive pleading, such as a motion to dismiss, the motion tolls the period of time within which a party must file an answer to a complaint.  Rule 12(a)(4) of the Federal Rules of Civil Procedure provides that the service of a motion under Rule 12 suspends the movant's time to respond until [fourteen] days after the court's disposition of the motion." (internal citation omitted)), as their motion to dismiss count eight did not seek dismissal as to these two plaintiffs, see Defs.' Reply at 5.

[25]   An Order consistent with this Memorandum Opinion will be issued contemporaneously.