# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| LINCHPINS OF LIBERTY, *et al.*, | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 1:13-cv-00777-RBW |
|  | ) | |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

## UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO REMAINING CLAIMS AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES

14614402.1

Table of Contents

STATEMENT OF POINTS AND AUTHORITIES..........................................................................2

I.      Background…………………………………………………………………..………2

        A.      Factual background…………………………………………………………..2

        B.      The claims for declaratory and injunctive relief that remain following the D.C.
                Circuit opinion…………………………………………………………………4

        C.      The IRS has taken action on all Plaintiffs' pending applications, and the few that
                have received proposed denials now have the opportunity for administrative and
                judicial review…………………………………………………………………..6

                1.      The section 501(c)(3) applicants…………………………………………6

                2.      The section 501(c)(4) applicants…………………………………………7

II.     Plaintiffs' claims for declaratory and injunctive relief present no live or ongoing case or
        controversy for the Court to decide……………………………………………………9

        A.      Plaintiffs' claim for declaratory and injunctive relief in Count IV is moot……...10

        B.      Plaintiffs' claim for declaratory and injunctive relief in Count V is moot………16

        C.      Plaintiffs' regulatory claims in Counts VI and VII are moot……………………17

        D.      Plaintiffs' claims in Count VIII for a determination of their tax-exempt status are
                moot ....................................................................................................................... 18

        E.      Plaintiffs lack standing to bring the claims in Counts IV, V, VI, VII and VIII…18

                1.      The claims for declaratory and injunctive relief in Counts IV and V……19

                2.      The regulatory challenges in Counts VI and VII…………………..………20

                3.      The claim for determination of tax-exempt status in Count VIII…...........21

        F.      Plaintiffs' claims in Counts VI and VII are not ripe for review…..…………….22

III.    Plaintiffs fail to state a viable claim under the APA in Counts VI and VII……………..23

IV.     The declaratory and injunctive relief that Plaintiffs seek through Counts VI and VII is
        precluded by statute, and the Court thus lacks jurisdiction to entertain those claims…...26

14614402.1

V.    To the extent that Plaintiffs allege that they might be subjected to discriminatory conduct in the future, they are not now entitled to relief on such speculative claims................28

      A.    This Court lacks jurisdiction to consider future harm ......................................... 28

            1.    Plaintiffs lack standing to claim future harm.....................................30

            2.    Any claim of future harm is not ripe...............................................33

      B.    The D.C. Circuit's opinion did not call into question this Court's previous rejection of the future harm allegations.................................................34

VI.   Conclusion .............................................................................................................. 35

## Table of Authorities

Cases

*Abbot Labs. v. Gardner*,
      387 U.S. 136 (1967)................................................................................. 22

*Ahmed v. Napolitano*,
      825 F. Supp. 2d 112 (D.D.C. 2011) ......................................................... 20

*Alexander v. Americans United, Inc.*,
      416 U.S. 752 (1974)........................................................................... 25, 27

*Arpaio v. Obama*,
      797 F.3d 11 (D.C. Cir. 2015) .................................................................. 31

*Big Mama Rag, Inc. v. United States*,
      631 F.2d 1030 (D.C. Cir. 1980) .......................................................... 21, 25

*Bob Jones Univ. v. Simon*,
      416 U.S. 725 (1974)...................................................................... 24, 25, 26

*Boggs v. United States*,
      109 F. Supp. 2d 834 (S.D. Ohio 2000) ...................................................... 27

*Citizens for Responsibility & Ethics in Washington v. SEC*,
      858 F. Supp. 2d 51, 62-63 (D.D.C. 2012)................................................ 13

14614402.1

*City of Houston v. Dep't of Hous. & Urban Dev.*,
    24 F.3d 1421 (D.C. Cir. 1994) ................................................................ 22, 33

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ......................................................................................... 19

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ................................................... 18, 19, 30, 31, 32

*Cobell v. Jewell*,
    802 F.3d 12 (D.C. Cir. 2015) ...................................................................... 22, 33

*Conservation Force, Inc. v. Jewell*,
    733 F.3d 1200 (D.C. Cir. 2013) ............................................................ 29, 33, 34

*County of Los Angeles v. Davis*,
    440 U.S. 626 (1979) ...................................................................................... 10

*DeFunis v. Odegaard*,
    416 U.S. 312 (1974) ...................................................................................... 11

*Del Monte Fresh Produce Co. v. United States*,
    570 F.3d 316 (D.C. Cir. 2009) ..................................................................... 29

*Enochs v. Williams Packing & Navigation Co.*,
    370 U.S. 1 (1962) .......................................................................................... 27

*Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994) ..................................................................... 19

*Florida Bankers Ass'n v. U.S. Dep't of Treasury*,
    799 F.3d 1065 (D.C. Cir. 2015) .............................................................. 26, 27

*Linchpins of Liberty v. United States*,
    71 F. Supp. 3d 236 (D.D.C. 2014) ......................................................... 29, 30, 33

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 29, 30

*Munsell v. Dep't of Agriculture*,
    509 F.3d 572 (D.C. Cir. 2007) .................................................. 10, 11, 19, 22, 23

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ...................................................................................... 23

14614402.1

*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995) ................................................................. 26

*NorCal Tea Party Patriots v. IRS*,
    No. 1:13-CV-341, 2014 WL 3547369 (S.D. Ohio July 17, 2014) .......................... 15

*Qassim v. Bush*,
    466 F.3d 1073 (D.C. Cir 2006) ................................................................ 29

*Raines v. Byrd*,
    521 U.S. 811 (1997) ............................................................................ 30

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ........................................................................ 30

*Texas v. United States*,
    523 U.S. 296 (1998) ............................................................................ 23

*Tien v. Goldenberg*,
    No. 96‑6100, 1996 WL 751371, at (2d Cir. Oct. 31, 1996) .............................. 27

*True the Vote v. IRS*,
    831 F.3d 551 (D.C. Cir. 2016) ........................................................... passim

*True the Vote, Inc. v. IRS*,
    71 F. Supp. 3d 219 (D.D.C. 2014) ............................................................ 29

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ...................................................................... 19, 30

*Williams v. Lew*,
    819 F.3d 466 (D.C. Cir. 2016) ................................................................ 32

Statutes

Administrative Procedure Act ............................................................ 4, 11, 23

Anti-Injunction Act ..................................................................... 25, 26, 27

Declaratory Judgment Act ..................................................................... 25, 26

5 U.S.C. § 702 ................................................................................... 23

5 U.S.C. § 704 ................................................................................... 24

26 U.S.C. § 501(c) ......................................................................... passim

iv

14614402.1

26 U.S.C. § 6212 .................................................................................................... 24

26 U.S.C. § 6213 .................................................................................................... 24

26 U.S.C. § 7421(a) ............................................................................................... 26

26 U.S.C. § 7422 .................................................................................................... 24

26 U.S.C. § 7428 ............................................................................................... passim

26 U.S.C. § 6212 .................................................................................................... 24

28 U.S.C. § 2201(a) ............................................................................................... 26

Regulations

26 C.F.R. § 1.501(c)(4)⁻1 ................................................................................ passim

Other Authorities

Rev. Proc. 86-43 ............................................................................................... passim

Rev. Proc. 2016-5 § 7.02. ...................................................................................... 7, 8

14614402.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| LINCHPINS OF LIBERTY, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:13-cv-00777-RBW |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT AS TO REMAINING
CLAIMS AND SUPPORTING STATEMENT OF POINTS AND AUTHORITIES**

On August 5, 2016, the D.C. Circuit affirmed the dismissal of Plaintiffs' *Bivens*

(Counts I-III) and wrongful inspection (Count IX) claims, but reversed and remanded the

dismissal of the plaintiffs' other claims for equitable relief.  Those claims for declaratory and

injunctive relief are rooted in Plaintiffs' allegations that the federal defendants targeted

Plaintiffs' applications for tax-exempt status under section 501(c)(3) or 501(c)(4) of the Internal

Revenue Code for heightened scrutiny and issued unconstitutional and overly broad requests for

information, all based on Plaintiffs' viewpoints, and that action on Plaintiffs' applications was

unreasonably delayed.  In 2014, this Court dismissed the now-remanded claims on the grounds

of mootness, not only for Plaintiffs whose applications had been granted, but for all Plaintiffs on

the grounds that the Internal Revenue Service no longer is engaging in the practices that served

as the bases for Plaintiffs' claims.  On Plaintiffs' appeal, however, the D.C. Circuit found that the

United States had not established mootness under the voluntary cessation doctrine because a

small number of Plaintiffs' applications for tax-exempt status were still pending and because the

14576492.1

evidence previously available to the Court did not establish that the IRS has permanently suspended the conduct that gave rise to Plaintiffs' claims.

