1            IN THE UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF COLUMBIA

3   LINCHPINS OF LIBERTY           .
                    Plaintiff,     .
4   vs.                            .   Docket No. CA 13-777
                                   .
5   UNITED STATES OF AMERICA, et al.  Washington, D.C.
                                   .   Tuesday, August 15, 2017
6                   Defendant.     .
    . . . . . . . . . . . . . . . .x  3:05 p.m.

7

8              TRANSCRIPT OF MOTIONS HEARING

9      BEFORE THE HONORABLE SENIOR JUDGE REGGIE B. WALTON

10                UNITED STATES DISTRICT JUDGE

11  APPEARANCES:

12  For the Government:  Carly Gammil, Senior Litigation Counsel
                         Abigail Southerland, Senior Litigation
13                        Counsel
                         AMERICAN CENTER FOR LAW & JUSTICE
14                       201 Maryland Avenue, NE
                         Washington, DC 20002
15

16  For the Defendant:   Laura Conner, Senior Litigation Counsel
                         Joseph Sergi, Senior Litigation Counsel
17                       U.S. DEPARTMENT OF JUSTICE
                         Office of Civil Litigation
18                       555 Fourth Street, NW
                         Washington, DC 20044
19

20  Court Reporter:  Cathryn J. Jones, RPR
                     Official Court Reporter
21                   Room 6521, U.S. District Court
                     333 Constitution Avenue, N.W.
22                   Washington, D.C. 20001

23

    Proceedings recorded by machine shorthand, transcript
24  produced by computer-aided transcription.

25

1                      **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  Your Honor, this afternoon this

3      is In re:  Linchpins of Liberty versus United States of

4      America.  This is Civil Action No. 13-777.  Ask the parties

5      to step forward and identify yourselves for the record,

6      please.

7              MS. GAMMIL:  Good afternoon, Carly Gammil on

8      behalf of the plaintiffs, and along with me is Abigail

9      Southerland.

10             THE COURT:  Good afternoon.

11             MS. CONNER:  Good afternoon, your Honor, Laura

12     Conner on behalf of the United States along with Joseph

13     Sergi.

14             THE COURT:  Good afternoon.  I had my law clerk

15     send you an email, which I hope both of you did receive,

16     proposing the areas that would be appropriate for discovery,

17     which I think is consistent with what I had previously

18     ordered, although this is more specific.

19             The only other thing I would add after talking

20     with my law clerk and she's going to get the question I had

21     proposed which would be an additional interrogatory, would

22     relate to what if any actions were taken by the IRS in

23     reference to the plaintiffs after they were granted

24     tax-exempt status that entailed monitoring beyond what is

25     normally done by way of monitor of entities that receive

1   tax-exempt status.

2            So assuming that question is added I'll hear from

3   the plaintiff's counsel first as to why the perimeters of

4   what I propose is not adequate to provide the information

5   needed in order to address the issue of summary judgment and

6   whatever other relief the plaintiff thinks is appropriate.

7            MS. GAMMIL:  Thank you, your Honor.

8            First observation is I really do like your Honor

9   wish that it were as simple as just putting these five

10  questions before the IRS.  The first problem that I perceive

11  with these is that once again it allows the service to be

12  the sole arbiter of what information it picks and chooses to

13  provide.  We feel like the interrogatories --

14          THE COURT:  Isn't that always the case when you're

15  talking about civil discovery?  I mean we just don't have

16  this wide open discovery where one side has to present

17  everything.  I mean there has to be some discretionary

18  assessments made consistent with their obligations to the

19  Court and their professional obligations as lawyers to

20  produce information that's pertinent to the demands.

21          MS. GAMMIL:  And we understand that, your Honor.

22  I think that the best way to put this is the interrogatories

23  in particular as well as the requests for documents, but the

24  interrogatories that we have propounded I believe they fall

25  within these categories.  These are broader categories.

1    We've just made it more specific because the order that set

2    forth the scope of discovery tailored it to what we need in

3    order to respond to the summary judgment filings.

4              So we've gone through the declaration which is 30

5    plus pages of factual assertions.  And there's a lot of

6    language and verbiage in there that frankly not being an IRS

7    employee I don't know what all of it means.  And so we've

8    asked for explanations as to certain things in the

9    declaration itself.  We've asked for the documents that

10   would support the assertions that are made in those, in that

11   document.  And like I said that's 30 plus pages of

12   information that, that is in terms of --

13             THE COURT:  What have they said in response to

14   your request for explanations?

15             MS. GAMMIL:  I'm sorry?

16             THE COURT:  What have they said in response to

17   your request for explanations?

18             MS. GAMMIL:  Well, the interrogatories that we've

19   propounded actually their responses by agreement of the

20   parties we extended the response date, deadline for 30 days

21   and tomorrow is the deadline.  So my understanding is

22   they're prepared to provide those responses tomorrow.

23   There's a handful.  And they let us know there were a

24   handful of them of 24 interrogatories.  There were, I'm

25   sorry, 25 interrogatories.  I think there were five or six

1    that they said they were going to object to.

2          The rest of them they said that they would be as

3    thorough as they could be in responding.  So again, those

4    are essentially just much more detailed and specific

5    questions that I think fall generally within the scope of

6    these plus and --

7          THE COURT:  See, I guess I wasn't aware of that

8    because I probably would have delayed this hearing until

9    after that production is made, so that we know exactly what

10   the playing field is.  Because at this point not knowing

11   what they're going to produce seems to me I'm shooting in

12   the dark as to whether there's additional information beyond

13   that that should be produced that hasn't.

14         MS. GAMMIL:  Right.  I believe in the filings on

15   this motion there was some mention of the fact that the

16   interrogatory deadline had been extended.  August 16th would

17   be the deadline.  I think that was in their opposition.

18   They've already responded to one set of document requests in

19   part which is what led to the perceived need on the part of

20   both parties for this hearing because of the overarching

21   disagreement as to what the terms of your order setting the

22   scope of discovery actually meant.

23         There was disagreement about well, you know, do we

24   have to produce anything with regard to past actions.  And

25   they've objected generally in a broad, you know, broad terms

1   to anything regarding past actions.  And our position --

2           THE COURT:  I thought I made it clear that past

3   actions that amounted to inappropriate targeting of these

4   entities was information that had to be produced.

5           MS. GAMMIL:  I thought so as well, your Honor.

6           THE COURT:  Otherwise, I don't know how you would

7   be in a position to assess whether remedial actions have

8   appropriately been taken to address those past actions.

9           MS. GAMMIL:  I couldn't agree more.  And like I

10  said I thought that was very clear, too.  After our

11  teleconference with your Honor, it was at that point that

12  opposing counsel thought that well, you better just take a

13  look at the specific requests which is why we ended up here

14  you know filing this motion.

15          I guess, let me make sure that I've presented

16  exactly where we are just so that you understand this.

17  There has been one set of request for documents that they've

18  responded to, and that's what led to the disagreement about

19  the general scope of the discovery.  There's also -- but

20  they did respond in part to that and there were some

21  objections there.  Again, based mainly on objection to

22  anything regarding past actions and anything outside of the

23  application process.

24          Our position has been we have to know what

25  happened in the past in order to know what changes have been

1    made, and if they're sufficient going forward in the current

2    process.  As to actions outside the application process,

3    again, our position is you talked in some length in your

4    summary judgment filings about reviews and monitoring and

5    potential for audits, so we're entitled to know, and I think

6    the last question that your Honor has just added here at the

7    hearing, gets to that same issue of what else can plaintiffs

8    expect as a result of the initial targeting.

9         That would be obviously outside the application

10   process, but they're still entitled to know since we were

11   targeted in the first place should we be expecting anymore

12   discriminatory treatment as a result of that.  That's what

13   they're objecting to as being out --

14        THE COURT:  That would be very difficult for them

15   to, and it seems to me they would have to speculate.

16        MS. GAMMIL:  If there's documentation.  If it

17   happens later, you know, and as of today there are no plans.

18   That's a different story.  But if, for example, and again

19   there is documentary evidence to this.  We're not shooting

20   in the dark here.  We're not speculating.  There's an email

21   from the former EO director of rulings and agreements saying

22   to a group of people that at the time the director,

23   Ms. Lerner, says that we're probably going to have to grant

24   these (c)(4) applications, but we're going to go ahead and

25   send them on for a review of their operations.  Solely

1   because they've been swept up in this inappropriate

2   targeting and screening.  And so our question is, did you do

3   that to them?  And if so, what else did you do to them just

4   because they got swept up in this?  So that in our

5   understanding and in our request that's what we're trying to

6   get at is just is there anything else?  Because I don't

7   think we can say that this case is moot if there are ongoing

8   effects of the initial targeting.

9          And I thought that we were all, you know, on the

10  same page on that.  But again, that's why we're here.  So

11  that's the disagreement essentially that the parties have

12  over the scope.

13         THE COURT:  Like I said it was my intention and I

14  thought it was clear enough, although I didn't go into

15  specifics, that and I thought I specifically said at the

16  hearing that in order to appreciate whether remedial steps

17  have been appropriately taken to address the past that you

18  have to know what the past was.  Otherwise, how would you be

19  able to assess whether what's been done did address the

20  problems that were existing in the past?

21         MS. GAMMIL:  Right.  And that's our position as

22  well.  And so through the entire body of requests there may

23  be one that asks about past actions.  And particularly it's

24  about policies.  What were the policies that were in place

25  that allowed this?  And now let us see the policies that are

1  in place now.  Because if they're identical then that means

2  everything that happened here can happen again.  What have

3  you actually done to change the policies?

4         Those are the kinds of things that we're looking

5  at.  My understanding of the government's position is well,

6  those requests about past policies and actions you didn't

7  give us the nexus to tie it to the current process.  Well,

8  each request doesn't have to spell out my thought process in

9  terms of how that's going to help me figure out the current

10 process.  But I do understand that the sum total of my

11 requests needs to go to that issue of what happened in the

12 past so that I can know you know have we changed things

13 sufficiently so that it's not happening now.

14        I think that that all is sufficiently clear from

15 your Honor's order setting the scope of discovery.  That's

16 been our understanding from the beginning.  I also tend to

17 agree with your Honor that perhaps it would be best to

18 reserve any ruling including trying to you know do these

19 broader interrogatories when the responses to the

20 interrogatories are going to be forthcoming tomorrow.

21        And they've already agreed to produce documents in

22 response to many of our second requests for documents

23 including doing a search.  You may have read this in the

24 filings, but there's what's called a custodian database,

25 and it includes a lot of information.  And so they have

1    finally agreed that yes, we'll search that for information

2    relating to the plaintiffs.  We've provided them with some

3    search terms.

4              THE COURT:  Up to, at what point 2015?

5              MS. GAMMIL:  That only goes up to 2013, May 2013,

6    when the first TIGTA report came out.  So the problem that

7    we have with that is we still had applicants in the process.

8    We still have plaintiffs in the process well after May of

9    2013.

10             THE COURT:  Obviously, I'll hear from the

11   government in reference to this.  But I would assume if

12   there were people or entities that were still in the process

13   of seeking exempt status that activity that took place after

14   that first report would be pertinent.  And as it relates to

15   any monitoring beyond what normally is done in reference to

16   those entities that already had received tax-exempt status

17   that information about what occurred post 2013 would also be

18   pertinent.

19             MS. GAMMIL:  And your Honor, I mean just I think

20   it's fairly obvious that information at a minimum up through

21   July of 2015, has to be relevant because their summary

22   judgment filings are based largely, rely largely on a 2015

23   TIGTA report.  So obviously the period between the two TIGTA

24   reports there's still relevant activity happening.

25             THE COURT:  I think it's true especially

1   consistent with the Circuit's opinion.

2          MS. GAMMIL:  Right.  So these are all the reasons

3   that like I said we've tried to point out that -- and we've

4   noted that there is evidence that has been produced about at

5   least one of these plaintiffs.  And again, we don't know

6   what we don't know because it's not in our possession.  We

7   have seen documentation in the form of emails regarding one

8   of our plaintiffs and some of the treatment of that

9   plaintiff during the process that was not included in the

10  case file that the plaintiff provided to us.  It was not

11  included in any other documentation provided to us, but it

12  was included in discovery productions in another related

13  case.

14         So again, all of these things to us indicate you

15  haven't searched all the relevant sources.  There are other

16  relevant sources.  Yes, the custodian database is one and

17  we're really glad that exists, and that maybe makes it a

18  little bit easier because it's consolidated but that doesn't

19  mean that you don't still under your basic discovery

20  obligations have to go to the other relevant sources and

21  search for documents that may be there.

22         And from what I've seen in their filings it sounds

23  a lot like the IRS is basically just saying well, we've

24  already done it for one case and for Congress and we just

25  really don't want to do it again.  And you know while I

1   understand it takes some time that may be a basis for saying

2   you know can we have a little more time to do this but

3   not -- well, we've given you enough and you should just be

4   satisfied with that.

5          I mean these plaintiffs are entitled to this

6   discovery.  Obviously as this Court has said they're

7   entitled to discovery within these scopes.  And you know

8   just because there may be a good bit more out there doesn't

9   mean that they're not entitled to it.  It just means okay,

10  maybe it takes a little more time to get all of it together.

11         THE COURT:  Let me hear from the plaintiff and

12  I'll let you respond.

13         MS. GAMMIL:  Thank you, your Honor.

14         THE COURT:  I mean from the defendant and I'll let

15  you respond.

