UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINCHPINS OF LIBERTY, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -vs- | ) Civil Action No. 1:13-cv-00777-RBW |
| | ) |
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## CONSENT ORDER

Plaintiffs, forty-one (41) applicants seeking tax-exempt status pursuant to 26 U.S.C. §
501(c)(3) and 501(c)(4) (hereinafter, "Plaintiffs" or "Plaintiff organizations"), filed their original
Complaint in this matter on May 29, 2013, seeking: monetary damages from the named
individual defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics*, 403 U.S. 388 (1971), for alleged violations of their rights under the First and Fifth
Amendments to the United States Constitution; equitable relief, both declaratory and injunctive,
against the United States and the Internal Revenue Service ("Government Defendants"), for
alleged violations of their rights under the First and Fifth Amendments to the United States
Constitution, the Internal Revenue Code, and the Administrative Procedure Act (5 U.S.C. § 702,
*et seq.*); and monetary damages against the United States, pursuant to 26 U.S.C. § 7431, for
alleged violations of 26 U.S.C. § 6103. Plaintiffs filed a First Amended Complaint on June 25,
2013, and the operative Second Amended Complaint on October 18, 2013, seeking the same
relief.

Following the district court's dismissal of all but two claims in Plaintiffs' Second
Amended Complaint ("Complaint") by order of October 23, 2014, and Plaintiffs' voluntary

dismissal of those two claims on December 12, 2014, the district court entered final judgment on December 12, 2014. Following a timely appeal by 38 of the 41 Plaintiffs, the United States Court of Appeals for the District of Columbia Circuit, by order of August 5, 2016, affirmed in part and reversed in part, reinstating Plaintiffs' claims for equitable relief against the Government Defendants.

The parties submit the following proposed Consent Order in resolution of the remaining claims:

**STIPULATION OF AGREED FACTS**

The parties hereby stipulate to the following agreed facts:

1.      This Court has jurisdiction to enter this consent order.

2.      The Complaint alleges that Plaintiffs are all organizations that applied for 501(c)(3) or 501(c)(4) tax-exempt status with the IRS between 2009 and 2012 and are entitled to the rights protected by the First and Fifth Amendments to the United States Constitution, including the rights to freely associate and engage in speech as tax-exempt organizations and the right to equal protection of laws.

3.      The Complaint further alleges that the Internal Revenue Service ("IRS"), its officers, agents, and employees violated Plaintiffs' constitutional rights by, at a minimum, screening their tax-exempt applications, significantly delaying the processing of those applications, and making harassing, probing, and unconstitutional requests for information based on the names, associations, and/or political viewpoints of the Plaintiff organizations and that the violations are ongoing.

4.      The United States Senate Committee on Finance ("Senate Finance Committee") has acknowledged that allegations such as those of Plaintiffs "strike at the very heart of the

principal [sic] that the Nation's tax laws are to be administered fairly and without regard to politics of any kind."

5.     On May 10, 2013, then-Director of the IRS's Exempt Organizations ("EO") Division, Lois Lerner, publicly admitted that the IRS used a method of centralization for certain organizations based on their names, such as "Tea Party" or "Patriots." As Lerner stated, "That was wrong, that was absolutely incorrect, it was insensitive, and it was inappropriate." Lerner also apologized for the delay in processing many of those applications. Finally, Lerner acknowledged that the IRS requested information from those applicants that was too broad, unnecessary, and inappropriate, including requests for the names of contributors to those organizations, which, even if relevant in some circumstances, were not here.

6.     The Treasury Inspector General for Tax Administration ("TIGTA") has conducted audits of the IRS's treatment of these applicants.

7.     From 2010 to 2013, EO senior management was delinquent in its responsibility to provide effective control, guidance, and direction over the processing of applications for tax-exempt status filed by Tea Party and other political advocacy organizations. EO senior managers either failed in their responsibility to keep informed about the very existence of the applications, or failed to recognize the sensitivity of these applications. In the case of the former, EO senior managers forfeited the opportunity to shape the IRS's response to the influx of political advocacy applications by simply failing to read reports informing them of the existence of those applications. In the case of the latter, EO senior managers did not take appropriate steps to ensure that the applications were processed expeditiously and accurately.