The IRS has resolved the matters that concerned the D.C. Circuit and caused it to reverse and remand the declaratory and injunctive relief claims for further action consistent with its opinion.  The IRS has acted on all Plaintiffs' applications where the Plaintiff still wished to receive a determination of its tax-exempt status.  It also has permanently corrected the conduct that gave rise to Plaintiffs' claims.  As a result, there remains no declaratory or injunctive relief that Plaintiffs may obtain.  Plaintiffs' remaining claims are moot, and/or Plaintiffs lack standing to bring them now.  That conclusion applies with equal force to Plaintiffs' request for declaratory and injunctive relief as to the constitutionality of the challenged Treasury Regulation and Revenue Procedure.  Those regulatory challenges also are barred because Plaintiffs have an available legal remedy to pursue.  As described in more detail below, the United States is entitled to judgment dismissing the remaining claims.

<strong>STATEMENT OF POINTS AND AUTHORITIES</strong>

**I.    Background.**

      A.    <u>Factual background.</u>

The events that form the basis of Plaintiffs' Complaint are described in a 2013 Report from the Treasury Inspector General for Tax Administration ("TIGTA"), which found that, for an 18-month period starting in 2010, mismanagement and poor training resulted in the use of inappropriate criteria by IRS employees in the selection of applications for tax-exempt status for processing and additional scrutiny.  Specifically, TIGTA found that,

> The IRS used inappropriate criteria that identified for review Tea Party and other organizations applying for tax-exempt status based upon their names or policy positions instead of indications of potential political campaign intervention.  Ineffective management: 1) allowed inappropriate criteria to be developed and stay in place for more

2

than 18 months, 2) resulted in substantial delays in processing certain applications, and 3) allowed unnecessary information requests to be issued.

(Doc. 51-1 at 2.)[1]  The report also outlined the interim steps that the IRS had already undertaken to fix the specific problems addressed in the report.  In addition to recommending that the IRS continue these interim steps, the TIGTA Report outlined nine additional steps that the IRS should take to ensure that the activity would not occur again.  As described in the attached declaration of Tamera L. Ripperda, the Director of the IRS Exempt Organizations Unit, the IRS implemented all those recommendations, as well as additional measures, to permanently change the procedures of the IRS to ensure that the events would not recur.

Within days of the issuance of the TIGTA Report, senior leadership and managers that permitted the activity were replaced and new leadership immediately began implementing changes to ensure that the events discussed in the TIGTA Report could never recur. (PSI Report at 172.)[2]  Following the Inspector General's report, various Congressional committees and subcommittees began their own investigations into the IRS.  For example, the Senate Finance Committee made findings similar to the ones outlined in the TIGTA Report and made further recommendations, which were implemented by the IRS, to ensure that the events would never occur again.[3]

---

[1] Citations to page numbers in record documents are to the page number in the upper right-hand corner assigned by the ECF system.

[2] On September 5, 2014, the United States Senate, Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, issued a report entitled, "IRS and TIGTA Management Failures Related to 501(c)(4) Applicants Engaged in Campaign Activity," S. Rpt. 113-26, *available at* https://www.gpo.gov/fdsys/granule/CPRT-113SPRT89800/CPRT-113SPRT89800/content-detail.html. *See also* S. Rep. No. 114-119, at 77 (2015).

[3] On August 5, 2015, the Senate Finance Committee released Senate Report 114-119, The Internal Revenue Service's Processing of 501(c)(3) and 501(c)(4) Applications for Tax-Exempt (continued...)

3

B.     The claims for declaratory and injunctive relief that remain following the D.C.
       Circuit opinion.

All of Plaintiffs' claims relate to their respective applications for tax-exempt status under

Code section 501(c)(3) or 501(c)(4).  The 41 Plaintiffs bring Count IV based on the

Administrative Procedure Act and seek the following relief:  (1) a declaration that the federal

defendants violated the APA; (2) an injunction prohibiting the federal defendants from

unlawfully targeting plaintiffs, including their officers, directors, and members, for disparate

treatment and particular scrutiny based on the unconstitutional criteria of viewpoint or

association; and (3) an injunction compelling the Secretary of the Treasury to issue

determinations on pending applications from the 501(c)(4) plaintiffs.  (Doc. 51 at 79-80.)

In Count V, Plaintiffs who sought tax exemption under section 501(c)(4) seek the exact

same declaratory and injunctive relief as in Count IV.  (Doc. 51 at 79-80.)  Like Count IV,

Count V alleges that the federal defendants targeted Plaintiffs' applications for heightened

scrutiny and issued unconstitutional and overly broad requests for information, all based on

Plaintiffs' viewpoints.  (Doc. 51 ¶¶ 353-56 (Count IV allegations), ¶¶ 369, 374, 376 (Count V

allegations).)  Count V includes the additional allegations that those actions unreasonably

delayed the consideration of Plaintiffs' applications and that the BOLO policy should have been

published in the Federal Register.  (Doc. 51 ¶¶ 370-73.)

In Count VI, the 501(c)(4) Plaintiffs seek a declaration that 26 C.F.R. § 1.501(c)(4)-1 is

void for vagueness, both on its face and as applied, as well as an injunction prohibiting its use.

(Doc. 51 at 80.)  Plaintiffs claim the challenged Treasury Regulation is unconstitutionally vague

---

(… continued)

Status Submitted by "Political Advocacy" Organizations From 2010-2013, *available at*
https://www.gpo.gov/fdsys/pkg/CRPT-114srpt119/html/CRPT-114srpt119-pt1.htm.

4

14576492.1

in its description of circumstances that will render an organization unqualified to receive

tax-exempt status under section 501(c)(4).  Specifically, Plaintiffs argue that the Treasury

Regulation requires section 501(c)(4) organizations to engage in the promotion of social welfare

as their "primary activity," but that it fails to define that term or provide any guidance as to what

that term means.  Also, Plaintiffs argue that the Treasury Regulation prohibits section 501(c)(4)

organizations from taking part in direct or indirect intervention in political campaigns, but that it

fails to define "intervention" or provide any guidance as to what speech or other expressive

activities constitute political campaign intervention.  (Doc. 51 ¶¶ 385-88.)

In Count VII, the four section 501(c)(3) Plaintiffs seek a declaration that Revenue

Procedure 86-43 is void for vagueness, both on its face and as applied, as well as an injunction

prohibiting its use.  (Doc. 51 at 80.)  Plaintiffs claim the challenged Revenue Procedure is

unconstitutionally vague in its description of circumstances that will render an organization

unqualified to receive tax-exempt status as an educational organization under section 501(c)(3).

(Doc. 51 ¶¶ 399-401.)

In Count VIII, the Plaintiffs with pending applications for tax-exempt status under

section 501(c)(3) seek declaratory judgments under 26 U.S.C. § 7428 approving their tax-exempt

status.[4]  (Doc. 51 at 75, 80.)  After Plaintiffs filed this action and before the United States filed

its motion to dismiss the Second Amended Complaint, the IRS granted the applications of two of

the four Plaintiffs with pending applications for exemption under section 501(c)(3), namely

---

[4] The D.C. Circuit "affirm[ed] the district court's dismissal of appellants' *Bivens* actions and statutory claims, but reverse[d] the district court's dismissal of the actions for injunctive and declaratory relief."  *True the Vote, Inc. v. IRS*, 831 F.3d 551, 564 (D.C. Cir. 2016).  The D.C. Circuit opinion does not explicitly address Plaintiffs' appeal of the dismissal of their section 7428 claims, which were brought pursuant to that statute for declaratory relief.  In the spirit of caution, we assume the claims for declaratory relief under section 7428 were among the claims for equitable relief that were reversed and remanded.

14576492.1

Linchpins of Liberty and Abortion Must End Now.  The other two Plaintiffs in this count,

Liberty Township Tea Party and Patriots Educating Concerned Americans Now ("PECAN"),

eventually declined to pursue their Count VIII claims for declaratory judgments under

section 7428 as to their tax-exempt status, and the parties have voluntarily dismissed their Count

VIII claims.

> C.    <u>The IRS has taken action on all Plaintiffs' pending applications, and the few that have received proposed denials now have the opportunity for administrative and judicial review.</u>

As of the filing of the Second Amended Complaint, Plaintiffs fell into four broad

categories:  (1) Plaintiffs that awaited a determination whether they should be exempt from tax

under section 501(c)(3) (Doc. 51 ¶¶ 15-18); (2) Plaintiffs that awaited a determination whether

they should be exempt from tax under section 501(c)(4) (Doc. 51 ¶¶ 19-28); (3) Plaintiffs that

already had received determinations in their favor that they are exempt from tax under either

section 501(c)(3) or section 501(c)(4) (Doc. 51 ¶¶ 29-50); and (4) Plaintiffs that had withdrawn

their applications for tax-exempt status under section 501(c)(4) (Doc. 51 ¶¶ 51-55).