16         MS. CONNER:  Thank you, your Honor.  First, I

17  believe we need to make it clear exactly what the United

18  States has objected to and what it has not.  When the

19  plaintiff was just discussing the issue of the time period

20  covered by the database that the United States as an

21  accommodation despite our objections to some of the requests

22  for production that plaintiffs have submitted.  For requests

23  going to the IRS's current practices and procedures which

24  really is the relevant topic for purposes of determining the

25  United States' motion for summary judgment as to the

1    standing and mootness issues that it raises.

2            The United States has produced those documents.

3    It has not objected to producing documents and answering

4    interrogatories even though the interrogatories are not due

5    until tomorrow.  For information about what is going on at

6    the IRS now and the actions that the IRS has taken to

7    correct the past conduct about which the plaintiffs have

8    complained in their complaint.

9            So the issues as to how much of the past

10   activities are subject to discovery at this point for

11   purposes of determining the issues raised in the summary

12   judgment motion, we agree with the Court that the plaintiffs

13   have to know what happened in the past to be able to judge

14   if corrections taken have been adequate.  But here the past

15   actions that the plaintiffs have complained about that is

16   included within the confines of their complaint.

17           And to allow the plaintiff at this point to engage

18   in broader discovery that essentially ask for any activity

19   that ever happened in the past related to the plaintiffs

20   would really defy the purpose of discovery and the purpose

21   of combining discovery to exactly what the plaintiffs have

22   complained about.

23           THE COURT:  I guess I'm a little amiss as to what

24   you're saying.  Are you saying that conduct that was engaged

25   in or allegedly engaged in by IRS that was delaying the

1    granting of tax-exempt status in regards to the applications

2    that are at issue in this case that you don't have to go

3    beyond that?  I guess I don't understand what you're saying

4    the scope of what you think your obligation is.

5              MS. CONNER:  Well, I guess, I'm responding to

6    particular requests where plaintiffs have asked for just

7    broad ranging discovery of just about any activity in the

8    past.

9              THE COURT:  When you say "the past," are you

10   talking about in reference to these applications that are at

11   issue in this case?  Or things that took place even before

12   these applications were filed?

13             MS. CONNER:  No, I think related to the time

14   period that would have involved these applications but also

15   dealing more generally with policies and procedures and

16   their application that may not be confined by the particular

17   plaintiffs here.

18             And here -- the Court has allowed discovery and in

19   the order allowing discovery permitted plaintiffs to conduct

20   discovery about past acts of alleged discrimination but it

21   was limited.  It was limited and the language in the Court's

22   order was to the extent the information is necessary to

23   ascertain the changes made by the IRS.  And the United

24   States interpretation of that qualification was that it was

25   a limit on just wide ranging inquiries into past conduct

 1  whether about these plaintiffs or the general allegations of

 2  the complaint.

 3          Because otherwise it seems like that qualification

 4  has no meaning unless the plaintiffs are required to show

 5  why particular past actions why they need more information

 6  than what is already in their complaint to be able to judge

 7  whether the IRS has made an effective change to its policies

 8  and procedures.

 9          So that is the, I guess I believe the

10  qualification the United States believes was in the Court's

11  order about discovery into past actions.

12          THE COURT:  It seems to me that obviously, I mean

13  there's a process in place that the IRS uses in assessing

14  whether any entity is entitled to tax-exempt status.  And

15  obviously if what was being done was within the confines of

16  what regularly is done regarding any entity that seeks

17  tax-exempt status it seems to me that's not conduct that

18  could be alleged to be discriminatory.

19          That what would be discriminatory would be conduct

20  beyond what normally is done that was impeding the ability

21  of the plaintiffs to receive expeditiously tax-exempt

22  status.  So that was the conduct I was talking about,

23  aberrant behavior beyond what normally is done that was

24  applied to these plaintiffs because of them being

25  conservative entities that was delaying their ability to

1    acquire tax-exempt status.

2            MS. CONNER:  And to that point I think it's

3    important to clarify that the United States believed that

4    the plaintiffs' complaint provides the allegations of what

5    happened to them in the past.  And for purposes of the

6    summary judgment motion --

7            THE COURT:  Doesn't it also allege that there was

8    activity or conduct taking place after tax-exempt status

9    that was accorded that was beyond what normally is done to

10   conduct monitoring after tax-exempt status is accorded that

11   they claim was discriminatory?

12           MS. CONNER:  Your Honor, our reading of the

13   complaint discloses no such allegation as to future actions

14   or to any actions anywhere outside the application process.

15   I know one of the --

16           THE COURT:  There's some language that my clerk

17   pointed out to me that conceivably is somewhat vague and

18   conceivably could be construed to have been requesting

19   information about conceivably other conservative entities

20   that are not plaintiffs in this case.  But I think confining

21   it because the word these is used to the plaintiffs who are

22   in this case, they do allege that purportedly there was some

23   type of inappropriate monitoring that was taking place after

24   tax-exempt status that was accorded.

25           MS. CONNER:  I believe that comes from paragraph

```
 1    four of the amended complaint.  It's in Document 51.  That

 2    paragraph does allege in general terms that the plaintiffs

 3    believe that unlawful targeting was ongoing, but the

 4    allegation is limited to multiple conservative groups.  And

 5    the plaintiffs never said that they believed that they were

 6    among them.

 7              So just from an initial pleading problem we feel

 8    that --

 9              THE COURT:  I would agree that it's vague and

10    overly broad because it would conceivably encompass entities

11    that are not plaintiffs in this case.  I would agree with

12    that.  But to the extent that it's confined to the

13    plaintiffs in this case then I think it has been pled.

14              MS. CONNER:  So again to that -- I guess by way of

15    clarification of the United States general objections to the

16    very broad discovery that the plaintiffs have proposed, in

17    response to your Honor's suggestions for the particular

18    interrogatories and the particular document requests that

19    the Court believes are pertinent, just to preserve the issue

20    to the extent that the Court's proposed interrogatories

21    cover past delay it seems now that the plaintiffs'

22    applications have been acted on and they are no longer

23    subject to the claim of delay.

24              It's difficult to see how that would relate to any

25    need for an ongoing need for the plaintiffs to know about
```

1    even if it were happening delay now because the delay that

2    they have complained of is no longer impacting them.  But

3    that, that said the United States does agree that the

4    interrogatories and the request for production that your

5    Honor has specified those are topics that we can produce

6    information on.

7              With the clarification for the document requests

8    that our production still require a review for any potential

9    privileges and also for information that might be protected

10   from disclosure under 6103 of the Internal Revenue code.

11             THE COURT:  Obviously that's understandable.

12             MS. CONNER:  Sure, but just to clarify.  The

13   plaintiffs do -- the plaintiffs are at somewhat of a

14   disadvantage because they haven't seen our interrogatory

15   responses yet.  But in response to one of --

16             THE COURT:  I think that's probably a reason that

17   we're going to have to come back once that's been produced.

18   Because then they will know exactly what they have and what

19   additional information they believe they are entitled to

20   consistent with my order.

21             MS. CONNER:  Yes.  We actually are producing some

22   information regarding the, an inquiry about alleged

23   monitoring with that.  But it's really just -- still we do

24   want to be mindful of the general objection about just

25   general inquiries into past activities.  And we feel that

1    they should be targeted to finding information that really

2    helps inform the ultimates question on summary judgment

3    which is what is the process now and how has it been

4    corrected, which really is the focus of the issues.

5            THE COURT:  Except as I said to plaintiff's

6    counsel I don't know how they are able to assess whether the

7    subsequent action taken by the IRS does in fact redress what

8    they claim were discriminatory acts against them without

9    knowing what those discriminatory acts were.

10           MS. CONNER:  I suppose the issue that we have with

11   that is it seems like their own complaint should define the

12   limits of what they are complaining about and that allowing

13   the plaintiffs to engage in wide range discovery.  In

14   essence it almost sounds like plaintiffs are trying to say

15   we filed a complaint.  Here's what we're complaining about

16   but we want broader discovery to see if that's it.  And that

17   seems to be contrary to the rules of pleadings, the general

18   rules of pleading.

19           And certainly the DC Circuit's opinion in dealing

20   with the prior dismissal of this action certainly didn't say

21   anything or certainly didn't condone the idea that the

22   plaintiff should be allowed to expand their complaint beyond

23   what they've already pled.  So I feel that shouldn't be a

24   constraint or a consideration in deciding what discovery is

25   appropriate now.

1            THE COURT:  Except when you're talking about a

2    large bureaucracy like the IRS obviously there may be things

3    that a party may know about what internally was taking place

4    in reference to their application, but not being a part of

5    that entity and therefore having intimate knowledge of what

6    took place in the bureaucracy, it seems to me the fact that

7    they are not able to plead things that conceivably were

8    employed that constituted discriminated doesn't mean they're

9    not entitled to it.

10           MS. CONNER:  To that point, your Honor, the United

11   States has already produced the application files for each

12   of the plaintiffs which amounted to more than 29,000 pages

13   of material.

14           THE COURT:  And if there's nothing else, there's

15   nothing else.  I mean if there is something there that

16   indicates inappropriate you know targeting then it seems to

17   me lay it on the line, put it out there.  If it's not then

18   just you know let them know it doesn't exist.  You've got

19   everything that was done in your case that you know

20   conceivably was inappropriate.  Why hide the ball?  I'm not

21   saying you are hiding the ball, but if there's nothing

22   there, it's nothing there.  If there is I think it should be

23   produced.

24           MS. CONNER:  And that certainly is not the case

25   that the United States, the United States certainly is not

1    trying to and does not want to hide the ball.  It's just we

2    felt the need to protect ourselves in the face of very broad

3    discovery requests.  But we do feel that the discovery

4    requests that your Honor has outlined will both protect the

5    United States but enable us to reasonably give information

6    that the plaintiffs are seeking.

7             THE COURT:  I'll hear from plaintiff's counsel,

8    but my inclination would be to issue an order setting forth

9    what I've indicated in the email with the additional

10   question authorized interrogatory.  And let's see what

11   happens regarding what you produce.  And once that's

12   produced then the plaintiff's counsel can make an assessment

13   as to whether what's been produced is consistent with what

14   you're obligated to produce.  And if not, I think that would

15   narrow the scope of what this hearing entails and

16   conceivably alleviate any disputes but it seems to me I'm

17   shooting in the dark not knowing what you decided to produce

18   to them.

19            But I'll hear from plaintiff's counsel as to if

20   there's anything else to do today other than to issue this

21   order, and obviously consistent with what I've said today

22   that you know in some way does not adequately provide the

23   plaintiffs with what is needed to respond to the summary

24   judgment motion.

25            MS. GAMMIL:  Your Honor, I guess just real

 1    quickly, I would ask that since we are so far down the road

 2    and responses to the interrogatories that we crafted are due

 3    tomorrow they would still be required to produce those.  And

 4    to the extent there's additional information that is

 5    responsive to your interrogatories --

 6                THE COURT:  You want the period of the discovery

 7    extended by some period?

 8                MS. GAMMIL:  Well, we certainly think that that is

 9    in order given --

10                THE COURT:  How long do you think that's --

11                MS. GAMMIL:  What we've asked for is 60 days from

12    the date of your order.

13                THE COURT:  Any objection?

14                MS. CONNER:  We have no objection, your Honor.

15                THE COURT:  Very well.  That will be granted.

16                MS. GAMMIL:  But again including within that that

17    the responses that they've already prepared to our

18    interrogatories would be produced.  I do think that the

19    responses to those interrogatories coupled with what your

20    Honor has laid out is going to get us most if not all of the

21    information that we would need.

22                THE COURT:  To the extent it doesn't I would

23    assume that it significantly limits the scope of what we

24    need to further address.

25                MS. GAMMIL:  I think that's probably the case.

1              One issue that I do think has to be dealt with

2      though is just the scope of where they are required to

3      search.  We've talked about the custodian database and the

4      fact that that obviously contains relevant information from

5      2009 to 2013, but there is then also the fact of additional

6      information.  There are other people who were continuing to

7      work on some of the plaintiff's applications post-May 2013.

8      As of right now we've not gotten their agreement to search

9      any of those custodians.  And it sounds like an order from

10     this Court is the only thing that's going to get that done.

11             THE COURT:  Is that the government's position that

12     beyond 2013, that there's no obligation to produce

13     information in reference to that?  I assume you're talking

14     about the monitoring?  Or are you talking about --

15             MS. GAMMIL:  I'm talking about we still have

16     plaintiffs in the application process, so between 2013 and

17     at least July of 2015, when the subsequent TIGTA report came

18     out our allegations are that some of these plaintiffs were

19     still being subjected to the discriminatory process.  Just

20     because TIGTA came out in 2013 and said hey, this is what's

21     been going on doesn't mean that the conduct immediately

22     stopped.

23             THE COURT:  I think I would agree with that.  Does

24     the government take exception with that?

25             MS. CONNER:  Your Honor, we do because of -- we

1   need to clarify first of all that that is not the current

2   request.  The request of -- there's no current request from

3   plaintiffs specifically geared toward that additional time

4   period.  Instead the United States has offered as an

5   accommodation to search its custodian database that was

6   initially assembled to enable the IRS to respond to

7   congressional inquiries.

8          THE COURT:  Would that encompass individuals who

9   had something to do with these applications or these

10  plaintiffs subsequent to the first TIGTA report?