8.     The 2013 TIGTA Report entitled *Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review* (Dkt. 1 1) substantiates certain facts that give rise to

3

Plaintiffs' claims in this case. The IRS admits to the following pertinent events detailed in the 2013 TIGTA Report:

    a.   In 2010, the IRS began receiving applications for tax exempt status under §§ 501(c)(3) and (c)(4) of the Internal Revenue Code from entities with the terms "Tea Party," "Patriots," and "9/12" in their names.

    b.   In March 2010, an EO Determinations Unit Specialist was asked to search for applications with "Tea Party," "Patriots," or "9/12" in the organization's name as well as other "political-sounding" names.

    c.   In April 2010, the first "Sensitive Case Report" was prepared with regard to the "Tea Party" cases. Sensitive Case Reports are shared with the Director, Rulings and Agreements, and a chart summarizing all Sensitive Case Reports is provided to the Director of the EO Division.

    d.   In July 2010, the EO Determinations Unit management requested that its specialists "be on the lookout" for "Tea Party" applications.

    e.   In August 2010, the first "be on the lookout" ("BOLO") spreadsheet was issued. The BOLO listing was developed by the EO Determinations Unit to replace the prior practice of sending separate e-mails to all EO Determinations Unit employees to watch for potentially abusive cases, cases requiring processing by the team of specialists, and emerging issues.

    f.   The BOLO spreadsheet alerted EO Determinations Unit staff to route applicants containing certain characteristics to specific EO Groups for processing. Relevant to this case, in August 2010, the "Emerging Issues" tab of the BOLO spreadsheet contained an entry entitled "Tea Party," instructing EO

Determinations Unit screeners to direct applications that met the specified criteria to Group 7822 for coordinated processing. The criteria used changed over time. (For a chart detailing the evolution of the criteria, see "Timeline of Written Criteria for Identifying Potential Political Cases," 2013 TIGTA Report, Appendix VI, Dkt. 1-1, Page 36.)

g.   The IRS utilized the criteria for more than 18 months.

h.   As of June 2011, the criteria used to identify potential political cases were:

   i.   Case files that reference "Tea Party," "Patriots," or "9/12 Project";

   ii.   Issues that include government spending, government debt, or taxes;

   iii.   Education of the public by advocacy/lobbying to "make America a better place to live;" or

   iv.   Statements in the case file that criticize how the country is being run.

i.   In May 2012, the relevant BOLO listing entry read "Advocacy Cases," and the criteria to identify those cases focused on political activity, rather than issues advocated. These criteria were "501(c)(3), 501(c)(4), 501(c)(5), and 501(c)(6) organization with indicators of significant amounts of political campaign intervention (raising questions as to exempt purpose and/or excess private benefit)."

j.   Approximately 1/3 of the entities forwarded to Group 7822 for processing had names that contained the terms "Tea Party," "Patriots," or "9/12." Furthermore,

all entities whose names contained the terms "Tea Party," "Patriots," or "9/12" were forwarded to Group 7822, while a smaller proportion of entities whose names did not contain those terms were forwarded.

9.     The use of these inappropriate criteria resulted in substantial delays in processing these applications (in some cases, for a period of time spanning two election cycles), and unnecessary requests for information from these applicants (including requests for the identities of donors, identification of issues important to the organization and the organization's position(s) on those issues, the type of conversations and discussions members and participants had during organizational activities, whether officers or directors planned to run for public office, political affiliations of officers and directors, and information about other organizations). The use of a BOLO spreadsheet was permanently suspended in June 2013.

10.     The EO Division is responsible for administering the tax code provisions related to tax-exempt organizations, including processing and deciding applications submitted by organizations seeking tax-exempt status.

11.     The then-Director of the EO Division, Lois Lerner, first became aware that the IRS received applications from Tea Party groups as early as April or May 2010. For the next two years, Lerner failed to adequately manage the EO Division employees who processed these applications. Moreover, Lerner failed to inform upper level IRS management of the serious delays in processing applications for tax-exempt status from Tea Party and other politically sensitive groups. Consequently, it was a year before the IRS Office of Chief Counsel became involved, and nearly two years before superiors in the IRS management chain were aware of the mismanagement of Tea Party and other sensitive advocacy applications.

12.    The EO Division undertook a number of initiatives aimed at finding a way to process the Tea Party and other political advocacy applications. Most of these initiatives were ineffective.