> 1.    *The section 501(c)(3) applicants.*

As noted above, the IRS granted the applications of Linchpins of Liberty and Abortion

Must End Now after this suit was filed.  The other two Plaintiffs in this count, Liberty Township

and PECAN, eventually declined to pursue their Count VIII claims for declaratory judgments

under section 7428 as to their tax-exempt status, and the parties have voluntarily dismissed their

Count VIII claims.

Despite the fact that Liberty Township and PECAN chose to abandon their claim to have

their status determined by this Court under section 7428, those organizations recently informed

the United States that they nonetheless wish the IRS to process and issue determinations on their

applications under section 501(c)(3).  The IRS has done so, issuing each of those organizations a proposed denial of their applications.  (Doc. 112.)  Liberty Township and PECAN now have the opportunity to seek administrative review of their proposed denials with the IRS Office of Appeals.  To take advantage of that option, each group must submit a statement of facts, law and argument in support of its position within 30 days of the date of the proposed denial letter.  Rev. Proc. 2016-5 § 7.02, *available at* 2016 WL 20937 (2016).  As PECAN's proposed denial was issued October 28, 2016, it has until November 27, 2016, to submit a request for review in the Office of Appeals.  Liberty Township has until December 4, 2016, to submit a request for review of its November 4, 2016, proposed denial letter.  Until the time for these groups to submit a request for review in the Office of Appeals expires, the IRS can take no further action on their applications.  Should a group choose not to seek administrative review, the proposed denial will become final.  Should a group choose to request administrative review, the Office of Appeals – an independent office within the IRS – will review the request and, after the possibility for a conference with the group, issue a decision.

### 2.   *The section 501(c)(4) applicants*.

By the time Plaintiffs appealed the ruling on the motion to dismiss, only two of the Plaintiffs who previously had been awaiting determinations on their section 501(c)(4) applications still had not received determinations:  Albuquerque Tea Party and Unite in Action.[5]

---

[5] Unite in Action had received no determination of its application because the IRS had closed its file because of the applicant's failure to respond to a request for information in a timely manner.  Unite in Action later contended that it had provided the requested information, although the IRS had no record of receiving it.   Nonetheless, the IRS agreed that it would reopen this group's application and issue a determination upon receiving a copy of the material that Unite in Action stated it had previously provided.  (*See* Tr. of Oct. 12, 2016 Status Conf. at 9-10, ll.22-9.)

Also, at the status conference on October 12, counsel for Plaintiffs informed the Court and the United States that four of the Plaintiffs that previously had withdrawn their applications now wished to have them considered.  At the status conference, the Court ordered the IRS to act on the applications that remained pending, including the applications of the entities that had withdrawn their applications but reactivated them upon their counsel's oral motion at the status conference.  After the status conference, Plaintiffs' counsel learned that only one of the four withdrawn applicants actually wished to have its application considered:  Tri-Cities Tea Party. (*See* Doc. 110.)

The IRS has complied with the Court's order to act on the pending applications.  In addition to acting on the two remaining applications of the 501(c)(3) Plaintiffs as noted above, the IRS has acted on the three remaining applications of the 501(c)(4) Plaintiffs that still wished to receive determinations.  The IRS approved the application of Unite in Action by letter dated October 26, 2016.  The IRS issued a proposed denial of Albuquerque Tea Party's application on October 11, 2016, and a proposed denial of Tri-Cities Tea Party's application on November 8. (Doc. 112.)

Groups that receive proposed denials of their applications for tax-exempt status under section 501(c)(4) have the same opportunity for administrative review as described above for section 501(c)(3) applicants.  *See* Rev. Proc. 2016-5 § 7.02, *available at* 2016 WL 20937 (2016). As a result, Tri-Cities Tea Party has until December 8, 2016, to submit a request for review in the Office of Appeals.  Albuquerque Tea Party normally would have had until November 10 to submit its request for review, but it requested a 30-day extension, which the IRS has granted.  As a result, Albuquerque Tea Party now has until December 10 to submit its request for review. And as discussed in more depth later, if the administrative appeal results in the denial of the

14576492.1

applications for tax exemption, these organizations can challenge that action in a declaratory judgment action under Internal Revenue Code section 7428.

The two section 501(c)(3) Plaintiffs that have received proposed denial letters also had the opportunity to seek a judicial determination of their tax status under section 7428.  Indeed, they originally brought such a claim in this suit, but later abandoned that opportunity when they voluntarily dismissed their section 7428 claims.

## II.     Plaintiffs' claims for declaratory and injunctive relief present no live or ongoing case or controversy for the Court to decide.

"As applied in the context of injunctive litigation, if there remains no conduct to be enjoined, then normally there is no relief that need be granted, the case or controversy has ceased, and the jurisdiction of the court has expired under Article III."  *True the Vote*, 831 F.3d at 561.  That is the situation here, now that the IRS has acted upon all applications of the Plaintiffs who wished to have their applications acted on.  In reversing and remanding the dismissal of Plaintiffs' claims for declaratory and injunctive relief, the D.C. Circuit was concerned that the United States had not carried its heavy burden to show mootness under the voluntary cessation doctrine.  The D.C. Circuit found that voluntary cessation had not occurred because some of Plaintiffs' applications had yet to be processed.  *True the Vote*, 831 F.3d at 561. The D.C. Circuit "advise[d] the IRS that a heavy burden of establishing mootness is not carried by proving that the case is nearly moot, or is moot as to a 'vast majority' of the parties.  Their heavy burden requires that they establish cessation, not near cessation."  *Id*. at 561.  Now that the

IRS has acted upon all Plaintiffs' applications,[6] this action is no longer moot as to just a "vast majority" of the parties – it is moot as to all of them.

The D.C. Circuit also was concerned that the United States had not shown that the IRS has permanently eradicated the conduct that gave rise to Plaintiffs' claims.  In particular, the D.C. Circuit highlighted language from a June 2013 IRS report that the IRS has "suspended" the use of "Be-On-the-Lookout," or "BOLO" lists, as well as an IRS interim guidance memorandum announcing that the use of BOLO lists was "suspended until further notice."  *See True the Vote*, 831 F.3d at 563.  But the evidence now before this Court shows that the IRS has not just temporarily suspended the use of BOLO lists, but has permanently eliminated their use. (Ripperda Decl. ¶ 21.a; *see also* Statement of Material Facts ¶ 7.)  The IRS also has taken action to ensure that the other items about which Plaintiffs complain are permanently resolved.  As discussed in more detail below as to the specific claims in each remaining count, there remains no declaratory or injunctive relief that Plaintiffs may obtain.

A.      Plaintiffs' claim for declaratory and injunctive relief in Count IV is moot.

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 581 (D.C. Cir. 2007) (quoting *County of Los Angeles v. Davis*, 440 U.S. 626, 631 (1979)).  "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.  The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial

---

[6] Except, as noted, for the Plaintiffs who previously had withdrawn their applications and later confirmed through their counsel that they do not wish the IRS to process their applications.

power depends upon the existence of a case or controversy." *Id*. (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotation marks and citations omitted)).

Plaintiffs' claims with respect to Count IV are no longer live.  The 41 Plaintiffs bring Count IV based on the Administrative Procedure Act and seek the following relief:  (1) a declaration that the federal defendants violated the APA; (2) an injunction prohibiting the federal defendants from unlawfully targeting Plaintiffs, including their officers, directors, and members, for disparate treatment and particular scrutiny based on the unconstitutional criteria of viewpoint or association; and (3) an injunction compelling the Secretary of the Treasury to issue determinations on pending applications from the 501(c)(4) Plaintiffs.  (Doc. 51 at 79-80.)