11         MS. CONNER:  The custodian database -- the time

12  period ends as of the day before the first, the day before

13  the first TIGTA report.  And again as to inquiries about

14  changes in conduct the United States has already, has, does

15  not take the position it is confined to that custodian

16  database.  Because in fact the custodian database would not

17  answer those questions because we're talking about

18  subsequent measures that the IRS took to remedy the

19  complaint of conduct.  And those documents we have produced.

20         But as an accommodation the United States, and

21  despite its objection about plaintiff's broad request into

22  past actions without tieing it to their need to ascertain

23  the effectiveness of changes in the IRS's policies and

24  procedures to search the database that we have.

25         The plaintiffs have identified several individuals

1    who are named in plaintiff's files.  There were seven who

2    were not custodians that went into the making of the

3    custodian database.  But when we went back and looked to see

4    the extent of those individuals' involvement with the files

5    we saw things like, you know, reviewing an email or sending

6    an email or sending a request for more information,

7    activities that would have been included within the

8    plaintiff's files.

9          So to the extent -- the plaintiff's files do not

10   end.  If the plaintiff's application was still pending as of

11   the middle of May 2013, which is the end of the time period

12   for the custodian database, the plaintiff's file doesn't

13   just end at that date.  It continues to have information

14   relevant to the IRS's treatment and action on that

15   application until --

16         THE COURT:  So if that information is already

17   included in their files then what are we debating?

18         MS. CONNER:  The plaintiffs are asking the IRS to

19   go back and essentially create an additional database so

20   that we can search emails other, of the computer systems of

21   the IRS employees to see if they have any emails or any

22   communications that aren't included in the plaintiff's files

23   which is speculative.  And also would require an enormous

24   commitment of time and resources for the IRS with very

25   little promise of yielding information that is useful to,

1    actually useful to plaintiffs in responding to the summary

2    judgment motion as detailed in the declaration that the

3    United States submitted in support of its response to the

4    plaintiff's motion to compel.

5             So this would be a step at a high cost both in

6    terms of the tremendous commitment of public resources when

7    it is likely to yield little information that is truly

8    useful to plaintiffs.  And so it is that proportionality

9    that --

10             THE COURT:  I'm not unsympathetic to that.  I mean

11    we have a lot of significant needs that, especially poor

12    people in this country need that aren't getting because of

13    so much waste.  And obviously, I don't want to see waste

14    take place providing information that does not need to be

15    provided considering the significant need that we have for

16    people who go to bed hungry sometimes every night.  So I'm

17    not unsympathetic to not forcing the government to have to

18    expend a lot of money to do things that aren't necessary to

19    address issues that the Court has to address.

20             But I do think that as I said while it may have

21    not been specific enough to indicate that they were making

22    allegations about what took place after 2013 regarding

23    monitoring or in reference to the review process of

24    applications it does seem to me as I say that restricting it

25    to the 38 plaintiffs in this case which obviously it has to

1    be so restricted.  It does seem to me the information

2    related to what took place after the first TIGTA report up

3    until I think it's July of 2015, that if there's information

4    related to inappropriate monitoring or inappropriate

5    targeting as it relates to applications that they are

6    entitled to that information.

7            MS. CONNER:  And your Honor with the search for

8    information limited as you just described it to information

9    about whether there was continued monitoring of the

10   plaintiffs after their applications were granted, that is

11   something we can answer without the need of creating this

12   very expensive and time-consuming additional database.  It's

13   just the plaintiff's broad requests that they want

14   information or want to you know to look for these individual

15   employees just for broad searches to see if on the off

16   chance something is mentioned about one of the plaintiffs

17   that's a problem.

18           We can answer the --

19           THE COURT:  Did they say there are seven employees

20   we're talking about that had some dealings with these

21   applications after the first TIGTA report?  Or are there

22   more?

23           MS. CONNER:  There are -- and actually the

24   seven -- actually I would have to check to see if all of

25   them had involvement with the plaintiffs after the TIGTA

1   report.  The point still remains that for any of them that

2   did their activity -- I mean the fact that the plaintiff was

3   able to spot them from their client's application files I

4   mean shows that information, that the relevant information

5   is there and that they have it, and that there is no need to

6   engage --

7           THE COURT:  But you seem to be saying you don't

8   know however even though they have some information.  And

9   maybe that's all, but you don't know whether there's also

10  additional information.

11          MS. CONNER:  True.  But again, just given the

12  small chance that there would be additional information or

13  that it would be relevant to the issues on summary judgment,

14  because again, these are people that the plaintiffs have

15  drawn their names from the application files.  And the IRS's

16  policy is for activity that is relevant to what the IRS is

17  considering in issuing its determination on an application

18  that that information goes in the individual case file.

19          And we're just, given that policy and practice it

20  seems unreasonable to ask the IRS to create an additional

21  database to try to see if there are any other documents or

22  any other emails that would exist outside of those files.

23          THE COURT:  I assume that what you're saying is

24  true.  My experience most government workers regardless of

25  what people think are hardworking people who put in their

1   day's work just like anybody in any industry.  And that

2   they're honest people and whatever relates to this case, or

3   these cases conceivably was put in the file, but that

4   doesn't mean that everybody is scrupulous in that manner.

5          That doesn't mean that it's not you know

6   inconceivable that conceivably there might be information

7   out there that relates to these plaintiffs that is not in

8   the file.  You're in control of it.  And they're never in a

9   position if it's not produced to know whether it does exist.

10         So I don't know how onerous that search would be.

11  I would assume, and I'm not a computer geek, but I would

12  assume there's some way that there could be a limitation on

13  what you're looking for that relates to the 38 plaintiffs in

14  this case, and that it seems to me is something that's

15  doable.  Maybe not, I don't know.

16         MS. CONNER:  And we believe that the declaration

17  that the United States submitted with its response to the

18  motion to compel addresses that.

19         THE COURT:  Will encompass that?  Very well, then

20  I think the appropriate thing is to wait and see.  They've

21  asked for some clarification of what's in that declaration

22  to wait to see what you provide in that regard, and also see

23  what your additional responses are to the interrogatories

24  that have been produced.  And then once that's done then I

25  can hear from the plaintiffs again if they feel that they

1    haven't received what they need to adequately respond to the

2    motion for summary judgment.

3              MS. CONNER:  Your Honor, if I may clarify just one

4    additional point.  In terms of the interrogatory responses

5    that are due tomorrow many of the interrogatories that the

6    plaintiffs have propounded do fall within the

7    interrogatories that your Honor has suggested, but there are

8    some that fall outside of those categories.

9              May we raise that -- I guess we'd like to clarity

10   that we may raise that as an objection since the Court has

11   clarified the particular topics that it believes are

12   relevant to our inquiry here that, for the interrogatories

13   that fall outside of that area that the United States should

14   not be required to respond.  Or that we object and then if

15   the plaintiffs disagree with us then we can take that up the

16   next time that we meet.

17             THE COURT:  That's fine.  I didn't obviously I put

18   this together, I've been up since four o'clock this morning

19   working on this case and another case, so I try to make an

20   assessment of what I thought would be adequate.  And to the

21   extent that this is not and they think what you've produced

22   does not provide them with what they need obviously I'll

23   entertain that.

24             MS. CONNER:  Thank you, your Honor.

25             THE COURT:  Anything else?  So 60 days would

1   actually be on a Sunday, so I'll require, I'll extend

2   discovery until October 16th.

3          MS. GAMMIL:  I really just want to conclude with

4   making it clear that all the plaintiffs are after here is

5   the knowledge that is within the possession of the IRS about

6   what was done to them during the relevant time period, and

7   what has happened to sufficiently change things.

8          We still do not have that information.  We are

9   four years in to this litigation.  I think we're all ready

10   for the government to just produce the information.  I feel

11   like sitting here today the ball is continually being moved

12   and hidden as your Honor said.  I know they say that's not

13   their intention, but just standing here now they're saying

14   that there's information that they were going to produce to

15   us tomorrow but now based on this can we just not give them

16   that information.  It doesn't make sense to me.

17          THE COURT:  I didn't mean to in some way alter the

18   scope of discovery by what I've indicated.

19          MS. GAMMIL:  It sounds to me like they're going to

20   go back now and they're going to look at the interrogatories

21   that we propounded and they're going to determine which ones

22   they think fit within the five that you've suggested.  And

23   if they don't think they fit within that then now they don't

24   have to respond to them.  Again, that's just hiding the

25   ball.  It doesn't make sense.  Four years into this.  It is

1    time for the IRS to produce all of the information necessary

2    to demonstrate that this targeting is over and will not

3    happen again.

4              And the ball is continually moving and being

5    hidden.  Frankly, it's frustrating to be on this side of

6    things and to not be able to just get some straight answers.

7    We had agreements with them that now it sounds like they're

8    reneging on.  And so I don't really know what to do with

9    that information.

10             THE COURT:  Is that what you were doing?  The fact

11   that you had intended to produce certain information, but

12   now you think you don't have to in light of what I proposed?

13             MS. CONNER:  Your Honor, the United States was

14   going to respond to some interrogatories over our own

15   objections, but I suppose we're just trying to clarify.  The

16   Court's prior order --

17             THE COURT:  So you're saying that your

18   reassessment would result in certain responses that you were

19   objecting to not being provided because you think it's

20   beyond what I think is appropriate?

21             MS. CONNER:  Yes, your Honor.  And if that's the

22   appropriate scope of discovery the United States should not

23   be held to respond to far ranging inquiries that are beyond

24   what the Court believes are appropriate.

25             THE COURT:  As I indicated I think I'm shooting in

1   the dark not knowing what you're going to produce.  It's my

2   assessment.  I could be incorrect that the scope of what

3   I've indicated in the email in addition to the other

4   question assuming that information is provided I would think

5   that would be adequate to put the plaintiffs in a position

6   to respond intelligently to the motion for summary judgment.

7          To the extent that what you produce does not then

8   I guess I can hear again from the plaintiffs as to why they

9   need that additional information in order to appropriately

10  respond to the motion.  But I think again until I know and

11  they know what you've produced I think it's hard for me to

12  speculate as to what other information they need in order to

13  appropriately respond.

14         MS. CONNER:  I suppose that's all that we're

15  saying, just the United States agrees with the Court that

16  the topics outlined in the email today should allow the

17  plaintiffs to respond adequately to the motion for summary

18  judgment.  That's all, just that we agree with the Court as

19  to that point.

20         THE COURT:  So what I'll do is I'll require that

21  the parties assuming there are no further discovery problems

22  if there are still discovery issues just let me know.  If

23  you all can't resolve your dispute.  We'll set up another

24  hearing to make the rulings.  Hopefully that will resolve

25  the discovery issue.  Assuming there is no issue of that

1    nature then how much time -- I assume once the discovery is

2    provided as of the 16th of October, I don't how much time

3    the plaintiff would need to respond to the summary judgment

4    motion after that.

5          MS. GAMMIL:  Your Honor, based on the changes now

6    I'm not sure that two months is going to get us there.

7    Because frankly I absolutely conceive of us being right back

8    here talking about the ways in which the information

9    responsive to these five interrogatories does not fully

10   address the information in their summary judgment filings.

11   The information that we've learned from the case files.

12         So I can tell you right now I can go through our

13   interrogatories and tell you each one of them whether it's

14   based on information that we've already obtained in a case

15   file, whether it's based on Ripperda declaration supporting

16   their summary judgment, but it's all based on the

17   information that the government has said this demonstrates

18   mootness.  And we're asking for the information that would

19   allow us to know whether that's all accurate or not, whether

20   the changes have been made.  What did you do to --

21         We're going to be right back here having the same

22   discussions that are in the filings that we've had.

23         THE COURT:  I hope that's not the case.  And if

24   once you get what is given to you next week or subsequent

25   thereto is not adequate then we'll have to come and deal

1  with it.  I hope that's not the case because every case I

2  had to deal with discovery matters I mean is an obligation

3  of discovery is with lawyers.  And it's their obligation to

4  do work together as members of the Bar and members of the

5  Court to cooperate with each other to provide what's

6  appropriately needed.  Otherwise, we're clogged with cases

7  already, the system breaks down if the lawyers don't work

8  together to provide what is needed for the other side in

9  order to appropriately respond.

10        I would hope that that happens.  If it doesn't

11  we'll have to come back and deal with it.  But I think again

12  I'm shooting in the dark and you are too until you know

13  exactly what they're going to produced.

14        MS. GAMMIL:  Just to be clear that's the reason

15  your Honor, that I asked that rather than go back and call

16  what they were going to respond with our request is that

17  they respond to the interrogatories as they planned to.  And

18  to the extent --

19        THE COURT:  I would encourage that.  It seems to

20  me if they felt even though they had objections that they

21  were nonetheless going to produce it then I would think it

22  would be -- I can't, obviously if they think they have a

23  valid objection I can't say they have to produce it.  But to

24  the extent they were prepared to do produce it even though

25  they conceivably thought they had an objection, I would

 1  agree why not produce it.

 2          MS. GAMMIL:  I would agree.  And just so you know,

 3  they have identified for us the ones that they intend to.

 4  And what they previously told us was that they intended to

 5  respond as thoroughly as they could to all others.  So at

 6  the very least I know which ones you know, what the change

 7  will be in terms of which ones they've now decided to

 8  withhold.

 9          THE COURT:  Again, I would encourage them to

10  rethink that and to provide the information.  If they were

11  of the view prior to today's hearing, and the email I issued

12  that they nonetheless were going to provide it even though

13  they thought conceivably had an objection, it seems to me

14  that shouldn't backtrack on that.  But I can't obviously

15  require they produce something they feel they don't have an

16  obligation to produce.