13.    The Senate Finance Committee reported that "[I]n one example, EO Division management approved of the use of the BOLO list, which improperly identified the Tea Party and other organizations by name and policy position. The IRS used the BOLO list to subject applications received from Tea Party groups to heightened scrutiny, even when that scrutiny was unwarranted because the applications gave no indication that the organizations would engage in political campaign intervention."

14.    The Senate Finance Committee reported that "[o]ther initiatives to process political advocacy applications sanctioned by EO management were under-planned, under-staffed, and under-executed. In each case, these initiatives ended in failure, and each failure resulted in applicant organizations enduring excessively long delays in receiving decisions on their applications."

15.    The EO Division operated without sufficient regard for the consequences of its actions for the applicant organizations.

16.    Not only did those organizations have to withstand delay measured in years, but many also were forced to bear burdensome and inappropriate ''development letters'' aimed at extracting information that TIGTA determined was not necessary to properly process the applications.

17.    Congress has held numerous hearings concerning the IRS's treatment of these applicants.

18.     The Senate Finance Committee reported that, for over a full year, "every incoming application from a Tea Party or related conservative organization was sent to [the Emerging Issues Group] for further review – whether or not it reflected potential political campaign intervention – which ultimately resulted in heightened scrutiny and extended delays."

19.     The Senate Finance Committee reported that "[u]ntil July 2011, the Emerging Issues Tab of the BOLO spreadsheet specifically referenced the Tea Party movement."

20.     The Senate Finance Committee reported that "[W]hile the bucketed applications were from groups on both the political right as well as the left, the majority of the applications were from right-leaning organizations." To support this conclusion, the report cited IRS correspondence, which stated:

> Of the 84 (c)(3) cases, slightly over half appear to be conservative leaning groups based solely on the name. The remainder do not obviously lean to either side of the political spectrum.
>
> Of the 199 (c)(4) cases, approximately 3⁄4 appear to be conservative leaning while fewer than 10 appear to be liberal/progressive leaning groups based solely on name. The remainder do not obviously lean to either side of the political spectrum.

21.     The Senate Finance Committee reported that the centralized treatment of the Tea Party applicants began in 2010 with the application of one of the plaintiffs herein, Albuquerque Tea Party.

22.     Albuquerque Tea Party did not receive a final determination granting it tax-exempt status under section 501(c)(4) until June of 2017, over seven years after filing its application.

23.     The Senate Finance Committee reported that the IRS's treatment of Tea Party applicants caused some such applicants to stop pursing tax-exempt status.

8

24.    Tea Party applicants reported to Congress that the IRS's treatment of them, including the lengthy delays in issuing determinations, has affected the willingness of donors to make contributions, the willingness of others to associate themselves with the organizations, and the ability of the organizations to engage in the full range of activities they would otherwise have undertaken.

25.    The Senate Finance Committee reported that "these events will erode public confidence and sow doubt about the impartiality of the IRS."

26.    TIGTA made nine recommendations to the IRS for how to correct these problems, including requiring the director of Rulings and Agreements to approve original entries and changes to criteria included on the BOLO listing, implement proper training before election cycles, better document its reasons for selecting applications for review, and to recommend guidance on how to measure the "primary activity" of I.R.C. § 501(c)(4) social welfare organizations for inclusion in the Department of the Treasury Priority Guidance Plan.

27.    TIGTA completed a follow-up audit concerning the IRS's implementation of TIGTA's 2013 recommendations and published its findings in a March 2015 report.

28.    TIGTA reported that "[t]he IRS has taken significant actions to address the nine recommendations made in our prior audit report."

29.    TIGTA reviewed documentation indicating that "decisions on referrals containing emerging issues are being made based upon activities and not names or policy positions."

30.    TIGTA concluded that there was "increased assurance that emerging issues are being considered impartially."

31.    TIGTA further found that "[t]he IRS has substantially changed its procedures for processing applications for tax-exempt status" and expressed its belief "that the current

procedures address [TIGTA's] original concern that only applications with indications of significant political campaign intervention should be worked as potential political cases and the basis for selection should be clearly documented in the file."

32.     TIGTA found that "[t]he IRS developed and provided extensive political campaign intervention training for relevant Rulings and Agreements office employees, including all Determinations Unit employees."