The Plaintiffs no longer need an injunction ordering the IRS to issue determinations on any pending applications because, as described above, the IRS already has issued determinations on all their applications.  As to the other relief requested in Count IV, those claims are rooted in Plaintiffs' allegations that the federal defendants targeted Plaintiffs' applications for tax-exempt status under section 501(c)(3) or 501(c)(4) for heightened scrutiny and issued unconstitutional and overly broad requests for information, all based on Plaintiffs' viewpoints.  (Doc. 51 ¶¶ 353-56.)  As this Court observed and the D.C. Circuit agreed, Plaintiffs' claims raise questions about the fairness of the *application* process.  In particular, the D.C. Circuit described Plaintiffs as alleging "that their *applications for tax exempt status* were selected out" based on improper criteria. *True the Vote*, 831 F.3d at 556 (emphasis added); *see also id.* ("Because their *applications* were subjected to extended delay and were not receiving the same processing as those of other organizations, and as they learned from other sources that the IRS might be

11

employing improper and unconstitutional criteria, several applicants brought the present actions.") (emphasis added).[7]

Plaintiffs' claims for declaratory and injunctive relief hinge on the existence of an *ongoing* practice of "targeting" and delay in the consideration of *their* applications for tax exemption, but any such "targeting" or delay they experienced during the initial review of their applications necessarily ended when the IRS acted on their applications.  That is true not only for the great majority of Plaintiffs' applications that were approved, but also for the four Plaintiffs that received proposed denials.  As described above, now that those four Plaintiffs have received proposed denials of their applications, they are entitled to administrative review, if they wish to take advantage of it.  That review is conducted by the IRS Office of Appeals, which is separate from the Exempt Organizations Determinations Unit that handled the initial processing. Plaintiffs have raised no allegations in their Complaint that the alleged discriminatory conduct extended to the Office of Appeals or to any part of the IRS outside the context of the initial processing of applications.  Assuming that all of Plaintiffs' factual allegations are true, at best Plaintiffs describe a past event that carries no present threat of injury *to Plaintiffs* now that their applications for tax-exempt status have been acted on.

Even so, the IRS also has eliminated the conduct that formed the basis for Plaintiffs' Complaint.  Plaintiffs base their claims for declaratory and injunctive relief on their allegations that the IRS targeted Plaintiffs' applications for heightened scrutiny and issued unconstitutional and overly broad requests for information, all based on Plaintiffs' viewpoints, and that the IRS unreasonably delayed the processing of their applications.  (Doc. 51 ¶¶ 353-56, 369, 373-74,

---

[7] The D.C. Circuit agreed that this Court "correctly identified the nature of this controversy and the nature of the government conduct subject to equitable relief."  *True the Vote*, 831 F.3d at 564.

376.)  The primary basis for those allegations is the TIGTA report entitled "Inappropriate

Criteria Were Used to Identify Tax-Exempt Applications for Review," dated May 14, 2013

("TIGTA Report of 2013"), which Plaintiffs attached as Exhibit 1 to their Second Amended

Complaint.  (Doc. 51 ¶¶ 92, 274-86.)  Assuming for purposes of this motion that Plaintiffs'

allegations of fact are true, Plaintiffs nonetheless present no live controversy for the Court to

consider because the IRS has changed its practices to permanently eliminate the conduct

complained of by Plaintiffs.  Not only is that conclusion supported by the attached declaration of

Tamera L. Ripperda, the Director of the IRS Exempt Organizations Unit, but it also is supported

by the findings of TIGTA, which provides independent oversight of the IRS[8] and is a source that

Plaintiffs themselves have endorsed.  Following up on its initial report, TIGTA issued a new

report, dated March 27, 2015, entitled "Status of Actions Taken to Improve the Processing of

Tax-Exempt Applications Involving Political Campaign Intervention" ("TIGTA Report of

2015"), in which TIGTA concluded:

> The IRS has taken significant actions to address the nine recommendations made
> in our prior audit report.  These actions are designed to:  1) eliminate the selection
> of potential political cases based on names and policy positions, 2) expedite
> processing of Internal Revenue Code (I.R.C.) Section (§) 501(c)(4) social welfare
> organization applications, and 3) eliminate unnecessary information requests.

(TIGTA Report of 2015 at 2.)[9]  The IRS confirms that it has addressed all nine of TIGTA's

recommendations made in its initial report.  (Ripperda Decl. ¶ 21.)

---

[8] *See Citizens for Responsibility & Ethics in Washington v. SEC*, 858 F. Supp. 2d 51, 62-63
(D.D.C. 2012) (noting that existence of a report from the independent Office of Inspector
General gave the court "additional comfort that the SEC is taking seriously [the p]laintiff's
concerns with the prior policy and is undertaking efforts to ensure" its discontinuation).

[9] This Court's prior mootness ruling was issued before the TIGTA Report of 2015.  As the D.C.
Circuit noted, that report was not part of the record on appeal and could not be considered for the
first time on appeal.  But the D.C. Circuit also noted that "the government is free to offer the
document in the district court."  *True the Vote*, 831 F.3d at 562.  In its motion to dismiss, the
(continued...)

Specifically as to the concerns raised in the Complaint, the IRS changed its procedures to eliminate the use of BOLO lists or names, such as "Tea Party," "Patriots," or "9/12," to select applications for review, examples cited by Plaintiffs. (Doc. 51 ¶¶ 92, 277.) In its new report, TIGTA notes that the IRS suspended the use of the BOLO list in June 2013 and that "decisions on referrals containing emerging issues are being made based upon activities and not names or policy positions." (TIGTA Report of 2015 at 3, 4.)[10] The IRS has confirmed that the suspension of the BOLO list is permanent, and that review of applications is based on the applicants' activities, not merely names or labels. (Ripperda Decl. ¶ 21.a; *see also* Statement of Material Facts ¶ 7.)

The IRS also has permanently changed its procedures regarding the additional information that it might seek from applicants to ensure that the information requested is appropriate for the processing of an application. Plaintiffs' complaint (Doc. 51 ¶¶ 275, 352, 374) that they were asked for additional information in support of their applications for tax exemption and that the TIGTA Report of 2013 had determined that certain questions were unnecessary is thus moot. Even assuming those allegations are true, the IRS now has "developed and provided extensive political campaign intervention training for relevant Rulings and Agreements office

---

(… continued)
United States had not argued that the claims for declaratory and injunctive relief were moot on the grounds of the elimination of the BOLO list and other changes in IRS practices. The United States' mootness argument in the motion to dismiss was confined to those entities whose applications for tax-exempt status had already been granted. Because of that procedural posture, the appellate record lacked evidence submitted by the United States in support of mootness, such as the 2015 TIGTA Report and IRS declaration, that now are before this Court.

[10] The 2013 TIGTA Report did not recommend elimination of the BOLO list. Instead, TIGTA merely suggested that the process of editing the BOLO list be made subject to supervisory review. (Doc. 51-1 at 16.) By eliminating the use of the BOLO list altogether, the IRS has gone beyond even what TIGTA recommended.

14576492.1

employees, including all Determinations Unit employees."  (TIGTA Report of 2015 at 7; *see also* Ripperda Decl. ¶ 21.d.)  The TIGTA Report of 2015 also concludes that "[t]he required training appropriately addressed . . . the type of additional information that should be requested and the appropriate wording of questions in additional information request letters."  (TIGTA Report of 2015 at 8.)  But even if the IRS had not changed its procedures about the additional information that it might seek in the application stage, and if the IRS also had not instituted training on that topic that TIGTA has found to be effective, these Plaintiffs would not continue to suffer from any potentially inappropriate requests for information in the processing of their applications because their applications already have been processed.[11]

And even if irrelevant information were used to deny any of the four Plaintiffs' applications that have received proposed denials, they still are not entitled to declaratory or injunctive relief because they have a remedy at law in the form of an action under section 7428 to obtain judicial review of any final denial of their applications.  *See* 26 U.S.C. § 7428(a)(1)(A)

---

[11] This result is consistent with the ruling in another case that presented similar claims for declaratory and injunctive relief based on those plaintiffs' claims that the IRS had used unconstitutional criteria to select their applications for tax-exempt status for review, had issued irrelevant requests for information based on their viewpoints, and had unreasonably delayed the processing of their applications.  In that case, the United States District Court for the Southern District of Ohio found that the similar "claim[s] for declaratory and injunctive relief cannot be brought by the other Plaintiff Groups who have either had their applications for tax exempt status ruled upon or have withdrawn their applications."  *NorCal Tea Party Patriots v. IRS*, No. 1:13-CV-341, 2014 WL 3547369, at *9 n.11 (S.D. Ohio July 17, 2014).

15

(providing judicial review to section 501(c)(3) applicants);[12] *id*. § 7428(a)(1)(E) (providing

judicial review to section 501(c)(4) applicants).[13]

    B.    <u>Plaintiffs' claim for declaratory and injunctive relief in Count V is moot.</u>

In Count V, Plaintiffs who sought tax exemption under section 501(c)(4) seek the exact

same declaratory and injunctive relief as in Count IV.  Like Count IV, Count V alleges that the

federal defendants targeted Plaintiffs' applications for heightened scrutiny and issued

unconstitutional and overly broad requests for information, all based on Plaintiffs' viewpoints.

(Doc. 51 ¶¶ 353-56 (Count IV allegations), ¶¶ 369, 374, 376 (Count V allegations).)  Count V

includes the additional allegations that those actions unreasonably delayed the consideration of

Plaintiffs' applications and that the BOLO policy should have been published in the Federal

Register.  (Doc. 51 ¶¶ 370-73.)