17          MS. GAMMIL:  That's understanding.  Just very

18  quickly, your Honor, I do want to address one point.  There

19  was a lot of discussion about the cost benefit, burden in

20  terms of searching outside the custodian database.  I think

21  we've discussed it mostly sufficiently, but there was

22  discussion to the extent that it would be speculative.  I

23  just want to make it very clear and it's also in our

24  filings.  It is not speculative at this point because there

25  has now been evidence produced that unequivocally

1   demonstrates there are emails about treatment of plaintiffs

2   that are not included in their case files or any other

3   production to date.  That's not speculative.

4           THE COURT:  And if there is clear proof that there

5   are other emails that relate to the plaintiffs and that's

6   not produced then I probably would be inclined to order it

7   be produced.

8           MS. GAMMIL:  Right.  At this point, like I said

9   the problem is absent an order telling the government that

10  they have to search the relevant sources of information.

11  You don't have to define what those are.  But we now know

12  there are relevant sources of information outside the

13  custodian database.  Yes, that needs to be searched based on

14  our prior agreement using search terms, but there are also

15  --

16          THE COURT:  I think I need to add to the order I'm

17  going to issue that if there is in the information that

18  you've already received an indication that individuals at

19  the IRS did in fact produce other emails or other documents

20  that are not included in what you've been provided, and they

21  relate to your client then I think those have to be

22  produced?

23          MS. GAMMIL:  Thank you, your Honor.  Again, all I

24  would say is I think though based on the fact that we may

25  very well be back here I don't know whether 60 days -- let

 1   me add this too.  There are two depositions to be taken.

 2              THE COURT:  If it's not I obviously can extend it.

 3   I would set 60 days for now.  And once we approach that

 4   period if discovery has not been completed then I would

 5   entertain a request to extend it.

 6              MS. GAMMIL:  Just to be very clear there are still

 7   two depositions, so we're talking about 60 days for them to

 8   finish producing any documents and information, us to review

 9   all of it and conduct the two depositions.

10              THE COURT:  If it's not enough time just let me

11   know.

12              MS. GAMMIL:  Thank you, your Honor.

13              THE COURT:  Thank you.  I'll issue an order

14   consistent with what I've indicated.  As I said there were

15   things that the government intended to produce and somehow

16   reevaluate that based upon what I've indicated, I would

17   discourage that because it seems to me that's only going to

18   impede the ability of us to bring this case to resolution.

19              Thank you.

20              [Thereupon, the proceedings adjourned at 4:00

21              p.m.]

22

23

24

25

1                          CERTIFICATE

2           I, Cathryn J. Jones, an Official Court Reporter

3    for the United States District Court of the District of

4    Columbia, do hereby certify that I reported, by machine

5    shorthand, the proceedings had and testimony adduced in the

6    above case.

7           I further certify that the foregoing 38 pages

8    constitute the official transcript of said proceedings as

9    transcribed from my machine shorthand notes.

10          In witness whereof, I have hereto subscribed my

11   name, this the 21st day of August, 2017.

12

13
                              /s/_Cathryn J. Jones
14                            Cathryn J. Jones, RPR
                              Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25

MS. CONNER: [26]  2/10 12/15 14/4
14/12 16/1 16/11 16/24 17/13 18/11
18/20 19/9 20/9 20/23 22/13 23/24
24/10 25/17 27/6 27/22 28/10 29/15
30/2 30/23 32/12 32/20 33/13
MS. GAMMIL: [30]  2/6 3/6 3/20 4/14
4/17 5/13 6/4 6/8 7/15 8/20 10/4 10/18
11/1 12/12 21/24 22/7 22/10 22/15
22/24 23/14 31/18 34/4 35/13
36/1 36/16 37/7 37/22 38/5 38/11
THE COURT: [56]
THE DEPUTY CLERK: [1]  2/1

.

.x [1]  1/6

/

/s [1]  39/13

1

13-777 [2]  1/4 2/4
15 [1]  1/5
16th [3]  5/16 31/2 34/2

2

20001 [1]  1/22
20002 [1]  1/14
20044 [1]  1/18
2009 [1]  23/5
201 [1]  1/14
2013 [11]  10/5 10/5 10/9 10/17 23/5
23/7 23/12 23/16 23/20 25/11 26/22
2015 [5]  10/4 10/21 10/22 23/17 27/3
2017 [2]  1/5 39/11
21st [1]  39/11
24 [1]  4/24
25 [1]  4/25
29,000 [1]  20/12

3

30 [3]  4/4 4/11 4/20
333 [1]  1/21
38 [3]  26/25 29/13 39/7
3:05 [1]  1/6

4

4:00 [1]  38/20

5

51 [1]  17/1
555 [1]  1/18

6

60 [5]  22/11 30/25 37/25 38/3 38/7
6103 [1]  18/10
6521 [1]  1/21

7

777 [2]  1/4 2/4

A

aberrant [1]  15/23
Abigail [2]  1/12 2/8
ability [3]  15/20 15/25 38/18
able [7]  8/19 13/13 15/6 19/6 20/7 28/3
32/6

about [43]
above [1]  39/6
absent [1]  37/9
absolutely [1]  34/7
accommodation [3]  12/21 24/5 24/20
accorded [3]  16/9 16/10 16/24
accurate [1]  34/19
acquire [1]  16/1
acted [1]  17/22
action [2]  2/4 19/7 19/20 25/14
actions [17]  2/22 5/24 6/1 6/3 6/7 6/8
6/22 7/2 8/23 9/6 13/6 13/15 15/5
15/11 16/13 16/14 24/22
activities [3]  13/10 18/25 25/7
activity [7]  10/13 10/24 13/18 14/7
16/8 28/2 28/16
acts [3]  14/20 19/8 19/9
actually [8]  4/19 5/22 9/3 18/21 26/1
27/23 27/24 31/1
add [3]  2/19 37/16 38/1
added [2]  3/2 7/6
addition [1]  33/3
additional [15]  2/21 5/12 18/19 21/9
22/4 23/5 24/3 25/19 27/12 28/10
28/12 28/20 29/23 30/4 33/9
address [9]  3/5 6/8 8/17 8/19 22/24
26/19 26/19 34/10 36/18
addresses [1]  29/18
adduced [1]  39/5
adequate [5]  3/4 13/14 30/20 33/5
34/25
adequately [3]  21/22 30/1 33/17
adjourned [1]  38/20
after [16]  2/19 2/23 5/9 6/10 10/8
10/13 16/8 16/10 16/23 26/22 27/2
27/10 27/21 27/25 31/4 34/4
afternoon [5]  2/2 2/7 2/10 2/11 2/14
again [23]  3/11 5/3 6/21 7/3 7/18 8/10
9/2 11/5 11/14 11/25 17/14 22/16
24/13 28/11 28/14 29/25 31/24 32/3
33/8 33/10 35/11 36/9 37/23
against [1]  19/8
agree [10]  6/9 9/17 13/12 17/9 17/11
18/3 23/23 33/18 36/1 36/2
agreed [2]  9/21 10/1
agreement [3]  4/19 23/8 37/14
agreements [2]  7/21 32/7
agrees [1]  33/15
ahead [1]  7/24
aided [1]  1/24
al [1]  1/5
all [22]  4/7 8/9 9/14 11/2 11/14 11/15
12/10 22/20 24/1 27/24 28/9 31/4 31/9
32/1 33/14 33/18 33/23 34/16 34/19
36/5 37/23 38/9
allegation [1]  16/13 17/4
allegations [4]  15/1 16/4 23/18 26/22
allege [3]  16/7 16/22 17/2
alleged [3]  14/20 15/18 18/22
allegedly [1]  13/25
alleviate [1]  21/16
allow [3]  13/17 33/16 34/19
allowed [3]  8/25 14/18 19/22
allowing [2]  14/19 19/12
allows [1]  3/11
almost [1]  19/14
along [2]  2/8 2/12

already [13]  5/18 9/21 10/16 11/24
15/6 19/25 20/1 22/17 24/14 25/16
34/14 35/7 37/18
also [12]  6/19 9/16 10/17 14/14 16/7
18/9 23/5 25/23 28/9 29/22 36/23
37/14
alter [1]  31/17
although [2]  2/18 8/14
always [1]  3/14
amended [1]  17/1
AMERICA [2]  1/5 2/4
AMERICAN [1]  1/13
amiss [1]  13/23
among [1]  17/6
amounted [2]  6/3 20/12
another [3]  11/12 30/19 33/23
answer [3]  24/17 27/11 27/18
answering [1]  13/3
answers [1]  32/6
any [22]  2/22 9/18 10/15 11/11 13/18
14/7 15/14 15/16 16/14 17/24 18/8
21/16 22/13 23/9 25/21 25/21 28/1
28/21 28/22 29/1 37/2 38/8
anybody [1]  29/1
anymore [1]  7/11
anything [8]  5/24 6/1 6/22 6/22 8/6
19/21 21/20 30/25
anywhere [1]  16/14
APPEARANCES [1]  1/11
applicants [1]  10/7
application [13]  6/23 7/2 7/9 14/16
16/14 20/4 20/11 23/16 25/10 25/15
28/3 28/15 28/17
applications [12]  7/24 14/1 14/10
14/12 14/14 17/22 23/7 24/9 26/24
27/5 27/10 27/21
applied [1]  15/24
appreciate [1]  8/16
approach [1]  38/3
appropriate [7]  2/16 3/6 19/25 29/20
32/20 32/22 32/24
appropriately [6]  6/8 8/17 33/9 33/13
35/6 35/9
arbiter [1]  3/12
are [72]
area [1]  30/13
areas [1]  2/16
aren't [3]  25/22 26/12 26/18
as [52]
ascertain [2]  14/23 24/22
ask [4]  2/4 13/18 22/1 28/20
asked [6]  4/8 4/9 14/6 22/11 29/21
35/15
asking [2]  25/18 34/18
asks [1]  8/23
assembled [1]  24/6
assertions [2]  4/5 4/10
assess [3]  6/7 8/19 19/6
assessing [1]  15/13
assessment [3]  21/12 30/20 33/2
assessments [1]  3/18
assume [7]  10/11 22/23 23/13 28/23
29/11 29/12 34/1
assuming [4]  3/2 33/4 33/21 33/25
audits [1]  7/5
August [3]  1/5 5/16 39/11
authorized [1]  21/10

**A**

Avenue [2]  1/14 1/21
aware [1]  5/7

**B**

back [9]  18/17 25/3 25/19 31/20 34/7
34/21 35/11 35/15 37/25
backtrack [1]  36/14
ball [6]  20/20 20/21 21/1 31/11 31/25
32/4
Bar [1]  35/4
based [10]  6/21 10/22 31/15 34/5
34/14 34/15 34/16 37/13 37/24 38/16
basic [1]  11/19
basically [1]  11/23
basis [1]  12/1
be [74]
because [30]  4/1 5/8 5/10 5/20 8/1 8/4
8/6 9/1 10/21 11/6 11/18 12/8 15/3
15/24 16/21 17/10 18/1 18/14 18/18
23/20 23/25 24/16 24/17 26/12 28/14
32/19 34/7 35/1 36/24 38/17
bed [1]  26/16
been [26]  5/16 6/8 6/17 6/24 6/25 8/1
8/17 8/19 9/16 11/4 13/14 16/18 17/13
17/22 18/17 19/3 21/13 23/21 25/7
26/21 29/24 30/18 34/20 36/25 37/20
38/4
before [5]  1/9 3/10 14/11 24/12 24/12
beginning [1]  9/16
behalf [2]  2/8 2/12
behavior [1]  15/23
being [10]  4/6 7/13 15/15 15/24 20/4
23/19 31/11 32/4 32/19 34/7
believe [8]  3/24 5/14 12/17 15/9 16/25
17/3 18/19 29/16
believed [2]  16/3 17/5
believes [4]  15/10 17/19 30/11 32/24
benefit [1]  36/19
best [2]  3/22 9/17
better [1]  6/12
between [2]  10/23 23/16
beyond [11]  2/24 5/12 10/15 14/3
15/20 15/23 16/9 19/22 23/12 32/20
32/23
bit [2]  11/18 12/8
body [1]  8/22
both [4]  2/15 5/20 21/4 26/5
breaks [1]  35/7
bring [1]  38/18
broad [9]  5/25 5/25 14/7 17/10 17/16
21/2 24/21 27/13 27/15
broader [4]  3/25 9/19 13/18 19/16
burden [1]  36/19
bureaucracy [2]  20/2 20/6

**C**

CA [1]  1/4
call [1]  35/15
called [1]  9/24
came [3]  10/6 23/17 23/20
can [17]  7/7 8/7 9/2 9/12 12/2 18/5
21/12 25/20 27/11 27/18 29/25 30/15
31/15 33/8 34/12 34/12 34/14
can't [4]  33/23 35/22 35/23 36/14
Carly [2]  1/12 2/7
case [28]  3/14 8/7 11/10 11/13 11/24