33.     TIGTA found that the IRS had eliminated the use of BOLO or similar listings.

34.     At the time of the 2015 report, TIGTA found that guidance addressing how to measure the "primary activity" of a social welfare organization was included for consideration in the Department of the Treasury 2013–2014 Priority Guidance Plan.  As the Department of the Treasury was in the process of drafting guidance, Congress prohibited the IRS from publishing any regulation "relating to the standard which is used to determine whether an organization is operated exclusively for the promotion of social welfare for purposes of section 501(c)(4) of the Internal Revenue Code of 1986 (including the proposed regulations published at 78 Fed. Reg. 71535 (Nov. 29, 2013))."  Department of the Treasury Appropriations Act, 2016, § 127 (Title I of Div. E of the Consolidated Appropriations Act of 2016).

35.     TIGTA concluded that, "[u]ntil this guidance is finalized, the IRS does not have a clearly defined test for determining whether an organization's request for exemption as a social welfare organization should be approved. As a result, for those applicants not choosing the optional expedited process, the IRS continues to use a subjective facts and circumstances process."

36.     The IRS accepted all the recommendations in the Senate Finance Committee's report concerning the determinations process that were within its control – that is, those that did

not involve tax policy matters or legislative action. They included 15 of the report's 18 bipartisan recommendations.

37.     The IRS is charged with the responsibility to exercise its power in a fair and impartial way as a neutral administrator of the tax laws.

38.     The IRS acknowledges that the First Amendment generally prohibits the government from discriminating against citizens on the basis of the viewpoint(s) of their protected speech and/or their protected associational interests.

39.     The IRS acknowledges that criteria for selecting tax-exempt applications and/or tax-exempt entities for IRS review should focus on the activities of the organizations and whether they fulfill the requirements of the law.

40.     The IRS admits that its treatment of Plaintiffs during the tax-exempt determinations process, including screening their applications based on their names or policy positions, subjecting those applications to heightened scrutiny and inordinate delays, and demanding of some Plaintiffs' information that TIGTA determined was unnecessary to the agency's determination of their tax-exempt status, was wrong.  For such treatment, the IRS expresses its sincere apology.

41.     The IRS agrees with and has implemented recommendations made by TIGTA, and is continuing to follow those recommendations.  The IRS remains fully committed to avoiding any selection and/or further review of tax-exempt applicants or entities that is based solely on the name or policy positions of such entity.

42.     The IRS agrees that it is unlawful to share, disseminate, or otherwise use for any

purpose, directly or indirectly, except as required by law, any information obtained during the determinations process from any Plaintiff organization in response to requests seeking the following:

    a.  names of donors, contributors, and/or grantors, whether any such persons intend(ed) to run for public office, and, if so, the identity of such office;

    b.  names of individuals who volunteer(ed) with the organization;

    c.  issues of importance to the organization and/or the organization's position(s) regarding such issues;

    d.  the roles and activities of the audience and participants other than members in the organization's activities;

    e.  the type of conversations and discussions members and participants had during the organization's activities;

    f.  the political affiliation of any of the organization's officers, directors, speakers, members, or volunteers;

    g.  information regarding employment, other than for the organization, including hours worked;

    h.  information regarding activities of another organization;

    i.  information, including but not limited to usernames and passwords, necessary to access a Plaintiff organization's website;

    j.  information concerning the organization's pro-life-related educational activities.

43.     The IRS agrees that it is unlawful for the IRS, its officers, agents, employees, and all others in active concert or participation with any of them, to take any action not permitted by

law that causes harm against a Plaintiff named in this litigation, which includes an action for which there is no documented basis other than its having participated in this litigation or public statements it has made concerning the allegations in this litigation.

44.    The IRS agrees that it is unlawful for the IRS, its officers, agents, employees, and all others in active concert or participation with any of them, to take any action not permitted by law that causes harm against any individual officer, director, and/or any individual that was a member of any Plaintiff organization during the course of this litigation, which includes an action for which there is no documented basis other than its having participated in this litigation or public statements it has made concerning the allegations in this litigation.

45.    The IRS agrees that it shall inform all Exempt Organizations Division employees, the Deputy Commissioner for Services and Enforcement, and the Commissioners and any Deputy Commissioners of the Wage and Investment, Large Business and International, Small Business/Self Employed, and Tax Exempt and Government Entities Divisions, of the terms of this Order, including the below declarations of the Court.

46.    The IRS is fully committed to a tax administration system that promotes public confidence in the fairness and integrity of the tax system.

47.    Plaintiffs agree that, in light of the parties' agreed stipulations of fact and the Court's entry of this Order, all remaining claims in this action should be dismissed.