As Count V seeks the same declaratory and injunctive relief as Count IV, the Count V

claim is moot for the same reasons discussed above in relation to Count IV.  But as to the

additional allegation of delay in Count V, Plaintiffs no longer are experiencing delay in the

processing of their applications because the IRS has now acted upon all their applications.  And

the claim that the BOLO policy should have been published in the Federal Register is moot

---

[12] The two section 501(c)(3) Plaintiffs that have received proposed denial letters had the opportunity to seek a judicial determination of their tax status under section 7428, and indeed originally brought such a claim in this suit, but they later abandoned that opportunity when they voluntarily dismissed their section 7428 claims.

[13] IRC section 7428 permits an organization that has had its application for section 501(c)(3) or (c)(4) status denied, or whose application for section 501(c)(3) or (c)(4) status has been pending for more than 270 days, to bring a suit for a declaration of its tax status in the Tax Court, the Court of Federal Claims or the U.S. District Court for the District of Columbia.  *See* 26 U.S.C. § 7428(a)(1)(A), (a)(1)(E), (b)(2).  If an applicant believes that its application is denied based on information that is irrelevant, it may seek review of that determination in an action under section 7428.

14576492.1

because, as discussed above, the IRS has permanently eliminated the use of BOLO lists in selecting applications for review.

>C.   Plaintiffs' regulatory claims in Counts VI and VII are moot.

In Count VI, the (c)(4) Plaintiffs seek a declaration that 26 C.F.R. § 1.501(c)(4)-1 is void for vagueness, both on its face and as applied, as well as an injunction prohibiting its use. (Doc. 51 at 80.)  Plaintiffs claim the challenged Treasury Regulation is unconstitutionally vague in its description of circumstances that will render an organization unqualified to receive tax-exempt status under section 501(c)(4).  (Doc. 51 ¶¶ 385-88.)  In Count VII, the four section 501(c)(3) Plaintiffs seek a declaration that Revenue Procedure 86-43 is void for vagueness, both on its face and as applied, as well as an injunction prohibiting its use.  (Doc. 51 at 80.)  Plaintiffs claim the challenged Revenue Procedure is unconstitutionally vague in its description of circumstances that will render an organization unqualified to receive tax-exempt status as an educational organization under section 501(c)(3).  (Doc. 51 ¶¶ 399-401.)

The D.C. Circuit has indicated that only Plaintiffs with pending applications have a live regulatory challenge.  The D.C. Circuit noted that "the void-for-vagueness challenges raised by appellants in *Linchpins* . . . are not moot for the same reasons as above – i.e., they continue to affect those plaintiff-organizations with *pending applications* and are amply supported by allegations in the complaint."  *True the Vote*, 831 F.3d at 563 (emphasis added).  Now that Plaintiffs' applications that have been granted are no longer pending, there is no actual controversy remaining for the Court to review.  And to the extent that the IRS has used the challenged regulatory provisions to deny the applications of the four Plaintiffs that have received proposed denials, those Plaintiffs are not now entitled to declaratory and injunctive relief because

they have a remedy at law in the form of an action under section 7428 to obtain judicial review, as discussed in more detail below.[14]  *See* 26 U.S.C. § 7428(a)(1)(A), (E).

> D.  Plaintiffs' claims in Count VIII for a determination of their tax-exempt status are moot.

In Count VIII, the four section 501(c)(3) Plaintiffs seek declaratory judgments under 26 U.S.C. § 7428 of their tax-exempt status.  As described above, the IRS has granted the applications of two of the four Plaintiffs in this Count:  Linchpins of Liberty and Abortion Must End Now.  Now that Plaintiffs Linchpins of Liberty and Abortion Must End Now have been granted tax-exempt status, there is nothing left for the Court to decide as to that claim for those two Plaintiffs.  The other two Plaintiffs in this count, Liberty Township and PECAN, eventually declined to pursue their Count VIII claims for declaratory judgments under section 7428 as to their tax-exempt status, and those parties have voluntarily dismissed their Count VIII claims, leaving no further relief for the Court to grant them under this Count.

> E.  Plaintiffs lack standing to bring the claims in Counts IV, V, VI, VII and VIII.

Like mootness, standing derives from the "case-or-controversy" requirement of Article III of the Constitution.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013).  The concept of Article III standing is based on the principles of separation of powers, and it "serves to prevent the judicial process from being used to usurp the powers of the political branches."  *Id.*  To establish standing on a particular claim, a plaintiff must demonstrate an injury (1) that is concrete, particularized, and actual or imminent; (2) that is fairly traceable to the challenged action; and (3) that will be redressed by a favorable ruling.  *Id.* at 1147.  When, as in

---

[14] While the applications of the Plaintiffs that have received proposed denials are still considered "pending" before the IRS because those Plaintiffs still have available administrative remedies before a final action on their applications is taken, the point remains that even those Plaintiffs now have overcome the hurdle of receiving the initial action on their applications.

14576492.1

this case, a decision on the merits would require the Court to decide that actions taken by another branch of government are unconstitutional, the "standing inquiry has been especially rigorous." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  There is no standing here because Plaintiffs do not allege any sufficiently specific and imminent future harm, which is what is required if they hope to obtain declaratory and/or injunctive relief.

To establish standing when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.  *See Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1272-73 (D.C. Cir. 1994) (discussing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)).  And future injury that is merely possible does not qualify to give a plaintiff Article III standing.  The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."  *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphases added and internal quotation marks omitted)).

            1.     *The claims for declaratory and injunctive relief in Counts IV and V.*

For the same reasons described above in parts I.A and B, Plaintiffs lack standing to bring their claims for declaratory and injunctive relief in Counts IV and V.  As described above, the IRS has changed its procedures that form the basis of Plaintiffs' claims in Counts IV and V. Plaintiffs can allege no actual or imminent harm from procedures that no longer exist.  *See Munsell v. Dep't of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007) (finding that, even if plaintiff could prove past violation of its First Amendment rights, past conduct did not demonstrate "real and immediate threat" of future harm to justify declaratory and injunctive relief).  Also, Plaintiffs have had their applications acted upon, and they now face no concrete threat of imminent harm

14576492.1

from procedures that were employed in the application review process, even if those complained-of procedures had not been eliminated.  Similarly, Plaintiffs' claims cannot be redressed by a favorable ruling in court because they already have been redressed by the actions of the IRS.

Also, Plaintiffs say they seek an injunction prohibiting the federal defendants from unlawfully targeting plaintiffs, *including their officers, directors, and members*, for disparate treatment and particular scrutiny based on the unconstitutional criteria of viewpoint or association.  (Doc. 51 at 79.)  But Plaintiffs may only bring claims on their own behalf; they do not have standing to bring claims on behalf of others.  *See Ahmed v. Napolitano*, 825 F. Supp. 2d 112, 116 (D.D.C. 2011).

2.    <em>The regulatory challenges in Counts VI and VII.</em>

In Count VI, the section 501(c)(4) Plaintiffs allege that 26 C.F.R. § 1.501(c)(4)-1 is unconstitutionally vague in its description of circumstances that will render an organization unqualified to receive tax-exempt status under section 501(c)(4).  In Count VII, the four section 501(c)(3) Plaintiffs allege that Revenue Procedure 86-43 is unconstitutionally vague in its description of circumstances that will render an organization unqualified to receive tax-exempt status as an educational organization under section 501(c)(3). The Plaintiffs that have had their applications granted face no imminent harm from any application of the challenged regulatory provisions, as the challenged regulatory provisions have not been applied to deny them tax-exempt status.

The section 501(c)(3) Plaintiffs that have received proposed denials of their applications – PECAN and Liberty Township Tea Party – face no imminent harm from Revenue Procedure 86-43 because the IRS did not apply it in issuing their proposed denials.  Instead of questioning PECAN's educational activities, the IRS has proposed a denial of PECAN's

20

application because, "in addition to research and educational activities, [PECAN is] engaged in potential political campaign intervention, commercial franchising operations and other disqualifying activities."  Liberty Township Tea Party lacks standing to challenge Revenue Procedure 86-43 for the same reason.  The IRS has proposed a denial of its application because, "while [Liberty Township] conduct[s] educational and charitable activities in furtherance of 501(c)(3) purposes, [it] intervene[s] in political campaigns on behalf of or in opposition to candidates for public office which is a disqualifying activity under Section 501(c)(3)."  The challenged Revenue Procedure is not even mentioned in PECAN's and Liberty Township's proposed denial letters.