14/2 14/11 16/20 16/22 17/11 17/13
20/19 20/24 22/23 26/25 28/18 29/2
29/14 30/19 30/19 34/11 34/14 34/23
35/1 35/1 37/2 38/18 39/6
cases [2]  29/3 35/6
categories [3]  3/25 3/25 30/8
Cathryn [4]  1/20 39/2 39/13 39/14
CENTER [1]  1/13
certain [3]  4/8 32/11 32/18
certainly [6]  19/19 19/20 19/21 20/24
20/25 22/8
CERTIFICATE [1]  39/1
certify [2]  39/4 39/7
chance [2]  27/16 28/12
change [4]  9/3 15/7 31/7 36/6
changed [1]  9/12
changes [6]  6/25 14/23 24/14 24/23
34/5 34/20
check [1]  27/24
chooses [1]  3/12
Circuit's [2]  11/1 19/19
civil [3]  1/17 2/4 3/15
claim [3]  16/11 17/23 19/8
clarification [3]  17/15 18/7 29/21
clarified [1]  30/11
clarify [5]  16/3 18/12 24/1 30/3 32/15
clarity [1]  30/9
clear [10]  6/2 6/10 8/14 9/14 12/17
31/4 35/14 36/23 37/4 38/6
clerk [2]  2/14 2/20 16/16
client [1]  37/21
client's [1]  28/3
clogged [1]  35/6
code [1]  18/10
COLUMBIA [2]  1/2 39/4
combining [1]  13/21
come [3]  18/17 34/25 35/11
comes [1]  16/25
commitment [2]  25/24 26/6
communications [1]  25/22
compel [1]  26/4 29/18
complained [4]  13/8 13/15 13/22 18/2
complaining [2]  19/12 19/15
complaint [11]  13/8 13/16 15/2 15/6
16/4 16/13 17/1 19/11 19/15 19/22
24/19
completed [1]  38/4
computer [2]  1/24 25/20 29/11
computer-aided [1]  1/24
conceivably [11]  16/17 16/18 16/19
17/10 20/7 20/20 21/16 29/3 29/6
35/25 36/13
conceive [1]  34/7
conclude [1]  31/3
condone [1]  19/21
conduct [13]  13/7 13/24 14/19 14/25
15/17 15/19 15/22 16/8 16/10 23/21
24/14 24/19 38/9
confined [1]  14/16 17/12 24/15
confines [2]  13/16 15/15
confining [1]  16/20
Congress [1]  11/24
congressional [1]  24/7
Conner [2]  1/16 2/12
conservative [3]  15/25 16/19 17/4
consideration [1]  19/24
considering [2]  26/15 28/17

consistent [7]  2/17 3/18 11/1 18/20
21/15 21/21 38/10
consolidated [1]  11/18
constitute [1]  39/8
constituted [1]  20/8
Constitution [1]  1/21
constraint [1]  19/24
construed [1]  16/18
consuming [1]  27/12
contains [1]  23/4
continually [2]  31/11 32/4
continued [1]  27/9
continues [1]  25/13
continuing [1]  23/6
contrary [1]  19/17
control [1]  29/8
cooperate [1]  35/5
correct [1]  13/7
corrected [1]  19/4
corrections [1]  13/14
cost [2]  26/5 36/19
could [6]  5/3 15/18 16/18 29/12 32/2
36/5
couldn't [1]  6/9
counsel [10]  1/12 1/13 1/16 1/16 3/3
6/12 19/6 21/7 21/12 21/19
country [1]  26/12
coupled [1]  22/19
COURT [19]  1/1 1/20 1/20 1/21 3/19
12/6 13/12 14/18 17/19 23/10 26/19
30/10 32/24 33/15 33/18 35/5 39/2
39/3 39/14
Court's [4]  14/21 15/10 17/20 32/16
cover [1]  17/21
covered [1]  12/20
crafted [1]  22/2
create [2]  25/19 28/20
creating [1]  27/11
current [6]  7/1 9/7 9/9 12/23 24/1 24/2
custodian [11]  9/24 11/16 23/3 24/5
24/11 24/15 24/16 25/3 25/12 36/20
37/13
custodians [2]  23/9 25/2

**D**

D.C [2]  1/5 1/22
dark [5]  5/12 7/20 21/17 33/1 35/12
database [16]  9/24 11/16 12/20 23/3
24/5 24/11 24/16 24/16 24/24 25/3
25/12 25/19 27/12 28/21 36/20 37/13
date [4]  4/20 22/12 25/13 37/3
day [3]  24/12 24/12 39/11
day's [1]  29/1
days [6]  4/20 22/11 30/25 37/25 38/3
38/7
DC [3]  1/14 1/18 19/19
deadline [4]  4/20 4/21 5/16 5/17
deal [3]  34/25 35/2 35/11
dealing [1]  14/15 19/19
dealings [1]  27/20
dealt [1]  23/1
debating [1]  25/17
decided [2]  21/17 36/7
deciding [1]  19/24
declaration [6]  4/4 4/9 26/2 29/16
29/21 34/15
defendant [1]  1/6 1/16 12/14

**D**

define [2]  19/11 37/11
defy [1]  13/20
delay [4]  17/21 17/23 18/1 18/1
delayed [1]  5/8
delaying [2]  13/25 15/25
demands [1]  3/20
demonstrate [1]  32/2
demonstrates [2]  34/17 37/1
DEPARTMENT [1]  1/17
depositions [3]  38/1 38/7 38/9
described [1]  27/8
despite [2]  12/21 24/21
detailed [2]  5/4 26/2
determination [1]  28/17
determine [1]  31/21
determining [2]  12/24 13/11
did [9]  2/15 6/20 8/2 8/3 8/19 27/19 28/2 34/20 37/19
didn't [8]  8/14 9/6 19/20 19/21 30/17 31/17
different [1]  7/18
difficult [2]  7/14 17/24
director [2]  7/21 7/22
disadvantage [1]  18/14
disagree [1]  30/15
disagreement [4]  5/21 5/23 6/18 8/11
discloses [1]  16/13
disclosure [1]  18/10
discourage [1]  38/17
discovery [37]  2/16 3/15 3/16 4/2 5/22 6/19 9/15 11/12 11/19 12/6 12/7 13/10 13/18 13/20 13/21 14/7 14/18 14/19 14/20 15/11 17/16 19/13 19/16 19/24 21/3 21/3 22/6 31/2 31/18 32/22 33/21 33/22 33/25 34/1 35/2 35/3 38/4
discretionary [1]  3/17
discriminated [1]  20/8
discrimination [1]  14/20
discriminatory [7]  7/12 15/18 15/19 16/11 19/8 19/9 23/19
discussed [1]  36/21
discussing [1]  12/19
discussion [2]  36/19 36/22
discussions [1]  34/22
dismissal [1]  19/20
dispute [1]  33/23
disputes [1]  21/16
DISTRICT [6]  1/1 1/2 1/10 1/21 39/3 39/3
do [30]  3/8 5/23 8/2 8/3 9/10 9/18 11/25 12/2 16/22 18/13 18/23 21/3 21/20 22/10 22/18 23/1 23/25 24/9 25/9 26/18 26/20 30/6 31/8 32/8 33/20 34/20 35/4 35/24 36/18 39/4
do to [1]  34/20
doable [1]  29/15
Docket [1]  1/4
document [5]  4/11 5/18 17/1 17/18 18/7
documentary [1]  7/19
documentation [3]  7/16 11/7 11/11
documents [12]  3/23 4/9 6/17 9/21 9/22 11/21 13/2 13/3 24/19 28/21 37/19 38/8
does [14]  17/2 18/3 19/7 21/1 21/22 22/23 24/14 26/14 26/24 27/1 29/9

30/22 33/7 34/9
doesn't [14]  9/8 17/18 12/8 16/7 20/8 20/18 22/22 23/21 25/12 29/4 29/5 31/16 31/25 35/10
doing [2]  9/23 32/10
don't [25]  3/15 4/7 6/6 8/6 11/5 11/6 11/19 11/25 14/2 14/3 19/6 26/13 28/7 28/9 29/10 29/15 31/23 31/23 32/8 32/12 34/2 35/7 36/15 37/11 37/25
done [14]  2/25 8/19 9/3 10/15 11/24 15/15 15/16 15/20 15/23 16/9 20/19 23/10 29/24 31/6
down [2]  22/1 35/7
drawn [1]  28/15
due [3]  13/4 22/2 30/5
during [2]  11/9 31/6

**E**

each [4]  9/8 20/11 34/13 35/5
easier [1]  11/18
effective [1]  15/7
effectiveness [1]  24/23
effects [1]  8/8
else [7]  7/7 8/3 8/6 20/14 20/15 21/20 20/25
email [8]  2/15 7/20 21/9 25/5 25/6 33/3 33/16 36/11
emails [7]  11/7 25/20 25/21 28/22 37/1 37/5 37/19
employed [1]  20/8
employee [1]  4/7
employees [3]  25/21 27/15 27/19
enable [2]  21/5 24/6
encompass [3]  17/10 24/8 29/19
encourage [2]  35/19 36/9
end [3]  25/10 25/11 25/13
ended [1]  6/13
ends [1]  24/12
engage [3]  13/17 19/13 28/6
engaged [2]  13/24 13/25
enormous [1]  25/23
enough [4]  8/14 12/3 26/21 38/10
entailed [1]  22/24
entails [1]  21/15
entertain [2]  30/23 38/5
entire [1]  8/22
entities [7]  2/25 6/4 10/12 10/16 15/25 16/19 17/10
entitled [9]  7/5 7/10 12/5 12/7 12/9 15/14 18/19 20/9 27/6
entity [1]  15/14 15/16 20/5
EO [1]  7/21
especially [2]  10/25 26/11
essence [1]  19/14
essentially [4]  5/4 8/11 13/18 25/19
et [1]  1/5
even [7]  13/4 14/11 18/1 28/8 35/20 35/24 36/12
ever [1]  13/19
every [2]  26/16 35/1
everybody [1]  29/4
everything [3]  3/17 9/2 20/19
evidence [3]  7/19 11/4 36/25
exactly [6]  5/9 6/16 12/17 13/21 18/18 35/13
example [1]  7/18
Except [2]  19/5 20/1

exception [1]  23/24
exempt [12]  2/24 3/1 10/13 10/16 14/1 15/14 15/17 15/21 16/1 16/8 16/10 16/24
exist [3]  20/18 28/22 29/9
existing [1]  8/20
exists [1]  11/17
expand [1]  19/22
expect [1]  7/8
expecting [1]  7/11
expeditiously [1]  15/21
expend [1]  26/18
expensive [1]  27/12
experience [1]  28/24
explanations [4]  4/8 4/14 4/17
extend [3]  31/1 38/2 38/5
extended [3]  4/20 5/16 22/7
extent [12]  14/22 17/12 17/20 22/4 22/22 25/4 25/9 30/21 33/7 35/18 35/24 36/22

**F**

face [1]  21/2
fact [10]  5/15 19/7 20/6 23/4 23/5 24/16 28/2 32/10 37/19 37/24
factual [1]  4/5
fairly [1]  10/20
fall [5]  3/24 5/5 30/6 30/8 30/13
far [2]  22/1 32/23
feel [8]  3/13 17/7 18/25 19/23 21/3 29/25 31/10 36/15
felt [2]  21/2 35/20
field [1]  5/10
figure [1]  9/9
file [6]  11/10 25/12 28/18 29/3 29/8 34/15
filed [2]  14/12 19/15
files [12]  20/11 25/1 25/4 25/8 25/9 25/17 25/22 28/3 28/15 28/22 34/11 37/2
filing [1]  6/14
filings [9]  4/3 5/14 7/4 9/24 10/22 11/22 34/10 34/22 36/24
finally [1]  10/1
finding [1]  19/1
fine [1]  30/17
finish [1]  38/8
first [13]  3/3 3/8 3/10 7/11 10/6 10/14 12/16 24/1 24/10 24/12 24/13 27/2 27/21
fit [2]  31/22 31/23
five [4]  3/9 4/25 31/22 34/9
focus [1]  19/4
forcing [1]  26/17
foregoing [1]  39/7
form [1]  11/7
former [1]  7/21
forth [2]  4/2 21/8
forthcoming [1]  9/20
forward [2]  2/5 7/1
four [4]  17/1 30/18 31/9 31/25
Fourth [1]  1/18
frankly [1]  4/6 32/5 34/7
frustrating [1]  32/5
fully [1]  34/9
further [3]  22/24 33/21 39/7
future [1]  16/13

**G**

**Gammill [2]**  1/12 2/7
**geared [1]**  24/3
**geek [1]**  29/11
**general [7]**  6/19 15/1 17/2 17/15 18/24 18/25 19/17
**generally [3]**  5/5 5/25 14/15
**get [8]**  2/20 8/6 12/10 22/20 23/10 32/6 34/6 34/24
**gets [1]**  7/7
**getting [1]**  26/12
**give [3]**  9/7 21/5 31/15
**given [5]**  12/3 22/9 28/11 28/19 34/24
**glad [1]**  11/17
**go [10]**  7/24 8/14 9/11 11/20 14/2 25/19 26/16 31/20 34/12 35/15
**goes [2]**  10/5 28/18
**going [28]**  2/20 5/1 5/11 7/1 7/23 7/24 9/9 9/20 12/23 13/5 18/17 22/20 23/10 23/21 31/14 31/19 31/20 31/21 32/14 33/1 34/6 34/21 35/13 35/16 35/21 36/12 37/17 38/17
**gone [1]**  4/4
**good [5]**  2/7 2/10 2/11 2/14 12/8
**got [2]**  8/4 20/18
**gotten [1]**  23/8
**government [9]**  1/12 10/11 23/24 26/17 28/24 31/10 34/17 37/9 38/15
**government's [2]**  9/5 23/11
**grant [1]**  7/23
**granted [3]**  2/23 22/15 27/10
**granting [1]**  14/1
**group [1]**  7/22
**groups [1]**  17/4
**guess [10]**  5/7 6/15 13/23 14/3 14/5 15/9 17/14 21/25 30/9 33/8