48.    Each party shall bear its respective fees and costs with regards to this litigation.

## DECLARATORY JUDGMENT

49.    The Court hereby declares that it is wrong to apply the United States tax laws, including any and all tax rules, regulations, policies, procedures, and standards of review, to any tax-exempt applicant or entity based solely on such entity's name, any lawful positions it

espouses on any issues, or its associations or perceived associations with a particular political movement, position, or viewpoint.

50.    The Court hereby declares that any action or inaction taken by the IRS must be applied evenhandedly and not based solely on a tax-exempt applicant or entity's name, political viewpoint, or associations or perceived associations with a particular political movement, position, or viewpoint.

51.    The Court hereby declares that discrimination on the basis of political viewpoint in administering the United States tax code violates fundamental First Amendment rights. Disparate treatment of taxpayers based solely on the taxpayers' names, any lawful positions the taxpayers espouse on any issues, or the taxpayers' associations or perceived associations with a particular political movement, position, or viewpoint is unlawful.

In light of the parties' agreed stipulations, and the foregoing Declaratory Judgment, IT IS HEREBY ORDERED that Plaintiffs' remaining claims are dismissed with prejudice.

**SO ORDERED** this _11th_ day of December, 2017.

REGGIE B. WALTON
United States District Judge

Approved as to form and content:

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division

s/ Joseph A. Sergi
JOSEPH A. SERGI (DC 480837)
Senior Litigation Counsel
U.S. Department of Justice, Tax Division
555 4th Street NW, JCB 7207
Washington, DC 20001
(202) 305-0868; (202) 307-2504 (FAX)
Joseph.A.Sergi@usdoj.gov

14

LAURA M. CONNER (VA 40388)
STEVEN M. DEAN (DC 1020497)
JOSEPH R. GANAHL (MD)
W. CARL HANKLA (DC 411665)
JEREMY N. HENDON (OR 982490)
Trial Attorneys
U.S. Department of Justice, Tax Division
555 4th Street NW
Washington, DC 20001
(202) 514-2000

Of Counsel:
JESSIE K. LIU
United States Attorney

ATTORNEYS FOR THE UNITED STATES

Jay Alan Sekulow, *Counsel of Record*
(D.C. Bar No. 496335)
Stuart J. Roth (D.C. Bar No. 475937)
Andrew J. Ekonomou*
Jordan A. Sekulow (D.C. Bar No. 991680)
s/ Carly F. Gammill
Carly F. Gammill (D.C. Bar No. 982663)
Abigail A. Southerland (TN Bar No. 26608)
Miles L. Terry (D.C. Bar No. 1011546)*
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Avenue, NE
Washington, DC 20002
Tel. (202) 546-8890
Fax (202) 546-9309
sekulow@aclj.org

Julian A. Fortuna*
Taylor English & Duma, LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Tel. (770) 434-6868
Fax (770) 434-7376
Jfortuna@taylorenglish.com

COUNSEL FOR PLAINTIFFS
*Admitted *pro hac vice*

15

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF EAST JERSEY TEA PARTY.**

Dated: _NoJ    8___, 20 _17_        By: _____

STEVE CHISHOLM

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
WETUMPKA TEA PARTY, INC.

Dated: ___10/31___, 20_17_        By: _Becky Gerritson_
                                      BECKY GERRITSON

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF WACO TEA PARTY.**

Dated: _November 1_, 20_17_     By: _Toby Marie Walker_
                                   TOBY MARIE WALKER

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF KENTUCKY 9/12 PROJECT, INC.**

Dated: 2ⁿᵈ Nov , 2017        By: _____

ERIC WILSON

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF HAWAII TEA PARTY.**

Dated: 31 Oct , 2017          By: _____

                                        TIM MEANS

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
ROANE COUNTY TEA PARTY.


Dated: 11-01          , 2017          By:   _Gary Johnston_
                                            GARY JOHNSTON

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
GREATER PHOENIX TEA PARTY.


Dated: _____ 11 / 1 , 20 17        By: _____

                                        CHRIS ROSSITER

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF SAN FERNANDO VALLEY PATRIOTS, INC.**

Dated: _Oct. 30_____, 20_17_          By: _____
                                                                    KAREN KENNEY

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF SHELBY COUNTY LIBERTY.