    Treasury Regulation section 1.501(c)(4)-1, however, is cited in the proposed denial letters issued to the section 501(c)(4) Plaintiffs that have received such letters – Albuquerque Tea Party and Tri-Cities Tea Party.  But, as described in more detail below, those Plaintiffs are not entitled to declaratory or injunctive relief on their regulatory challenge because they have a remedy at law in the form of an action under section 7428 to obtain judicial review of any final denial of their applications.  *See* 26 U.S.C. § 7428(a)(1)(E); *see also Big Mama Rag, Inc. v. United States*, 631 F.2d 1030 (D.C. Cir. 1980) (deciding whether an applicable regulatory provision was unconstitutionally vague in a section 7428 action brought by a group that was denied tax-exempt status under section 501(c)(3)).

       3.    *The claim for determination of tax-exempt status in Count VIII.*

    For the same reasons described above in part II.D, the four section 501(c)(3) Plaintiffs lack standing to bring their claims for a determination of their tax-exempt status under section 7428.  Two of those Plaintiffs have been granted tax-exempt status, and the other two

21

have voluntarily dismissed their Count VIII claims, leaving no further relief for the Court to grant any of them under this Count.

      F.    <u>Plaintiffs' claims in Counts VI and VII are not ripe for review.</u>

Even a plaintiff that demonstrates standing must also establish ripeness. *See City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) (noting that if a plaintiff has standing, declaratory relief is proper only "if the claim is ripe for review"). "Ensuring that issues presented are ripe for decision protects against the premature adjudication of abstract disagreements and reserves judicial power for resolution of concrete and fully crystalized disputes." *Cobell v. Jewell*, 802 F.3d 12, 21 (D.C. Cir. 2015) (internal quotation marks omitted).

"In applying the ripeness doctrine, the courts look to 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Munsell v. Dep't of Agric.*, 509 F.3d 572, 585-86 (D.C. Cir. 2007) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  Plaintiffs' claims as to Treasury Regulation section 1.501(c)(4)-1 and Revenue Procedure 86-43 are not currently fit for judicial decision because any dispute about the challenged regulatory provisions will not be "fully crystallized" until they are presented in an appropriate judicial proceeding after, and if, a challenged regulatory provision is used to affect a Plaintiff's tax-exempt status.  Plaintiffs' challenges are not ripe because they would require the Court to issue what amounts to an advisory opinion on a speculative claim. *See Munsell*, 509 F.3d at 585.  The Court should wait to hear any challenge to Treasury Regulation section 1.501(c)(4)-1 or Revenue Procedure 86-43 in the context of an appropriate judicial proceeding in which the application of the Treasury Regulation or Revenue Procedure to the exempt status of an entity is at issue.  As for the Plaintiffs that have had their applications

approved, any review would not be appropriate until – and if ever – the challenged regulatory provisions actually are used to change the tax-exempt status of those Plaintiffs.  As for the Plaintiffs that have received proposed denials of their applications, their challenges will not be ripe until they are brought in an appropriate judicial proceeding, such as a suit for judicial review under section 7428 of any final denial of tax-exempt status, or in a suit for the refund of tax that any of those Plaintiffs might pay.

Also, Plaintiffs can show no hardship from delaying judicial review until a suit for declaratory judgment under section 7428, a refund suit, or a Tax Court deficiency proceeding, as appropriate, is brought.  The challenged regulatory provisions do not *require* Plaintiffs to engage in or refrain from any given activities.  They merely attach tax consequences.  "[T]he Supreme Court has held that hardship will not be found when a complaining party 'is not required to engage in, or to refrain from, any conduct.'"  *Munsell*, 509 F.3d at 586 (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)).  Also, the "mere uncertainty as to the validity of a legal rule [does not] constitute[] a hardship for purposes of the ripeness analysis."  *Id*. (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 811 (2003)).  As a result, even if the Court were to find that any Plaintiff currently has standing to challenge either Treasury Regulation section 1.501(c)(4)-1 or Revenue Procedure 86-43, those claims nonetheless are not ripe for judicial consideration.

### III.   Plaintiffs fail to state a viable claim under the APA in Counts VI and VII.

Plaintiffs raise their regulatory challenges in Counts VI and VII under the APA.  (Doc. 51 at 70, 72.)  Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  But that seemingly broad grant of judicial

23

review is limited to "final agency action for which there is *no other adequate remedy* in a court." *Id*. § 704 (emphasis added).  The availability of an alternative legal remedy precludes Plaintiffs' APA claims for judicial review of the challenged Treasury Regulation and Revenue Procedure.

If the IRS relies on either Treasury Regulation section 1.501(c)(4)-1 or Revenue Procedure 86-43 to finally deny a Plaintiff's tax-exempt status, or relies on either of those provisions in revoking a Plaintiff's tax-exempt status that has been granted, the affected Plaintiff has the opportunity to challenge the applicable provision in a suit under Internal Revenue Code section 7428.  Section 7428 permits an organization that has had its application for section 501(c)(3) or (c)(4) status denied, or whose application for section 501(c)(3) or (c)(4) status has been pending for more than 270 days, to bring a suit for a declaration of its tax status in the Tax Court, the Court of Federal Claims or the U.S. District Court for the District of Columbia.  *See* 26 U.S.C. § 7428(a)(1)(A), (a)(1)(E), (b)(2).  It also permits a group that has had its section 501(c)(3) or (c)(4) status revoked to bring a similar suit for judicial review of the revocation.  *See id*.

Also, if the IRS determines that any of the Plaintiffs do not qualify as an exempt organization and issues a notice of deficiency asserting a tax liability, any such Plaintiff may challenge the IRS determination in the Tax Court before paying the deficiency.  *See* 26 U.S.C. §§ 6212, 6213; *Bob Jones Univ. v. Simon*, 416 U.S. 725, 730 (1974).  And, if any tax is assessed, the Plaintiff may pay the assessed tax and sue for a refund in district court or the Court of Federal Claims, arguing that it should be recognized as a tax-exempt organization.  *See* 26 U.S.C. § 7422; *Bob Jones*, 416 U.S. at 730.

These available legal remedies also are appropriate vehicles for Plaintiffs to raise their regulatory challenges, if the challenged provision is relied on to deny or revoke a Plaintiff's

tax-exempt status, or if the challenged provision is relied on to assess a tax against a Plaintiff.  In
*Alexander v. Americans United, Inc.*, 416 U.S. 752 (1974), an organization sought injunctive
relief regarding the IRS's revocation of its tax-exempt status on the grounds that the organization
had devoted a substantial portion of its activities attempting to influence legislation in violation
of section 501(c)(3).  The group's challenge included its assertion that portions of
section 501(c)(3) were unconstitutional.  *Americans United*, 416 U.S. at 756-57, 757 n.7.  In
deciding whether the Anti-Injunction Act and the Declaratory Injunction Act[15] barred the group's
suit for pre-tax-enforcement declaratory relief, the Supreme Court denied injunctive relief to the
group seeking reinstatement of its tax-exempt status because the group *had an adequate
alternative remedy in the form of a refund suit.  Id.* at 762-63; *see also Bob Jones*, 416 U.S. at
730, 746.  The Supreme Court clearly contemplated that a constitutional challenge to a statute
regarding tax-exempt groups could be brought in a refund suit; certainly constitutional
challenges to regulatory provisions that help to implement a statute can be brought in that
context as well.[16]

A constitutional challenge also may be raised in a suit under section 7428.  In *Big Mama
Rag, Inc. v. United States*, 631 F.2d 1030 (D.C. Cir. 1980), a group that was denied tax-exempt
status under section 501(c)(3) challenged the constitutionality of a regulation on vagueness
grounds in a suit under section 7428 for a declaration of its tax status.  *Big Mama Rag*, 631 F.2d
at 1033-35.  The fact that Plaintiffs have other legal remedies available precludes the judicial
review they seek under the APA.

[15] The application of those Acts to Plaintiffs' regulatory challenges will be discussed below in
part IV.

[16] After the rulings in *Americans United* and *Bob Jones*, Congress enacted section 7428 to
provide affected organizations a "pre-payment" method to obtain judicial review of the denial of
their tax-exempt status.

14576492.1

**IV.     The declaratory and injunctive relief that Plaintiffs seek through Counts VI and VII is precluded by statute, and the Court thus lacks jurisdiction to entertain those claims.**

The Declaratory Judgment Act ("DJA") and the Anti-Injunction Act ("AIA") preclude the pre-enforcement review that Plaintiffs seek of Treasury Regulation section 1.501(c)(4)-1 and Revenue Procedure 86-43.[17]  "In a case of actual controversy within its jurisdiction," the DJA permits a court to issue a declaratory judgment "except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code."  28 U.S.C. § 2201(a).  With exceptions not relevant here, the AIA similarly prohibits lawsuits filed "for the purpose of restraining the assessment or collection of any tax."  26 U.S.C. § 7421(a).  Because of the similarity of those Acts, they are viewed to "operate coterminously," and the determination of the application of one also governs the other.  *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1435 (D.C. Cir. 1995).