**H**

**had [18]**  2/14 2/17 2/20 5/16 6/4 10/7 10/16 24/9 27/20 27/25 32/7 32/11 34/22 35/2 35/20 35/25 36/13 39/5
**handful [2]**  4/23 4/24
**happen [2]**  9/2 32/3
**happened [7]**  6/25 9/2 9/11 13/13 13/19 16/5 31/7
**happening [3]**  9/13 10/24 18/1
**happens [3]**  7/17 21/11 35/10
**hard [1]**  33/11
**hardworking [1]**  28/25
**has [34]**  3/16 3/17 6/17 6/24 7/6 10/21 11/4 12/6 12/18 12/18 13/2 13/3 13/6 14/18 15/4 15/7 17/13 18/5 19/3 20/11 21/4 22/20 23/1 24/4 24/14 24/14 26/19 26/25 30/7 30/10 31/7 34/17 36/25 38/4
**hasn't [1]**  5/13
**have [72]**
**haven't [3]**  11/15 18/14 30/1
**having [2]**  20/5 34/21
**hear [7]**  3/2 10/10 12/11 21/7 21/19 29/25 33/8
**hearing [8]**  1/8 5/8 5/20 7/7 8/16 21/15 33/24 36/11
**held [1]**  32/23
**help [1]**  9/9
**helps [1]**  19/2
**here [15]**  6/13 7/6 7/20 8/10 9/2 13/14

14/17 14/18 30/12 31/4 31/11 31/13 34/8 34/21 37/25
**Here's [1]**  19/15
**hereby [1]**  39/4
**hereto [1]**  39/10
**hey [1]**  23/20
**hidden [2]**  31/12 32/5
**hide [2]**  20/20 21/1
**hiding [2]**  20/21 31/24
**high [1]**  26/5
**honest [1]**  29/2
**Honor [32]**  2/2 2/11 3/7 3/8 3/21 6/5 6/11 7/6 9/17 10/19 12/13 12/16 16/12 18/5 20/10 21/4 21/25 22/14 22/20 23/25 27/7 30/3 30/7 30/24 31/12 32/13 32/21 34/5 35/15 36/18 37/23 38/12
**Honor's [2]**  9/15 17/17
**HONORABLE [1]**  1/9
**hope [4]**  2/15 34/23 35/1 35/10
**Hopefully [1]**  33/24
**how [11]**  6/6 8/18 9/9 13/9 17/24 19/3 19/6 22/10 29/10 34/1 34/2
**however [1]**  28/8
**hungry [1]**  26/16

**I**

**I'll [12]**  3/2 10/10 12/12 12/14 21/7 21/19 30/22 31/1 31/1 33/20 33/20 38/13
**I'm [15]**  4/15 4/24 5/11 13/23 14/5 20/20 21/16 23/15 26/10 26/16 29/11 32/25 34/6 35/12 37/16
**I've [6]**  6/15 11/22 21/9 21/21 30/18 31/18 33/3 38/14 38/16
**idea [1]**  19/21
**identical [1]**  9/1
**identified [2]**  24/25 36/3
**identify [1]**  2/5
**immediately [1]**  23/21
**impacting [1]**  18/2
**impede [1]**  38/18
**impeding [1]**  15/20
**important [1]**  16/3
**inappropriate [7]**  6/3 8/1 16/23 20/16 20/20 27/4 27/4
**inclination [1]**  21/8
**inclined [1]**  37/6
**included [9]**  11/9 11/11 11/12 13/16 25/7 25/17 25/22 37/2 37/20
**includes [1]**  9/25
**including [3]**  9/18 9/23 22/16
**inconceivable [1]**  29/6
**incorrect [1]**  33/2
**indicate [2]**  11/14 26/21
**indicated [6]**  21/9 31/18 32/25 33/3 38/14 38/16
**indicates [1]**  20/16
**indication [1]**  37/18
**individual [2]**  27/14 28/18
**individuals [3]**  24/8 24/25 37/18
**individuals' [1]**  25/4
**industry [1]**  29/1
**inform [1]**  19/2
**information [65]**
**initial [3]**  7/8 8/8 17/7
**initially [1]**  24/6

**inquiries [5]**  14/25 18/25 24/7 24/13 32/25
**inquiry [2]**  18/22 30/12
**Instead [1]**  24/4
**intelligently [1]**  33/6
**intend [1]**  36/3
**intended [3]**  32/11 36/4 38/15
**intention [2]**  8/13 31/13
**Internal [1]**  18/10
**internally [1]**  20/3
**interpretation [1]**  14/24
**interrogatories [26]**  3/13 3/22 3/24 4/18 4/24 4/25 9/19 9/20 13/4 13/4 17/18 17/20 18/4 22/2 22/5 22/18 22/19 29/23 30/5 30/7 30/24 31/20 32/14 34/9 34/13 35/17
**interrogatory [5]**  2/21 5/16 18/14 21/10 30/4
**intimate [1]**  20/5
**involved [1]**  14/14
**involvement [2]**  25/4 27/25
**IRS [22]**  2/22 3/10 4/6 11/23 13/6 13/6 13/25 14/23 15/7 15/13 19/7 20/2 24/6 24/18 25/18 25/21 25/24 28/16 28/20 31/5 32/1 37/19
**IRS's [4]**  12/23 24/23 25/14 28/15
**is [116]**
**Isn't [1]**  3/14
**issue [15]**  3/5 7/7 9/11 12/19 14/2 14/11 17/19 19/10 21/8 21/20 23/1 33/25 33/25 37/17 38/13
**issued [1]**  36/11
**issues [7]**  13/1 13/9 13/11 19/4 26/19 28/13 33/22
**issuing [1]**  28/17
**it [103]**
**it's [30]**  8/23 9/13 10/20 10/25 11/6 11/18 16/2 17/1 17/9 17/12 17/24 29/5 29/9 32/5 32/19 33/1 33/11 34/13 34/15 34/16 35/3 36/23 38/2 38/10
**it's true [1]**  10/25
**its [6]**  15/7 24/5 24/21 26/3 28/17 29/17
**itself [1]**  4/9

**J**

**Jones [4]**  1/20 39/2 39/13 39/14
**Joseph [2]**  1/16 2/12
**judge [4]**  1/9 1/10 13/13 15/6
**judgment [17]**  3/5 4/3 7/4 10/22 12/25 13/12 16/6 19/2 21/24 26/2 28/13 30/2 33/6 33/18 34/3 34/10 34/16
**July [3]**  10/21 23/17 27/3
**just [53]**
**JUSTICE [2]**  1/13 1/17

**K**

**kinds [1]**  9/4
**know [54]**
**knowing [4]**  5/10 19/9 21/17 33/1
**knowledge [2]**  20/5 31/5

**L**

**laid [1]**  22/20
**language [3]**  4/6 14/21 16/16
**large [1]**  20/2

## L

**largely [2]** 10/22 10/22
**last [1]** 7/6
**later [1]** 7/17
**Laura [2]** 1/16 2/11
**law [3]** 1/13 2/14 2/20
**lawyers [3]** 3/19 35/3 35/7
**lay [1]** 20/17
**learned [1]** 34/11
**least [1]** 11/5 23/17 36/6
**led [2]** 5/19 6/18
**length [1]** 7/3
**Lerner [1]** 7/23
**let [10]** 4/23 6/15 8/25 12/11 12/12
12/14 20/18 33/22 37/25 38/10
**let's [1]** 21/10
**LIBERTY [2]** 1/3 2/3
**light [1]** 32/12
**like [19]** 3/8 3/13 4/11 6/9 8/13 11/3
11/23 15/3 19/11 19/14 20/2 23/9 25/5
29/1 30/9 31/11 31/19 32/7 37/8
**likely [1]** 26/7
**limit [1]** 14/25
**limitation [1]** 29/12
**limited [4]** 14/21 14/21 17/4 27/8
**limits [1]** 19/12 22/23
**LINCHPINS [2]** 1/3 2/3
**line [1]** 20/17
**litigation [6]** 1/12 1/12 1/16 1/16 1/17
31/9
**little [11]** 11/18 12/2 12/10 13/23 25/25
26/7
**long [1]** 22/10
**longer [2]** 17/22 18/2
**look [3]** 6/13 27/14 31/20
**looked [1]** 25/3
**looking [2]** 9/4 29/13
**lot [6]** 4/5 9/25 11/23 26/11 26/18
36/19

## M

**machine [3]** 1/23 39/4 39/9
**made [9]** 3/18 4/1 4/10 5/9 6/2 7/1
14/23 15/7 34/20
**mainly [1]** 6/21
**make [8]** 6/15 12/17 21/12 30/19 31/16
31/25 33/24 36/23
**makes [1]** 11/17
**making [3]** 25/2 26/21 31/4
**manner [1]** 29/4
**many [2]** 9/22 30/5
**Maryland [1]** 1/14
**material [1]** 20/13
**matters [1]** 35/2
**may [17]** 8/22 9/23 10/5 10/8 11/21
12/1 12/8 14/16 20/2 20/3 23/7 25/11
26/20 30/3 30/9 30/10 37/24
**maybe [4]** 11/17 12/10 28/9 29/15
**me [24]** 2/8 5/11 6/15 7/15 9/9 12/11
15/12 15/17 16/7 20/6 20/17 21/16
26/24 27/1 29/14 31/16 31/19 33/11
33/22 35/20 36/13 38/1 38/10 38/17
**mean [18]** 3/15 3/17 10/19 11/19 12/5
12/9 12/14 15/12 20/8 20/15 23/21
26/10 28/2 28/4 29/4 29/5 31/17 35/2
**meaning [1]** 15/4
**means [3]** 4/7 9/1 12/9

**meant [1]** 5/22
**measures [1]** 24/18
**meet [1]** 30/16
**members [2]** 35/4 35/4
**mention [1]** 5/15
**mentioned [1]** 27/16
**middle [1]** 25/11
**might [2]** 18/9 29/6
**mindful [1]** 18/24
**minimum [1]** 10/20
**money [1]** 26/18
**monitor [1]** 2/25
**monitoring [10]** 2/24 7/4 10/15 16/10
16/23 18/23 23/14 26/23 27/4 27/9
**months [1]** 34/6
**moot [1]** 8/7
**mootness [2]** 13/1 34/18
**more [12]** 2/18 4/1 5/4 6/9 12/2 12/8
12/10 14/15 15/5 20/12 25/6 27/22
**morning [1]** 30/18
**most [2]** 22/20 28/24
**mostly [1]** 36/21
**motion [14]** 5/15 6/14 12/25 13/12
16/6 21/24 26/2 26/4 29/18 30/2 33/6
33/10 33/17 34/4
**MOTIONS [1]** 1/8
**moved [1]** 31/11
**moving [1]** 32/4
**Ms. [1]** 7/23
**Ms. Lerner [1]** 7/23
**much [5]** 5/4 13/9 26/13 34/1 34/2
**multiple [1]** 17/4
**my [14]** 2/14 2/20 4/21 8/13 9/5 9/8
9/10 16/16 18/20 21/8 28/24 33/1 39/9
39/10

## N

**N.W [1]** 1/21
**name [1]** 39/11
**named [1]** 25/1
**names [1]** 28/15
**narrow [1]** 21/15
**nature [1]** 34/1
**NE [1]** 1/14
**necessary [3]** 14/22 26/18 32/1
**need [22]** 4/2 5/19 12/17 15/5 17/25
17/25 21/2 22/21 22/24 24/1 24/22
26/12 26/14 26/15 27/11 28/5 30/1
30/22 33/9 33/12 34/3 37/16
**needed [4]** 3/5 21/23 35/6 35/8
**needs [3]** 9/11 26/11 37/13
**never [2]** 17/5 29/8
**next [2]** 30/16 34/24
**nexus [1]** 9/7
**night [1]** 26/16
**no [14]** 1/4 2/4 7/17 14/13 15/4 16/13
17/22 18/2 22/14 23/12 24/2 28/5
33/21 33/25
**nonetheless [2]** 35/21 36/12
**normally [2]** 2/25 10/15 15/20 15/23
16/9
**not [73]**
**noted [1]** 11/4
**notes [1]** 39/9
**nothing [4]** 20/14 20/15 20/21 20/22
**now [21]** 8/25 9/1 9/13 13/6 17/21
18/1 19/15 19/25 23/8 31/13 31/15