Dated: October 31, 2017          By: _____
                                      H.R. PENCE

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF ALBUQUERQUE TEA PARTY, INC.**

Dated: _____10/30____, 20_17_          By: _____

GRAHAM BARTLETT

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
LAURENS COUNTY TEA PARTY.

Dated: _Oct 30_, 20_17_     By: _Dianne Belsom_

DIANNE BELSOM

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
FIRST COAST TEA PARTY, INC.


Dated: _30 October, 20_17        By: _Carole McManus_
                                     CAROLE McMANUS

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
MISSISSIPPI TEA PARTY, INC.

Dated: _Nov 1_, 20_17_        By: _Laura Van Overschelde_
                                  LAURA VAN OVERSCHELDE

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF SHENANDOAH VALLEY TEA PARTY PATRIOTS.**

Dated: _OCT 30_ , 20_17_        By: _____

BRUCE RICHMOND

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF CHATTANOOGA TEA PARTY.**

Dated: _OCT. 31_ , 20_17_    By: _Mark West_

MARK WEST

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
ARLINGTON TEA PARTY, INC.

Dated: _10 - 31_____, 20_17_        By: _____

                                         MEL MOSS

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF THE HONOLULU TEA PARTY.**

Dated: October 30, 2017            By: _____
                                        ADRIENNE KING

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
AMEN.

Dated: 10/30 , 20 17        By: _____
                                 KRISTY LIEN

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
PATRIOTS EDUCATING CONCERNED AMERICANS NOW.

Dated: _Oct. 30_, 20_17_    By: _____
                                 MARK KENT

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF PORTAGE COUNTY TEA PARTY, INC.**

Dated: _10/30_, 20_17_          By: _____

                                    TOM ZAWISTOWSKI

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF SAN ANTONIO TEA PARTY, INC.**

Dated: 10-30-1 , 20 17        By: _Allen Tharp_

ALLEN THARP

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
AMERICAN PATRIOTS AGAINST GOVERNMENT EXCESS.

Dated: _Oct 31_, 20_17_          By: _____
                                      MARION BOWER

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
OKC PIA ASSOCIATION.

Dated: _10 – 30_____, 20_17_    By: _____
                                     MARGIE DRESCHER

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
TRI-CITIES TEA PARTY.**

Dated: OCTOB 30, 2017         By: _____

ROGER ERICH LENK

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF UNITE IN ACTION, INC.


DATED: October 30, 2017                    BY: _____
                                                LARRY BURTON

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
NORTH EAST TARRANT TEA PARTY, INC.

Dated: Oct 31          , 20 17          By: _____
                                             JULIE McCARTY

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF MID-SOUTH TEA PARTY.

Dated: _Oct. 31_, 20_17_     By: _____
                                  LYNN MOSS

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
LIBERTY TOWNSHIP TEA PARTY, INC.**

Dated: _10 / 30_ , 20_17_        By: _Susan M'Laughlin_

                                SUSAN McLAUGHLIN

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
LINCHPINS OF LIBERTY.

Dated: _October 31_, 20_17_    By: _____
                                    KEVIN KOOKOGEY

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
ROCHESTER TEA PARTY PATRIOTS.

Dated: Oct 31, 2017          By: _____
                                  ALAN MAVES

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
ACADIANA PATRIOTS.

Dated: __11/1__, 20_17_       By: _James Crumling_
                                  JAMES CRUMLING

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
ALLEN AREA PATRIOTS.

Dated: _11/05_ , 20_17_          By: _____
                                     STEVE DUKE

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
MYRTLE BEACH TEA PARTY, INC.

Dated: 11-1 0                , 20 17          By: _Gerri McDaniel_
                                                  GERRI McDANIEL

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
OREGON CAPITOL WATCH FOUNDATION.

Dated: _11/ 1/2____, 20_17_        By: _____
                                        JEFF KROPF

**I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF MANASSAS TEA PARTY.**

Dated: __10/31__, 20_17_        By: _____
                                        DAN ARNOLD

I HAVE READ THIS CONSENT ORDER, CONSULTED WITH LEGAL
COUNSEL, AND, UNDERSTANDING ALL OF ITS TERMS, I SIGN IT
VOLUNTARILY AND WITH AUTHORITY ON BEHALF OF PLAINTIFF
RICHMOND TEA PARTY, INC.


Dated: 2 November 2017          By: _George Eric McGrane_
                                     ERIC McGRANE