The primary purpose of the Anti-Injunction Act is to protect the government's ability to assess and collect taxes expeditiously with a minimum of pre-enforcement judicial interference. *Bob Jones*, 416 U.S. at 736.  Here, Plaintiffs' requests to enjoin application of the challenged Treasury Regulation and Revenue Procedure go directly to the determination of Plaintiffs' tax-exempt status – and thus whether they owe federal taxes.   The D.C. Circuit has concluded that the AIA bars pre-enforcement challenges to regulations that govern tax liabilities.  In *Florida Bankers Ass'n v. U.S. Dep't of Treasury*, 799 F.3d 1065 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2429 (2016), two banking associations brought a pre-enforcement challenge to an IRS regulation that imposes a "penalty" on U.S. banks that fail to report interest paid to foreign account-holders.

---

[17] In this motion for summary judgment, the United States limits it argument about the application of the AIA and the DJA to Plaintiffs' regulatory challenges.

*Florida Bankers*, 799 F.3d at 1067.  The D.C. Circuit found that the AIA barred the suit because

the "penalty" was treated as a tax under the Internal Revenue Code, and the pre-enforcement

challenge to the regulation thus would restrain the assessment and collection of the tax paid if a

bank failed to comply with the reporting requirement.  *Id*.  Plaintiffs seek pre-enforcement

review of a Treasury Regulation and a Revenue Procedure that help determine whether groups

are exempt from tax and, thus, whether they will owe tax.  As in *Florida Bankers*, allowing

Plaintiffs' pre-enforcement challenge to tax regulations to proceed will restrain the assessment

and collection of the tax, and the AIA bars the present suit.

The DJA and AIA apply here, and the exception in *Enochs v. Williams Packing &*

*Navigation Co.*, 370 U.S. 1 (1962), does not change that result.  Under that exception, the Court

may grant a pre-enforcement injunction only if there are no circumstances whatsoever under

which the government might ultimately prevail *and* if equity jurisdiction otherwise exists.

*Williams Packing*, 370 U.S. at 7; *see also Americans United*, 416 U.S. at 758 (citing *Williams*

*Packing*).  The fact that Plaintiffs raise a constitutional claim does not alter the *Williams Packing*

analysis.  *Americans United*, 416 U.S. at 759-63 (applying the *Williams Packing* criteria and

denying injunctive relief to entity seeking reinstatement of tax-exempt status under section

501(c)(3) in its attempt to challenge the constitutionality of statute); *see also Boggs v. United*

*States*, 109 F. Supp. 2d 834, 836 (S.D. Ohio 2000) (noting that "[t]he exception for tax

matters . . . applies regardless of a recitation of alleged constitutional violations") (quoting *Tien*

*v. Goldenberg*, No. 96-6100, 1996 WL 751371, at *1 (2d Cir. Oct. 31, 1996) (internal citations

omitted)).

It is clear that equity jurisdiction does not exist because Plaintiffs have adequate legal

remedies available to pursue their claims.  For the reasons described above in part III, Plaintiffs

may pursue their constitutional challenges to Treasury Regulation section 1.501(c)(4)-1 and

Revenue Procedure 86-43 in a suit for declaratory judgment under section 7428, in a Tax Court

deficiency proceeding, or in a refund suit, as appropriate.  As a result, the AIA and the DJA bar

the injunctive and declaratory relief that Plaintiffs request in Counts VI and VII.

**V.      To the extent that Plaintiffs allege that they might be subjected to discriminatory conduct in the future, they are not now entitled to relief on such speculative claims.**

Notwithstanding that Plaintiffs' Complaint is limited to allegations of targeting in the

application process and notwithstanding that the IRS has now acted on Plaintiffs' applications,

Plaintiffs have suggested that they still need declaratory and injunctive relief to protect them

from any possible future infringements of their rights.  (Doc. 73 at 82, 85, 87.)  Plaintiffs venture

outside the Complaint to raise vague and speculative assertions about how the IRS might treat

Plaintiffs that now are tax-exempt organizations.  For instance, without alleging that they have

ever been subject to a discriminatory audit, Plaintiffs hypothesize that they might face one in the

future.  This Court previously rejected Plaintiffs' attempt to argue future harm because the

allegations were not adequately pled in the Complaint and because, in any event, they relied so

heavily on unfounded conjectures that were insufficient to confer jurisdiction. These reasons for

dismissal remain appropriate, and nothing in the D.C. Circuit's opinion casts doubt on them.

A.      This Court lacks jurisdiction to consider future harm.

Even if Plaintiffs' failure to adequately plead future harm did not independently bar their

argument, this Court would nonetheless lack jurisdiction to consider the claim because it relies

on nothing more than speculation.  The conjectural nature of the claim implicates two

independent jurisdiction barriers: standing and ripeness.  Unlike with Plaintiffs' claim of past

harm, this is not a question of voluntary cessation.  That is because the "'voluntary cessation . . .

exception' appli[es] where [a] plaintiff would be 'subject[ed] . . . to the *same* harm'" in the future

28

that it faced prior to cessation.  *True the Vote, Inc. v. IRS*, 71 F. Supp. 3d 219, 228–29 (D.D.C. 2014) (quoting *Qassim v. Bush*, 466 F.3d 1073, 1075 (D.C. Cir 2006)) (emphasis and first, fourth, and fifth alterations in District Court's opinion), *aff'd in part, rev'd in part and remanded*, 831 F.3d 551 (D.C. Cir. 2016).  As this Court noted, the harm that Plaintiffs allegedly faced was in connection with the "review[] [of] tax-exempt applications."  *Linchpins of Liberty v. United States*, 71 F. Supp. 3d 236, 246 n.15 (D.D.C. 2014), *aff'd in part, rev'd in part and remanded*, 831 F.3d 551 (D.C. Cir. 2016).  By contrast, Plaintiffs now theorize without any factual support that they might at some point encounter different consequences now that their applications have been approved.

As a result, Plaintiffs face the same hurdles as all litigants alleging that they have not yet suffered a particular harm but might at some future time.  *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1206 (D.C. Cir. 2013) (noting that a plaintiff claiming future harm must "demonstrate both that 'the request for declaratory relief is ripe' and that [it has] 'standing to bring such a forward-looking challenge'") (quoting *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009)).  Whereas the Government bore the burden on voluntary cessation, here it shifts to Plaintiffs to establish standing and ripeness.  *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [it].").  To carry that burden, Plaintiffs must allege more than prior discrimination.  *See id.* at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects.") (internal quotation marks omitted).  Here, Plaintiffs lack standing to allege future harm, and even if they had standing, the claim still would not be ripe.

14576492.1

1. *Plaintiffs lack standing to claim future harm.*

Plaintiffs previously raised the argument that jurisdiction is proper based on the prospect of "potential, future harm," and this Court properly rejected the contention as being "without merit." *Linchpins of Liberty*, 71 F. Supp. 3d at 246 n.15; *see also id.* (noting that Plaintiffs "have not explained . . . how they have standing to seek 'prospective relief'"). Indeed, one of the "irreducible" requirements for standing is an "injury in fact." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). That means that the alleged injury must be "actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted). Allegations of future harm can meet this standard only if the threatened injury is "certainly impending" or there is a "substantial risk" that it will occur. *Clapper*, 133 S. Ct. at 1143, 1150 n.5 (2013) (internal quotation marks omitted); *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (same). By contrast, "'[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) (emphasis and alteration in original). Standing requirements are "built on separation-of-powers principles" and serve "to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* at 1146. Thus, Plaintiffs' burden to show an injury in fact is "especially rigorous" when, as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

*Clapper* is a prime example of why Plaintiffs lack standing to argue future harm. That case involved a challenge to Section 702 of the Foreign Intelligence Surveillance Act of 1978, which allows the Attorney General and the Director of National Intelligence to jointly request court approval to surveil individuals who are "not United States persons and are reasonably

14576492.1

believed to be located outside the United States." *Clapper*, 133 S. Ct. at 1142 (internal quotation marks and footnote omitted). The plaintiffs alleged that their jobs required them to communicate with individuals abroad who might be subject to surveillance under Section 702. *Id.* For instance, some of the plaintiffs were lawyers who, as part of their jobs, talked to family members of suspected terrorists. *Id.* at 1156–57 (Breyer, J., dissenting).