**31/20 31/23 32/7 32/12 34/5 34/12
36/7 36/23 37/11 38/3
**NW [1]** 1/18

## O

**o'clock [1]** 30/18
**object [2]** 5/1 30/14
**objected [3]** 5/25 12/18 13/3
**objecting [2]** 7/13 32/19
**objection [9]** 6/21 18/24 22/13 22/14
24/21 30/10 35/23 35/25 36/13
**objections [5]** 6/21 12/21 17/15 32/15
35/20
**obligated [1]** 21/14
**obligation [5]** 14/4 23/12 35/2 35/3
36/16
**obligations [3]** 3/18 3/19 11/20
**observation [1]** 3/8
**obtained [1]** 34/14
**obvious [1]** 10/20
**obviously [17]** 7/9 10/10 10/23 12/6
15/12 15/15 18/11 20/2 21/21 23/4
26/13 26/25 30/17 30/22 35/22 36/14
38/2
**occurred [1]** 10/17
**October [2]** 31/2 34/2
**off [1]** 27/15
**offered [1]** 24/4
**Office [1]** 1/17
**official [1]** 1/20 39/2 39/8 39/14
**okay [1]** 12/9
**once [7]** 3/11 18/17 21/11 29/24 34/1
34/24 38/3
**one [15]** 3/16 5/18 6/17 8/23 11/5 11/7
11/16 11/24 16/15 18/15 23/1 27/16
30/3 34/13 36/18
**onerous [1]** 29/10
**ones [4]** 31/21 36/3 36/6 36/7
**ongoing [3]** 8/7 17/3 17/25
**only [2]** 2/19 10/5 23/10 38/17
**open [1]** 3/16
**operations [1]** 7/25
**opinion [2]** 11/1 19/19
**opposing [1]** 6/12
**opposition [1]** 5/17
**order [24]** 3/5 4/1 4/3 5/21 6/25 8/16
9/15 14/19 14/22 15/11 18/20 21/8
21/21 22/9 22/12 23/9 32/16 33/9
33/12 35/9 37/6 37/9 37/16 38/13
**ordered [1]** 2/18
**other [19]** 2/19 3/6 11/11 11/15 11/20
16/19 21/20 23/6 25/20 28/21 28/22
33/3 33/12 35/5 35/8 37/2 37/5 37/19
37/19
**others [1]** 36/5
**otherwise [4]** 6/6 8/18 15/3 35/6
**our [24]** 6/1 6/10 6/24 7/3 8/2 8/4 8/5
8/21 9/16 9/22 11/6 11/8 12/21 16/12
18/8 18/14 22/17 23/18 30/12 32/14
34/12 35/16 36/23 37/14
**ourselves [1]** 21/2
**out [12]** 7/13 9/8 9/9 10/6 11/3 12/8
16/17 20/17 22/20 23/18 23/20 29/7
**outlined [2]** 21/4 33/16
**outside [9]** 6/22 7/2 7/9 16/14 28/22
30/8 30/13 36/20 37/12
**over [2]** 8/12 32/2 32/14

**O**

overarching [1] 5/20
overly [1] 17/10
own [2] 19/11 32/14

**P**

p.m [2] 1/6 38/21
page [1] 8/10
pages [4] 4/5 4/11 20/12 39/7
paragraph [2] 16/25 17/2
part [4] 5/19 5/19 6/20 20/4
particular [7] 3/23 14/6 14/16 15/5 17/17 17/18 30/11
particularly [1] 8/23
parties [5] 2/4 4/20 5/20 8/11 33/21
party [1] 20/3
past [27] 5/24 6/1 6/2 6/8 6/22 6/25 8/17 8/18 8/20 8/23 9/6 9/12 13/7 13/9 13/13 13/14 13/19 14/8 14/9 14/20 14/25 15/5 15/11 16/5 17/21 18/25 24/22
pending [1] 25/10
people [9] 7/22 10/12 23/6 26/12 26/16 28/14 28/25 28/25 29/2
perceive [1] 3/10
perceived [1] 5/19
perhaps [1] 9/17
perimeters [1] 3/3
period [10] 10/23 12/19 14/14 22/6 22/7 24/4 24/12 25/11 31/6 38/4
permitted [1] 14/19
pertinent [4] 3/20 10/14 10/18 17/19
picks [1] 3/12
place [13] 7/11 8/24 9/1 10/13 14/11 15/13 16/8 16/23 20/3 20/6 26/14 26/22 27/2
plaintiff [10] 1/3 3/6 11/9 11/10 12/11 12/19 13/17 19/22 28/22 34/3
plaintiff's [15] 3/3 19/5 21/7 21/12 21/19 23/7 24/21 25/1 25/8 25/9 25/10 25/12 25/22 26/4 27/13
plaintiffs [60]
plaintiffs' [5] 16/4 17/21
planned [1] 35/17
plans [1] 7/17
playing [1] 5/10
plead [1] 20/7
pleading [2] 17/7 19/18
pleadings [1] 19/17
please [1] 2/6
pled [2] 17/13 19/23
plus [3] 4/5 4/11 5/6
point [14] 5/10 6/11 10/4 11/3 13/10 13/17 16/2 20/10 28/1 30/4 33/19 36/18 36/24 37/8
pointed [1] 16/17
policies [8] 8/24 8/24 8/25 9/3 9/6 14/15 15/7 24/23
policy [2] 28/16 28/19
poor [1] 26/11
position [10] 6/1 6/7 6/24 7/3 8/21 9/5 23/11 24/15 29/9 33/5
possession [2] 11/6 31/5
post [2] 10/17 23/7
post-May [1] 23/7
potential [2] 7/5 18/8
practice [1] 28/19

practices [1] 12/23
prepared [3] 4/22 22/17 35/24
present [1] 3/16
presented [1] 6/15
preserve [1] 17/19
previously [2] 2/17 36/4
prior [4] 19/20 32/16 36/11 37/14
privileges [1] 18/9
probably [5] 5/8 7/23 18/16 22/25 37/6
problem [5] 3/10 10/6 17/7 27/17 37/9
problems [2] 8/20 33/21
procedures [4] 12/23 14/15 15/8 24/24
proceedings [4] 1/23 38/20 39/5 39/8
process [17] 6/23 7/2 7/2 7/10 9/7 9/8 9/10 10/7 10/8 10/12 11/9 15/13 16/14 19/3 23/16 23/19 26/23
produce [24] 3/20 5/11 5/24 9/21 18/5 21/11 21/14 21/17 22/3 23/12 31/10 31/14 32/1 32/11 33/1 33/7 35/21 35/23 35/24 36/1 36/15 36/16 37/19 38/15
produced [21] 1/24 5/13 6/4 11/4 13/2 18/17 20/11 20/23 21/12 21/13 22/18 24/19 29/9 29/24 30/21 33/11 35/13 36/25 37/6 37/7 37/22
producing [3] 13/3 18/21 38/8
production [5] 5/9 12/22 18/4 18/8 37/3
productions [1] 11/12
professional [1] 3/19
promise [1] 25/25
proof [1] 37/4
proportionality [1] 26/8
propose [1] 3/4
proposed [4] 2/21 17/16 17/20 32/12
proposing [1] 2/16
propounded [4] 3/24 4/19 30/6 31/21
protect [2] 21/2 21/4
protected [1] 18/9
provide [10] 3/4 3/13 4/22 21/22 29/22 30/22 35/5 35/8 36/10 36/12
provided [8] 10/2 11/10 11/11 26/15 32/19 33/4 34/2 37/20
provides [1] 16/4
providing [1] 26/14
public [1] 26/6
purportedly [1] 16/22
purpose [2] 13/20 13/20
purposes [3] 12/24 13/11 16/5
put [6] 3/22 20/17 28/25 29/3 30/17 33/5
putting [1] 3/9

**Q**

qualification [3] 14/24 15/3 15/10
question [7] 2/20 3/2 7/6 8/2 19/2 21/10 33/4
questions [3] 3/10 5/5 24/17
quickly [2] 22/1 36/18

**R**

raise [2] 30/9 30/10
raised [1] 13/11
raises [1] 13/1
range [1] 19/13
ranging [3] 14/7 14/25 32/23

rathes [1] 35/15
re [1] 2/9
read [1] 9/23
reading [1] 16/12
ready [1] 31/9
real [1] 21/25
really [19] 3/8 11/17 11/25 12/24 13/20 18/23 19/1 19/4 31/3 32/8
reason [2] 18/16 35/14
reasonably [1] 21/5
reasons [1] 11/2
reassessment [1] 32/18
receive [3] 2/15 2/25 15/21
received [3] 10/16 30/1 37/18
record [1] 2/5
recorded [1] 1/23
redress [1] 19/7
reevaluate [1] 38/16
reference [7] 2/23 10/11 10/15 14/10 20/4 23/13 26/23
regard [1] 5/24 29/22
regarding [7] 6/1 6/22 11/7 15/16 18/22 21/11 26/22
regardless [1] 28/24
regards [1] 14/1
REGGIE [1] 1/9
regularly [1] 15/16
relate [4] 2/22 17/24 37/5 37/21
related [5] 11/12 13/19 14/13 27/2 27/4
relates [5] 10/14 27/5 29/2 29/7 29/13
relating [1] 10/2
relevant [15] 10/21 10/24 11/15 11/16 11/20 12/24 23/4 25/14 28/4 28/13 28/16 30/12 31/6 37/10 37/12
relief [1] 3/6
rely [1] 10/22
remains [1] 28/1
remedial [2] 6/7 8/16
remedy [1] 24/18
reneging [1] 32/8
report [9] 10/6 10/14 10/23 23/17 24/10 24/13 27/2 27/21 28/1
reported [1] 39/4
Reporter [4] 1/20 1/20 39/2 39/14
reports [1] 10/24
request [13] 4/14 4/17 6/17 8/5 9/8 18/4 24/2 24/2 24/2 24/21 25/6 35/16 38/5
request of [1] 24/2
requesting [1] 16/18
requests [15] 3/23 5/18 6/13 8/22 9/6 9/11 9/22 12/21 12/22 14/6 17/18 18/7 21/3 21/4 27/13
require [5] 18/8 25/23 31/1 33/20 36/15
required [4] 15/4 22/3 23/2 30/14
reserve [1] 9/18
resolution [1] 38/18
resolve [2] 33/23 33/24
resources [2] 25/24 26/6
respond [20] 4/3 6/20 12/12 12/15 21/23 24/6 30/1 30/14 31/24 32/14 32/23 33/6 33/10 33/13 33/17 34/3 35/9 35/16 35/17 36/5
responded [2] 5/18 6/18
responding [3] 5/3 14/5 26/1

**R**

response [8] 4/13 4/16 4/20 9/22 17/17 18/15 26/3 29/17
responses [10] 4/19 4/22 9/19 18/15 22/2 22/17 22/19 29/23 30/4 32/18
responsive [2] 22/5 34/9
rest [1] 5/2
restricted [1] 27/1
restricting [1] 26/24
result [3] 7/8 7/12 32/18
rethink [1] 36/10
Revenue [1] 18/10
review [4] 7/25 18/8 26/23 38/8
reviewing [1] 25/5
reviews [1] 7/4
right [8] 5/14 8/21 11/2 23/8 34/7 34/12 34/21 37/8
Ripperda [1] 34/15
road [1] 22/1
Room [1] 1/21
RPR [2] 1/20 39/14
rules [2] 19/17 19/18
ruling [1] 9/18
rulings [2] 7/21 33/24

**S**

said [21] 4/11 4/13 4/16 5/1 5/2 6/10 8/13 8/15 11/3 12/6 17/5 18/3 19/5 21/21 23/20 26/20 31/12 34/17 37/8 38/14 39/8
same [3] 7/7 8/10 34/21
satisfied [1] 12/4
saw [1] 25/5
say [9] 8/7 14/9 19/14 19/20 26/24 27/19 31/12 35/23 37/24
saying [12] 7/21 11/23 12/1 13/24 13/24 14/3 20/21 28/7 28/23 31/13 32/17 33/15
says [1] 7/23
scope [13] 4/2 5/5 5/22 6/19 8/12 9/15 14/4 21/15 22/23 23/2 31/18 32/22 33/2
scopes [1] 12/7
screening [1] 8/2
scrupulous [1] 29/4
search [13] 9/23 10/1 10/3 11/21 23/3 23/8 24/5 24/24 25/20 27/7 29/10 37/10 37/14
searched [2] 11/15 37/13
searches [1] 27/15
searching [1] 36/20
second [1] 9/22
see [14] 5/7 8/25 17/24 19/16 21/10 25/3 25/21 26/13 27/15 27/24 28/21 29/20 29/22 29/22
seeking [2] 10/13 21/6
seeks [1] 15/16
seem [3] 26/24 27/1 28/7
seems [16] 5/11 7/15 15/3 15/12 15/17 17/21 19/11 19/17 20/6 20/16 21/16 28/20 29/14 35/19 36/13 38/17
seen [3] 11/7 11/22 18/14
send [2] 2/15 7/25
sending [2] 25/5 25/6
SENIOR [5] 1/9 1/12 1/12 1/16 1/16
sense [2] 31/16 31/25
Sergi [2] 1/16 2/13