The Supreme Court concluded that the plaintiffs lacked standing because they "have no actual knowledge" that their communications would be intercepted under the challenged law and instead "merely speculate and make assumptions." *Id.* at 1148 (majority opinion). As a result, the prospect of harm was too remote to confer standing. In particular, the Court held that the plaintiffs' "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Id.*

Similarly, the D.C. Circuit routinely has found standing to be lacking based on the uncertainty of future harm. For instance, the Court declined to exercise jurisdiction over a sheriff's challenge to the Department of Homeland Security's decision to defer "low-priority removals of non-dangerous [persons unlawfully present in the country] so that the [relevant] agencies can focus their resources on removing dangerous criminals and strengthening security at the border." *Arpaio v. Obama*, 797 F.3d 11, 14 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 900 (2016). The sheriff alleged that the policy would result in more crimes being committed, which in turn would force him to "spend more money policing [his] county and running its jails." *Id.* The Court rejected this inference, noting that "[w]hen considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events . . ., as well as predictions of future injury that are not normally susceptible of labelling as 'true' or 'false.'" *Id.* at 21 (internal quotation marks omitted).

31

Likewise, the D.C. Circuit rejected a challenge to the Debt Limit Statute (31 U.S.C. § 3101) brought by a holder of U.S. debt. *Williams v. Lew*, 819 F.3d 466, 469 (D.C. Cir. 2016). The plaintiff alleged that the statute, which places constraints on the Government's debt level, injured him by making a Government default more likely. *Id.* at 472. The Court concluded that the plaintiff lacked standing to pursue his "entirely conjectural" theory. *Id.* at 473. In other words, because he "fails plausibly to allege that any future injuries are '*certainly impending* to constitute injury in fact,' he cannot rely on such injuries to establish Article III standing." *Id.* (quoting *Clapper*, 133 S. Ct. at 1147) (emphasis in original).

The allegations here are just as speculative as they were in those other cases. Indeed, in order for the future harm to materialize, at least four events would have to occur. First, the IRS would need to resume use of improper criteria. For the reasons explained above, this is not only speculative, but also contrary to the IRS's unequivocal representations. Second, even if improper criteria were used in the future, they would need to be employed in contexts other than those alleged in the Complaint. As discussed, Plaintiffs' Complaint alleges discrimination in the application process, but their future harm argument focuses on post-application treatment by the IRS.[18] Third, Plaintiffs would need to face some type of future scrutiny, such as through an audit. And finally, the scrutiny would need to be caused by an improper motive. Plaintiffs cannot sufficiently establish even one link, let alone all four, in this chain. As in *Clapper*, *Arpaio*, and *Williams*, Plaintiffs' "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 133 S. Ct. at 1148.

---

[18] The IRS has confirmed that Plaintiffs are neither more nor less likely to be audited at some point in the future based on any additional scrutiny using inappropriate criteria that may have taken place during their application process. (Ripperda Decl. ¶¶ 27-29.)

14576492.1

2.      *Any claim of future harm is not ripe.*

Even a plaintiff that demonstrates standing must also establish ripeness. *See City of Houston*, 24 F.3d at 1430 (noting that if a plaintiff has standing, declaratory relief is proper only "if the claim is ripe for review").  Like standing, ripeness serves to prevent the expenditure of resources on speculative claims. *See Cobell*, 802 F.3d at 21 (D.C. Cir. 2015) ("Ensuring that issues presented are ripe for decision protects against the premature adjudication of abstract disagreements and reserves judicial power for resolution of concrete and fully crystalized disputes.") (internal quotation marks omitted).  Ripeness involves two inquiries: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Id.* (internal quotation marks omitted).  As this Court properly concluded before, Plaintiffs "have not explained . . . how their claims are ripe for judicial review." *Linchpins of Liberty*, 71 F. Supp. 3d at 246 n.15.

Plaintiffs fail the fitness for judicial decision prong for the same reason they lack standing—namely, the claim is too attenuated. In *Conservation Force*, the plaintiffs challenged alleged delays by the Fish and Wildlife Service in evaluating applications for permits to import certain hunting "trophies." 733 F.3d at 1205. As the lawsuit was pending, the Service issued a proposed rule that would eliminate the permit requirement. *Id.* at 1206. The plaintiffs claimed that they nonetheless could suffer future harm, and the D.C. Circuit acknowledged that this harm could materialize if the following chain of events occurred: 1) the Service did not finalize the proposed rule; 2) the plaintiffs, following the failure to finalize the rule, sought permits; and 3) the Service unreasonably delayed acting on their applications. *Id.* However, the Court determined that the challenge was not ripe because there was "no reason to entangle [itself] in the issue based on such a speculative possibility." *Id.* (internal quotation marks and alternation

33

omitted). Plaintiffs' future harm claim is similarly not ripe because, as discussed, it relies on a highly attenuated chain of events.

Plaintiffs are also unable to demonstrate hardship from deferred review. The Court noted in *Conservation Force* that the lack of any "outstanding permit application that is presently being delayed" cut against finding hardship. *Id.* at 1207. Similarly, Plaintiffs do not have any outstanding applications for tax-exempt status. All of those applications already have been acted on. If Plaintiffs believe at some future time that they have faced discrimination outside of the application process, they might have a ripe challenge at that point. Until then, however, the future harm claim is premature.

B.   The D.C. Circuit's opinion did not call into question this Court's previous rejection of the future harm allegations.

The D.C. Circuit's opinion did not cast doubt on either of the two reasons—that the allegations were not in the Complaint and that there is no jurisdiction—this Court previously gave for rejecting Plaintiffs' allegations of future harm. In particular, the D.C. Circuit described Plaintiffs and other challengers as alleging "that their *applications for tax exempt status* were selected out" based on improper criteria. *True the Vote*, 831 F.3d at 556 (emphasis added); *see also id.* ("Because their *applications* were subjected to extended delay and were not receiving the same processing as those of other organizations, and as they learned from other sources that the IRS might be employing improper and unconstitutional criteria, several applicants brought the present actions.") (emphasis added). Thus, the D.C. Circuit, like this Court, understood Plaintiffs' Complaint to be limited to alleged harm that occurred during the application process. The D.C. Circuit, in remanding for further proceedings to determine whether allegations related to the application process were moot, did not give Plaintiffs license either to venture outside the Complaint or to raise a speculative claim of future harm. As a result, this Court should, as it

34

14576492.1

previously did, reject Plaintiffs' attempt to manufacture jurisdiction based on an unsubstantiated future harm theory.

**VI.   Conclusion.**

No one disputes that the IRS used certain criteria and engaged in other conduct in processing applications for tax-exempt status that it should not have done, both as found by TIGTA and acknowledged by the IRS itself.  Whether what went wrong rises to the level of a constitutional injury is an issue that this Court has yet to decide, and the United States has not conceded that legal point.  But something having gone wrong in the processing of applications, whether it constitutes a constitutional injury or not, the point remains that what happened next is exactly what should have happened:  an independent oversight body (TIGTA) became involved and conducted an extensive investigation of what happened, it made its recommendations to correct the objectionable conduct, and the IRS implemented all of those recommendations.  And all of that took place with the additional and intense scrutiny of Congress exercising its oversight function.  Something having gone wrong in the first place, the process to correct that problem worked as it was supposed to, leaving no need for the Court to grant declaratory or injunctive relief.

The fact that the IRS has acted on Plaintiffs' applications leaves no live or ongoing issues to be resolved as to Plaintiffs' claims, which centered on the application process.  And, as described, the IRS has permanently changed its procedures that gave rise to Plaintiffs' claims.  As a result, Plaintiffs are not entitled to the declaratory and injunctive relief that they seek.

DATED: November 11, 2016

14576492.1

Respectfully submitted,

CAROLINE D. CIRAOLO
Principal Deputy Assistant Attorney General
Tax Division

s/ Joseph A. Sergi
JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street, N.W., JCB 7207
Washington, D.C.  20001
(202) 305-0868; (202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

LAURA C. BECKERMAN (CA 278490)
LAURA M. CONNER (VA 40388)
JOSEPH R. GANAHL (MD)
JEREMY N. HENDON (OR 982490)
GERALD A. ROLE (DC 415274)
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street, N.W.
Washington, D.C.  20001
(202) 514-2000

Of Counsel:
CHANNING D. PHILLIPS
United States Attorney

ATTORNEYS FOR THE UNITED STATES

14576492.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LINCHPINS OF LIBERTY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:13-cv-00777-RBW |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2016, I caused the United States' Motion for Summary Judgment as to Remaining Claims in the above-captioned matter to be filed with the United States District Court for the District of Columbia via the Court's CM/ECF system.


/s/ Joseph A. Sergi
Joseph A. Sergi

37

14576492.1