service [1] 3/11
set [5] 4/1 5/18 6/17 33/23 38/3
setting [3] 5/21 9/15 21/8
seven [3] 25/1 27/19 27/24
several [1] 24/25
she's [1] 2/20
shooting [5] 5/11 7/19 21/17 32/25 35/12
shorthand [3] 1/23 39/5 39/9
should [10] 5/13 7/11 12/3 19/1 19/11 19/22 20/22 30/13 32/22 33/16
shouldn't [2] 19/23 36/14
show [1] 15/4
shows [1] 28/4
side [3] 3/16 32/5 35/8
significant [2] 26/11 26/15
significantly [1] 22/23
simple [1] 3/9
since [4] 7/10 22/1 30/10 30/18
sitting [1] 31/11
six [1] 4/25
small [1] 28/12
so [48]
sole [1] 3/12
Solely [1] 7/25
some [23] 3/17 5/15 6/20 7/3 10/2 11/8 12/1 12/21 16/16 16/22 18/21 21/22 22/7 23/7 23/18 27/20 28/8 29/12 29/21 30/8 31/17 32/6 32/14
somehow [1] 38/15
something [6] 20/15 24/9 27/11 27/16 29/14 36/15
sometimes [1] 26/16
somewhat [2] 16/17 18/13
sorry [2] 4/15 4/25
sounds [5] 11/22 19/14 23/9 31/19 32/7
sources [5] 11/15 11/16 11/20 37/10 37/12
Southerland [2] 1/12 2/9
specific [5] 2/18 4/1 5/4 6/13 26/21
specifically [2] 8/15 24/3
specifics [1] 8/15
specified [1] 18/5
speculate [2] 7/15 33/12
speculating [1] 7/20
speculative [4] 25/23 36/22 36/24 37/3
spell [1] 9/8
spot [1] 28/3
standing [2] 13/1 31/13
STATES [27] 1/1 1/5 1/10 2/3 2/12 12/18 12/20 13/2 14/24 15/10 16/3 17/15 18/3 20/11 20/25 20/25 21/5 24/4 24/14 24/20 26/3 29/17 30/13 32/13 32/22 33/15 39/3
States' [1] 12/25
status [12] 2/24 3/1 10/13 10/16 14/1 15/14 15/17 15/22 16/1 16/8 16/10 16/24
step [2] 2/5 26/5
steps [1] 8/16
still [7] 7/10 10/7 10/8 10/12 10/24 11/19 18/8 18/23 22/3 23/15 23/19 25/10 28/1 31/8 33/22 38/6
stopped [1] 23/22
story [1] 7/18

straight [1] 32/6
Street [1] 1/18
subject [2] 13/10 17/23
subjected [1] 23/19
submitted [3] 12/22 26/3 29/17
subscribed [1] 39/10
subsequent [5] 19/7 23/17 24/10 24/18 34/24
such [1] 16/13
sufficient [1] 7/1
sufficiently [4] 9/13 9/14 31/7 36/21
suggested [2] 30/7 31/22
suggestions [1] 17/17
sum [1] 9/10
summary [17] 3/5 4/3 7/4 10/21 12/25 13/11 16/6 19/2 21/23 26/1 28/13 30/2 33/6 33/17 34/3 34/10 34/16
Sunday [1] 31/1
support [2] 4/10 26/3
supporting [1] 34/15
suppose [3] 19/10 32/15 33/14
sure [3] 6/15 18/12 34/6
swept [2] 8/1 8/4
system [1] 35/7
systems [1] 25/20

**T**

tailored [1] 4/2
take [5] 6/12 23/24 24/15 26/14 30/15
taken [7] 2/22 6/8 8/17 13/6 13/14 19/7 38/1
takes [2] 12/1 12/10
taking [3] 16/8 16/23 20/3
talked [2] 7/3 23/3
talking [3] 2/19 3/15 14/10 15/22 20/1 23/13 23/14 23/15 24/17 27/20 34/8 38/7
targeted [2] 7/11 19/1
targeting [8] 6/3 7/8 8/2 8/8 17/3 20/16 27/5 32/2
tax [11] 2/24 3/1 10/16 14/1 15/14 15/17 15/21 16/1 16/8 16/10 16/24
tax-exempt [11] 2/24 3/1 10/16 14/1 15/14 15/17 15/21 16/1 16/8 16/10 16/24
teleconference [1] 6/11
tell [2] 34/12 34/13
telling [1] 37/9
tend [1] 9/16
terms [4] 4/12 5/21 5/25 9/9 10/3 17/2 26/6 30/4 36/7 36/20 37/14
testimony [1] 39/5
than [4] 15/6 20/12 21/20 35/15
Thank [8] 3/7 12/13 12/16 30/24 37/23 38/12 38/13 38/19
that [377]
that's [38] 3/20 4/11 6/18 7/12 7/18 8/5 8/10 8/11 8/21 9/9 9/15 15/17 18/11 18/16 18/17 19/16 21/11 22/10 22/25 23/10 27/17 28/9 29/14 29/24 30/17 31/12 31/24 32/21 33/14 33/18 34/19 34/23 35/1 35/14 36/17 37/3 37/5 38/17
their [28] 3/18 3/19 4/19 5/17 7/25 10/21 11/22 13/8 13/16 14/16 15/6 15/25 19/11 19/22 20/4 23/8 24/22 25/17 27/10 28/20 28/3 28/15 28/25

**T**

**their...** [5]  31/13 34/10 34/16 35/3 37/2
**them** [25]  4/24 5/2 7/14 7/25 8/3 8/3 10/2 15/24 16/5 17/6 18/2 19/8 20/18 21/18 27/25 28/1 28/3 30/22 31/6 31/15 31/24 32/7 34/13 36/9 38/7
**then** [21]  9/1 17/13 18/18 20/16 20/17 21/12 23/5 25/17 29/19 29/24 29/24 30/14 30/15 31/23 33/7 34/1 34/25 35/21 37/6 37/21 38/4
**there** [61]
**there's** [21]  4/5 4/23 5/12 6/19 7/16 7/20 9/24 10/24 15/13 16/16 20/14 20/14 20/21 21/20 22/4 23/12 24/2 27/3 28/9 29/12 31/14
**therefore** [1]  20/5
**thereto** [1]  34/25
**Thereupon** [1]  38/20
**these** [28]  3/9 3/11 3/25 3/25 5/6 6/3 7/24 9/18 11/2 11/5 11/14 12/5 12/7 14/10 14/12 14/14 15/1 15/24 16/21 23/18 24/9 24/9 27/14 27/20 28/14 29/3 29/7 34/9
**they** [79]
**they're** [17]  4/22 5/11 7/1 7/10 7/13 9/1 12/6 12/9 20/8 29/2 29/8 31/13 31/19 31/20 31/21 32/7 35/13
**they've** [9]  5/18 5/25 6/17 8/1 9/21 19/23 22/17 29/20 36/7
**thing** [3]  2/19 23/10 29/20
**things** [12]  4/8 9/4 9/12 11/14 14/11 20/2 20/7 25/5 26/18 31/7 32/6 38/15
**think** [46]
**thinks** [1]  3/6
**this** [56]
**thorough** [1]  5/3
**thoroughly** [1]  36/5
**those** [20]  4/10 4/22 5/3 5/8 9/4 9/6 10/16 13/2 18/5 19/9 22/3 22/19 23/9 24/17 24/19 25/4 28/22 30/8 37/11 37/21
**though** [7]  13/4 23/2 28/8 35/20 35/24 36/12 37/24
**thought** [11]  6/2 6/5 6/10 6/12 8/9 8/14 8/15 9/8 30/20 35/25 36/13
**through** [4]  4/4 8/22 10/20 34/12
**tie** [1]  9/7
**tieing** [1]  24/22
**TIGTA** [10]  10/6 10/23 10/23 23/17 23/20 24/10 24/13 27/2 27/21 27/25
**time** [17]  7/22 12/1 12/2 12/10 12/19 14/13 24/3 24/11 25/11 25/24 27/12 30/16 31/6 32/1 34/1 34/2 38/10
**time-consuming** [1]  27/12
**today** [5]  7/17 21/20 21/21 31/11 33/16
**today's** [1]  36/11
**together** [4]  12/10 30/18 35/4 35/8
**told** [1]  36/4
**tomorrow** [7]  4/21 4/22 9/20 13/5 22/3 30/5 31/15
**too** [3]  6/10 35/12 38/1
**took** [6]  10/13 14/11 20/6 24/18 26/22 27/2
**topic** [1]  12/24
**topics** [3]  18/5 30/11 33/16
**total** [1]  9/10

**toward** [1]  24/3
**transcribed** [1]  39/9
**transcript** [3]  1/8 1/23 39/8
**transcription** [1]  1/24
**treatment** [4]  7/12 11/8 25/14 37/1
**tremendous** [1]  26/6
**tried** [1]  11/3
**true** [3]  10/25 28/11 28/24
**truly** [1]  26/7
**try** [2]  28/21 30/19
**trying** [5]  8/5 9/18 19/14 21/1 32/15
**Tuesday** [1]  1/5
**two** [5]  10/23 34/6 38/1 38/7 38/9
**type** [1]  16/23

**U**

**U.S** [2]  1/17 1/21
**ultimates** [1]  19/2
**under** [2]  11/19 18/10
**understand** [5]  3/21 6/16 9/10 12/1 14/3
**understandable** [1]  18/11
**understanding** [5]  4/21 8/5 9/5 9/16 36/17
**unequivocally** [1]  36/25
**UNITED** [28]  1/1 1/5 1/10 2/3 2/12 12/17 12/20 12/25 13/2 14/23 15/10 16/3 17/15 18/3 20/10 20/25 20/25 21/5 24/4 24/14 24/20 26/3 29/17 30/13 32/13 32/22 33/15 39/3
**unlawful** [1]  17/3
**unless** [1]  15/4
**unreasonable** [1]  28/20
**unsympathetic** [2]  26/10 26/17
**until** [7]  5/8 13/5 25/15 27/3 31/2 33/10 35/12
**up** [10]  6/13 8/1 8/4 10/4 10/5 10/20 27/2 30/15 30/18 33/23
**upon** [1]  38/16
**us** [17]  4/23 8/25 9/7 11/10 11/11 11/14 21/5 22/20 30/15 31/15 34/6 34/7 34/19 36/3 36/4 38/8 38/18
**used** [1]  16/21
**useful** [3]  25/25 26/1 26/8
**uses** [1]  15/13
**using** [1]  37/14

**V**

**vague** [2]  16/17 17/9
**valid** [1]  35/23
**verbiage** [1]  4/6
**versus** [1]  2/3
**very** [13]  6/10 7/14 17/16 21/2 22/15 25/24 27/12 29/19 36/6 36/17 36/23 37/25 38/6
**view** [1]  36/11

**W**

**wait** [2]  29/20 29/22
**WALTON** [1]  1/9
**want** [11]  11/25 18/24 19/16 21/1 22/6 26/13 27/13 27/14 31/3 36/18 36/23
**was** [49]
**Washington** [4]  1/5 1/14 1/18 1/22
**wasn't** [1]  5/7
**waste** [2]  26/13 26/13
**way** [6]  2/25 3/22 17/14 21/22 29/12

**31/17**
**ways** [1]  34/8

**we** [70]
**we'd** [1]  30/9
**we'll** [4]  10/1 13/23 34/25 35/11
**we're** [21]  7/5 7/19 7/20 7/23 7/24 8/5 8/10 9/4 11/17 18/17 19/15 24/17 27/20 28/19 31/9 32/15 33/14 34/18 34/21 35/6 38/7
**we've** [7]  4/1 4/4 4/7 4/9 4/18 10/2 11/3 11/3 11/23 12/3 22/11 23/3 23/8 34/11 34/14 34/22 36/21
**week** [1]  34/24
**well** [16]  3/23 4/18 5/23 6/5 6/12 8/22 9/5 9/7 10/8 11/23 12/3 14/5 22/8 22/15 29/19 37/25
**went** [2]  25/2 25/3
**were** [36]  2/22 2/23 3/9 4/23 4/24 4/25 5/1 6/20 7/10 8/9 8/20 8/24 8/24 10/12 10/12 14/12 17/5 18/1 19/8 19/9 20/7 23/6 23/18 25/1 25/2 26/21 27/10 31/14 32/10 32/18 35/16 35/21 35/24 36/10 36/12 38/14
**what** [105]
**what's** [6]  8/19 9/24 21/13 23/20 29/21 35/5
**whatever** [2]  3/6 29/2
**when** [9]  3/14 9/19 10/6 12/18 14/9 20/1 23/17 25/3 26/6
**where** [4]  3/16 6/16 14/6 23/2
**whereof** [1]  39/10
**whether** [17]  5/12 6/7 8/16 8/19 15/1 15/7 15/14 19/6 21/13 27/9 28/9 29/9 34/13 34/15 34/19 34/19 37/25
**which** [18]  2/15 2/17 2/21 4/4 5/19 6/13 12/23 13/7 19/3 19/4 20/12 25/11 25/23 26/25 31/21 34/8 36/6 36/7
**while** [2]  11/25 26/20
**who** [7]  16/21 23/6 24/8 25/1 25/1 26/16 28/25
**why** [8]  3/3 6/13 8/10 15/5 15/5 20/20 33/8 36/1
**wide** [3]  3/16 14/25 19/13
**will** [7]  18/18 21/4 22/15 29/19 32/2 33/24 36/7
**wish** [1]  3/9
**withhold** [1]  36/8
**within** [11]  3/25 5/5 12/7 13/16 15/15 22/16 25/7 30/6 31/5 31/22 31/23
**without** [3]  19/8 24/22 27/11
**witness** [1]  39/10
**word** [1]  16/21
**work** [4]  23/7 29/1 35/4 35/7
**workers** [1]  28/24
**working** [1]  30/19
**would** [65]

**Y**

**years** [2]  31/9 31/25
**yes** [5]  10/1 11/16 18/21 32/21 37/13
**yet** [1]  18/15
**yield** [1]  26/7
**yielding** [1]  25/25
**you** [78]
**you're** [11]  3/14 13/24 14/3 20/1 21/14 23/13 28/23 29/8 29/13 32/17 33/1
**you've** [6]  20/18 30/21 31/22 33/11

**Y**

**you've... [2]** 37/18 37/20
**your [47]**
**yourselves [1]** 2/5